# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ROY FERRAND, LUTHER SCOTT, JR., and LOUISIANA STATE CONFERENCE OF THE NAACP, for themselves and all other persons similarly situated, | CIVIL ACTION NO. |
| Plaintiffs, | **COMPLAINT** |
| v. | |
| TOM SCHEDLER in his official capacity as the Louisiana Secretary of State, RUTH JOHNSON, in her official capacity as Secretary of the Louisiana Department of Children & Family Services, and BRUCE D. GREENSTEIN, in his official capacity as Secretary of the Louisiana Department of Health & Hospitals, | |
| Defendants. | |

Plaintiffs ROY FERRAND, LUTHER SCOTT JR., and LOUISIANA STATE CONFERENCE OF THE NAACP, for themselves and all other persons similarly situated, through their undersigned counsel, for their Complaint against Defendants TOM SCHEDLER in his official capacity as Louisiana Secretary of State, RUTH JOHNSON, in her official capacity as Secretary of the Louisiana Department of Children & Family Services ("DCFS"), and BRUCE D. GREENSTEIN, in his official capacity as Secretary of the Louisiana Department of Health & Hospitals ("DHH"), allege the following upon knowledge as to their conduct and upon information and belief as to the conduct of others:

### Introduction

1.    This action seeks declaratory and injunctive relief to redress Defendants' systemic and ongoing violations of the obligations imposed by the National Voter Registration Act of 1993 ("NVRA"), 42 U.S.C. § 1973gg-5 (hereinafter, "Section 7"), for voter registration by public assistance agencies in Louisiana.

2.    Congress adopted Section 7 to "increase the number of eligible citizens who register to vote in elections for Federal office," 42 U.S.C. § 1973gg(b)(1), including "the poor and persons with disabilities who do not have driver's licenses and will not come into contact with [motor vehicle agencies]."  H.R. Cong. Rep. No. 103-66, at 19 (1993).  The statute also reflects Congress's intent to combat the disproportionate harm to voter participation of racial minorities caused by discriminatory and unfair registration laws and procedures. 42 U.S.C. § 1973gg(a)(3).

3.    Section 7 mandates that "all offices in the State that provide public assistance" distribute voter registration application forms for voting in federal elections, assist applicants in completing them, accept completed voter registration applications, and transmit those applications to the appropriate state election official in a timely manner.  42 U.S.C. §§ 1973gg-5(a)(2)-(4), (d).

4.    Section 7 requires that all public assistance offices distribute a voter registration application form with "each application … for assistance, and "with each recertification, renewal, or change of address form" relating to the receipt of public assistance.  42 U.S.C. § 1973gg-5(a)(6).

5.    Section 7 further requires that all public assistance offices provide a form that, *inter alia*, asks each client whether s/he is registered at his/her current address

and if not, whether the applicant "would like to apply to register to vote here today" (hereinafter, the "voter preference form"). 42 U.S.C. § 1973gg-5(a)(6)(B).

6.      Despite these clear obligations under the NVRA, Louisiana's Department of Children and Family Services ("DCFS") and Louisiana's Department of Health and Hospitals ("DHH"), both of which are "offices in the State that provide public assistance," routinely fail to provide the required voter registration services to each person who applies, recertifies, renews, or changes an address in connection with public assistance benefits, in violation of Section 7 of the NVRA. 42 U.S.C. § 1973gg-5(a)(2)(A), (4), (6).

7.      Louisiana's DCFS and DHH offices also routinely fail to distribute voter registration applications and fail to provide assistance in completing those applications to persons who apply for public assistance, or who submit a recertification, renewal, or change of address form relating to public assistance, and are therefore operating in violation of Section 7 of the NVRA.  42 U.S.C. § 1973gg-5(a)(6).

8.      Louisiana's DCFS and DHH offices routinely fail to provide the voter preference form required by Section 7 in connection with every application, recertification/renewal, and change of address for the purpose of receiving public assistance in Louisiana.  42 U.S.C. § 1973gg-5(a)(6)(B).

9.      Louisiana's DCFS and DHH offices also routinely fail to accept completed voter registration application forms and transmit them in a timely manner to the appropriate state official as required by Section 7 of the NVRA.  42 U.S.C. § 1973gg-5(d).

10.     The Louisiana Secretary of State is violating Section 7 of the NVRA by failing to effectively coordinate the state's responsibilities under the statute.   42 U.S.C. Section 1973gg-8; La. Rev. Stat. Ann. § 18:18(A)(6).

11.     As a result of Defendants' failure to provide voter registration services at DCFS and DHH offices in accordance with Section 7, many low-income citizens in Louisiana who might otherwise be enfranchised remain unregistered.

12.     As a result of Defendants' failure to provide voter registration services at DCFS and DHH offices in accordance with Section 7, Plaintiffs Roy Ferrand and Luther Scott, Jr., have been denied the opportunity to complete and submit a voter registration application form, as is required by Section 7.

13.     As a result of Defendants' failure to provide voter registration services at DCFS and DHH offices in accordance with Section 7, Plaintiff Louisiana State Conference of the NAACP and its members have expended substantial resources, including staff time and volunteer allocation, to make voter registration available to minority and low-income citizens, particularly those who should be and should have been offered voter registration by DCFS and DHH offices at every public benefits transaction that includes an application, recertification, renewal, or change of address.

## Named Parties

### Plaintiffs

14.     Plaintiff Roy Ferrand is a Louisiana citizen who has applied for public assistance benefits in the form of Food Stamps, has been eligible for these benefits since at least 2009, and currently receives Food Stamps through DCFS.  He meets all of the requirements to register to vote in Louisiana, but is not registered where he currently

resides.  DCFS did not provide him with a voter registration application form, nor offer him assistance in completing that form, which denied him the opportunity to complete and submit a voter registration application in conjunction with his application for Food Stamp benefits.

15.     Plaintiff Luther Scott, Jr. is a Louisiana citizen who has applied for public assistance benefits in the form of Food Stamps, has been eligible for these benefits since at least January 2010, and currently receives Food Stamps through DCFS.  He meets all the requirements to register to vote in Louisiana, but is not registered where he currently resides.  DCFS did not provide him with a voter registration application form, nor offer him assistance in completing that form, which denied him the opportunity to complete and submit a voter registration application in conjunction with his application and subsequent recertifications for Food Stamp benefits.

16.     Plaintiff Louisiana State Conference of the NAACP (hereinafter, "Plaintiff Louisiana NAACP") is a non-partisan, interracial membership organization founded in 1909, devoted to civil rights and racial justice.  Plaintiff Louisiana NAACP is headquartered in Baton Rouge, Louisiana.

**Defendants**

17.     Defendants are the state officials charged with the responsibility of ensuring Louisiana's compliance with Section 7 of the NVRA.

18.     Defendant Tom Schedler is the Louisiana Secretary of State.  In this capacity, he "shall administer the laws relating to custody of voting machines and voter registration, and for the purpose he shall … [c]oordinate the responsibilities of th[e] state under the National Voter Registration Act of 1993 (P.L. 103-31) as required by 42 U.S.C.

Section 1973gg-8." La. Rev. Stat. Ann. § 18:18(A)(6). Defendant Schedler is also generally responsible for directing and assisting the registrars of voters of the state with respect to matters pertaining to the registration of voters and prescribing uniform rules, regulations, forms, and instructions related to voter registration and voter education. La. Rev. Stat. Ann. § 18:18(A)(2), (3), (8). Defendant Schedler is sued in his official capacity as Secretary of State.

19.     Defendant Ruth Johnson is the Secretary of Louisiana's Department of Children and Family Services. DCFS is a mandatory voter registration agency. La. Rev. Stat. Ann. § 18:116(A)(1)(a). DCFS administers public assistance programs subject to the requirements of Section 7 of the NVRA, including but not limited to the Supplemental Nutrition Assistance Program ("SNAP," formerly Food Stamps), and Family Independence Temporary Assistance ("FITAP"). La. Rev. Stat. Ann. §§ 36:474(G); 46:231-231.2. Defendant Johnson is sued in her official capacity as Secretary of the DCFS.

20.     Defendant Bruce Greenstein is the Secretary of Louisiana's Department of Health and Hospitals. DHH is a mandatory voter registration agency. La. Rev. Stat. Ann. § 18:116(A)(1)(a). DHH administers public assistance programs subject to the requirements of Section 7 of the NVRA, including Medicaid, the Women, Infants, and Children (WIC) Program, and the Louisiana Children's Health Insurance Program (LaCHIP). La. Rev. Stat. Ann. §§ 36:251(B); 46:450.3; 46:976. Defendant Greenstein is sued in his official capacity as Secretary of the DHH.

## Jurisdiction and Venue

21.     This case arises under the NVRA, a law of the United States.  This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a).

22.     This Court has jurisdiction to grant both declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

23.     This Court has personal jurisdiction over each of the Defendants because each is a citizen of the State of Louisiana.

24.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## Applicable Law

### National Voter Registration Act of 1993 and Louisiana State Implementing Statutes

25.     The NVRA requires that "each state shall designate as voter registration agencies -- (A) all offices in the state that provide public assistance."  42 U.S.C. § 1973gg-5(a)(2)(A).

26.     DCFS and DHH offices are mandatory voter registration agencies under Section 7 of the NVRA.  Under Louisiana law, public assistance agencies that administer public assistance in the state of Louisiana, including but not limited to the Food Stamps program (SNAP), FITAP, Medicaid, WIC, and Louisiana Children's Health Insurance Program (LaCHIP) programs, are designated as mandatory voter registration agencies.  La. Rev. Stat. Ann. § 18:116(A)(1)(a).

27.     The NVRA requires that each voter registration agency must provide a

"voter preference form" that includes:

    a.  the question, "If you are not registered to vote where you live now, would you like to apply to register to vote here today?";

    b.  …the statement, "Applying to register or declining to register to vote will not affect the amount of assistance that you will be provided by this agency.";

    c.  boxes for the applicant to check to indicate whether the applicant would like to register or declines to register to vote…, together with the statement (in close proximity to the boxes and in prominent type), "IF YOU DO NOT CHECK EITHER BOX, YOU WILL BE CONSIDERED TO HAVE DECIDED NOT REGISTER TO VOTE AT THIS TIME.";

    d.  the statement, "If you would like help in filling out the voter registration application form, we will help you.  The decision whether to seek or accept help is yours.  You may fill out the application form in private."; and

    e.  the statement, "If you believe that someone has interfered with your right to register or to decline to register to vote, your right to privacy in deciding whether to register or in applying to register to vote, or your right to choose your own political party or other political preference, you may file a complaint with _____," the blank being filled by the name, address, and telephone number of the appropriate official to whom such a complaint should be addressed.

42 U.S.C. § 1973gg-5(a)(6)(B); *see*  La. Rev. Stat. Ann. § 18:116(C)(1)(b).

28.     The NVRA also requires that "the following services shall be made

available" at every public assistance agency:

    a.  Distribution of mail voter registration application forms…;

    b.  Assistance to applicants in completing voter registration application forms, unless the applicant refuses such assistance;

      c.  Acceptance of completed voter registration application forms for transmittal to the appropriate State election official [in a timely manner].

42 U.S.C §§ 1973gg-5(a)(4)(A)(i)-(iii) and 1973gg-5(d); *see* La. Rev. Stat. Ann. §§ 18:116(B)(1) and 18:116(D).

29.    The NVRA requires that public assistance agencies distribute a mail-in voter registration application form with each application for assistance, and with each recertification, renewal or change of address form relating to such assistance. 42 U.S.C § 1973gg-5(a)(6)(A); *see* La. Rev. Stat. Ann. § 18:116(C)(1)(a).

30.    The NVRA requires that public assistance agencies "provide to each applicant who does not decline to register to vote the same degree of assistance with regard to completion of the registration application form as is provided by the office with regard to the completion of its own forms, unless the applicant refuses such assistance." 42 U.S.C. § 1973gg-5(a)(6)(C); *see* La. Rev. Stat. Ann. § 18:116(C)(4).

31.    The NVRA requires that all public assistance offices transmit completed registration applications to the appropriate state election official "no later than 10 days after the date of acceptance", or, if a registration application is accepted within 5 days before the last day for registration to vote in an election, "no later than 5 days after the date of acceptance." 42 U.S.C. §§ 1973gg-5(a)(4)(iii) and 1973gg-5(d); *see* La. Rev. Stat. Ann. § 18:116(D).

32.    The NVRA requires that "[e]ach State shall designate a State officer or employee as the chief State election official to be responsible for coordination of State responsibilities under [the NVRA]." 42 U.S.C. § 1973gg-8.

33.    Louisiana has designated the Secretary of State as the chief state election official responsible for the coordination of state responsibilities under the NVRA. La. Rev. Stat. Ann. § 18:18(A)(6).

34.    The Secretary of State is "responsible for developing all employee training programs necessitated for acceptance of voter registration applications." La. Rev. Stat. Ann. § 18:117(A).

35.    Louisiana state law requires that DCFS and DHH "maintain such statistical records on the number of applications to register to vote as requested by the secretary of state." La. Rev. Stat. Ann. § 18:116(G).

36.    In order to ensure state compliance, the NVRA provides a private right of action to "a person who is aggrieved by a violation" of the NVRA. 42 U.S.C. § 1973gg-9. The NVRA requires that, at least ninety days prior to bringing an action to enforce the NVRA, an aggrieved person or organization must provide written notice to the "chief election official" of the state in order to identify the violation(s) and to provide the state an opportunity to cure the violation(s) prior to the commencement of litigation. *Id*.

## **Factual Allegations**

### **Louisiana's Failure to Offer Voter Registration to Public Assistance Clients as Required by the NVRA**

37.    The DCFS, through its Economic Stability Section, administers public assistance programs in Louisiana including, but not limited to, SNAP and FITAP. La. Rev. Stat. Ann. § 46:51. Defendant Secretary of the DCFS, Ruth Johnson, is responsible for policy development and management of DCFS. La. Rev. Stat. Ann. § 46:52.

38.     The DHH, through its Office of Management and Finance, administers public assistance programs in Louisiana including, but not limited to, Medicaid, WIC, and LaCHIP. La. Rev. Stat. Ann. §§ 36:251(B); 46:450.3; 46:976. Defendant Secretary of the DHH, Bruce Greenstein, is responsible for policy development and management of DHH. La. Rev. Stat. Ann. § 36:254.

39.     The DCFS and DHH have failed to comply and currently are not complying with their obligations, under Section 7 of the NVRA, to offer clients the opportunity to complete and submit a voter registration application in conjunction with every application for public assistance benefits, and every renewal, recertification, and change of address relating to the receipt of public assistance benefits.

40.     The DCFS and DHH have failed and currently are failing to provide the voter preference form required by Section 7 during each statutorily-covered transaction.

41.     The Secretary of State has failed in his duty to effectively coordinate Louisiana's responsibilities under the NVRA.  42 U.S.C. § 1973gg-8; La. Rev. Stat. Ann. § 18:18(A)(6).

42.     The Secretary of State has failed in his duty to develop adequate "employee training programs necessitated for acceptance and transmittal of voter registration applications under" the NVRA.  La. Rev. Stat. Ann. § 18:117(A).

43.     Defendants, through their actions and inaction, are responsible for the failure of DCFS and DHH to comply with their obligations under Section 7 of the NVRA.

**Low Numbers of Public Agency Voter Registrations**

44.   The number of voter registration applications received from public assistance offices has sharply declined despite a substantial increase in participation in the SNAP program, one of the most widely used public assistance programs covered by Section 7 of the NVRA.  Even initial application numbers alone – without consideration of recertification and change of address numbers – show a large and widening gap between food stamp applications and voter registration applications at public assistance agencies in Louisiana.

45.   The following graph shows the number of initial applications to the Louisiana Food Stamp program (SNAP) by fiscal year, as reported by the United States Department of Agriculture.[1]



---

[1] Sources:  U.S. Department of Agriculture Food and Nutrition Service National Data Bank, Version 8.2 Public Use, 12/16/08.

46.     The United States Department of Agriculture also reports high numbers of total participants in the Louisiana food stamp program, with approximately 300,000 adult citizen participants per year, and 356,000 adult citizen participants in fiscal year 2009.[2]

47.     Notwithstanding the fact that hundreds of thousands of individuals have participated in the state's SNAP program each year, DCFS had on hand only a small number of the voter registration application forms necessary for distribution as required under the NVRA for at least the time period from January 2005 to May 1, 2010.

48.     Specifically, DCFS had only 30,900 voter registration application forms available for distribution to its clients from at least January 2005 until May 1, 2010, or a total of approximately 6,000 voter registration application forms per year, despite SNAP participation rates of over 300,000 adult citizens during each fiscal year within the same time period.

49.     DHH also reports large numbers of benefits applications received for the Medicaid program, similar to the high rate of participation in SNAP.  DHH reports having received 383,752 Medicaid applications in fiscal year 2006; 378,739 Medicaid applications received in fiscal year 2007; 340,710 Medicaid applications received in

---

[2] The U.S. Department of Agriculture Food and Nutrition Service reports 325,000 adult citizen participants in SNAP in Louisiana in fiscal year 1996; 268,000 adult citizen participants in fiscal year 1997; 255,000 adult citizen participants in fiscal year 1998; 238,500 adult citizen participants in fiscal year 1999; 232,000 adult citizen participants in fiscal year 2000; 241,000 adult citizen participants in fiscal year 2001; 278,000 adult citizen participants in fiscal year 2002; 303,000 adult citizen participants in fiscal year 2003; 335,000 adult citizen participants in fiscal year 2004; 345,000 adult citizen participants in fiscal year 2005; 319,000 adult citizen participants in fiscal year 2006; 321,000 adult citizen participants in fiscal year 2007; and 318,000 adult citizen participants in fiscal year 2008. Office of Analysis, Nutrition & Evaluation, Food & Nutrition Serv., U.S. Dep't of Agric., *Supplemental Nutrition Assistance Program (SNAP) Studies:  SNAP Household Characteristics Reports* (FY1996-FY2009), http://www.fns.usda.gov/ora/MENU/Published/snap/SNAPPartHH.htm.

fiscal year 2008; 342,136 Medicaid applications received in fiscal year 2009; and 308,092 Medicaid applications received in fiscal year 2010.  According to data provided by DHH in response to records requests, during the years in question, DHH received a total of 1,445,337 applications for Medicaid.

50.     The number of Medicaid applications submitted to DHH between 2005 and 2010 is reflected in the following graph:



51.     In comparison with the high numbers of participants in Louisiana's SNAP and Medicaid programs, the numbers of voter registration applications submitted to election officials from public assistance agencies in the state are extremely low, having declined precipitously between 1995 (the time of implementation of the NVRA) and 2008 (the year of the most recent data from the Election Assistance Commission regarding voter registration applications collected under the NVRA).

52.     The number of voter registration applications submitted by public

assistance agencies between 1995 and 2008[3] is reflected in the following graph:



53.     As the data above indicates, Louisiana DHH offices have consistently

received approximately 300,000 Medicaid applications per year since at least 2006, while

SNAP participation has grown from approximately 268,000 participants in 1996 to

356,000 participants in 2009.

[3] Fed. Election Comm'n, *The Impact of the National Voter Registration Act on the Administration of Elections for Federal Office, 1995-1996*, at Table 2 (1997); Fed. Election Comm'n, *The Impact of the National Voter Registration Act on the Administration of Elections for Federal Office, 1997-1998*, at Table 2 (1999); Fed. Election Comm'n, *The Impact of the National Voter Registration Act on the Administration of Elections for Federal Office, 1999-2000*, at Table 2 (2001); Fed. Election Comm'n, *The Impact of the National Voter Registration Act on the Administration of Elections for Federal Office, 2001-2002*, at Table 2 (2003); U.S. Election Assistance Comm'n, *The Impact of the National Voter Registration Act on the Administration of Elections for Federal Office, 2003-2004*, at Table 2 (2005); U.S. Election Assistance Comm'n, *The Impact of the National Voter Registration Act on the Administration of Elections for Federal Office, 2005-2006*, at Table 2b (2007); U.S. Election Assistance Comm'n, *The Impact of the National Voter Registration Act on the Administration of Elections for Federal Office, 2007-2008*, at Table 2b    (2009).    All of these studies are available at http://www.eac.gov/research/national_voter_registration_act_studies.aspx.

54.     From 1996 to 2008, however, voter registration applications originating in public assistance agencies in Louisiana have declined 88%, with only 8,688 applications submitted between 2007 and 2008.

55.     This decline in voter registration applications has occurred despite the large numbers of low-income Louisiana citizens who remain unregistered.  In 2008, 28 percent of adult citizens in families making less than $15,000 a year were not registered to vote, compared to 5 percent of those in families making $100,000 or more.[4]

56.     DCFS and DHH are failing in their obligation to provide the voter registration opportunities mandated by Section 7 to every individual who applies for public assistance benefits, and who renews, recertifies, or changes an address at a public assistance office relating to the receipt of public assistance benefits.

### December 2008 Investigation

57.     Multiple interviews and investigations by different organizations have revealed long-standing and systemic violations of Section 7 throughout the state of Louisiana.

58.     In December 2008, a telephonic investigation was conducted of DCFS and DHH offices that offer SNAP, Medicaid, and WIC services.

59.     Of the 59 Offices of Family Support contacted in December 2008, staff at 28 of those offices (47%) indicated that they do not make voter registration opportunities available to clients.  Those offices are located in the following parishes: Vermillion Parish; Tensas Parish; Sabine Parish; Tangipahoa Parish; St. Martin Parish; Evangeline Parish; Winn Parish; Bienville Parish; Calcasieu & Cameron Parish; East

---

[4] U.S Census Bureau, Current Population Survey, November 2008 Voting and Registration Supplement [machine-readable data file], conducted by the Bureau of the Census for the Bureau of Labor Statistics. Washington: U.S. Census Bureau [producer and distributor], 2009.

Carroll Parish; Concordia Parish; Terrebonne Parish; Caddo Parish; Rapides; Washington Parish; Grant Parish; Acadia Parish; Beauregard Parish; Ascension Parish; Jackson Parish; Catahoula Parish; Monroe Regional Office; Assumption Parish; Pointe Coupee Parish; Iberville Parish; West Baton Rouge Parish; West Carroll Parish; Livingston Parish; and Iberia Parish.

60.     For example, some DCFS staff responded to inquiries about the availability of voter registration at agency offices as follows:

(i)     Staff at the Vermillion Office responded, "Hmm, let me ask. No, they don't do that here."

(ii)    Staff at the Evangeline Parish office responded, "Excuse me ma'am, this is the Food Stamp Office."  When asked, "so you can't register people to vote here then?," the Evangeline Parish office staff responded, "Vote for what, ma'am, we just take applications for food stamps."

(iii)   Staff at the East Carroll Parish office responded: "No ma'am, you have to do it at the Voter Registration office."

61.     Of the 19 DHH Medicaid offices contacted in December 2008, staff at 13 offices (68.4%) indicated that they do not make voter registration opportunities available to clients.  Those offices are located in the following parishes: East Baton Rouge Parish; Acadia Parish; Ascension Parish; Tangipahoa Parish; LaSalle Parish; Catahoula Parish; Avoyelles Parish; Iberia Parish; Iberville & West Baton Rouge Parish Office; St. Landry Parish; Madison & Richland Parish; St. Martin Parish; and Winn Parish.

62.     For example, some of DHH Medicaid office staff responded to inquiries about the availability of voter registration at the agency offices as follows:

(i)     Staff at the East Baton Rouge office responded, "I don't think so, no, not at this office."

(ii)     Staff at the Ascension Parish office responded, "No ma'am, we don't do that. You need to go to Motor Vehicles."

(iii)    Staff at the Iberville & West Baton Rouge Parish Office responded, "No, this is not a register to vote office."

63.     Of the 24 WIC offices contacted in December 2008, staff at 12 offices (50%) indicated that they do not make voter registration opportunities available to clients: St. Martin Parish Breaux Bridge WIC Clinic; Evangeline Parish Community Health WIC Clinic; SWLA Center for Health Services; Health Unit Iberia Parish; Health Unit Lafayette Parish; David Raines Community Health Center WIC Clinic (Caddo Parish); North Caddo Medical Center WIC Clinic; LSU Health Sciences Center Shreveport WIC Clinic (Caddo Parish); Cameron Parish Field Clinic; Teche Action WIC Clinic (St. Mary Parish); Aruna T. Sangisetty WIC Clinic (Terrebonne Parish); and Teche Action Clinic: Dulac (Terrebonne Parish).

64.     For example, some of DHH WIC staff responded to inquiries about the availability of voter registration at the agency offices as follows:

(i)      Staff at St. Martin Parish Breaux Bridge WIC Clinic responded, "You'd have to go to St. Martin's for that."

(ii)     Staff at the Evangeline Parish WIC Clinic, responded, "No ma'am, you sure can't.  Go to the courthouse."

(iii)    Staff at Health Unit Iberia Parish responded, "No, not at my office. I can give you the clerk of court's number."

### February 2010 Investigation

65.     In February 2010, another telephonic investigation was conducted of DCFS and DHH offices that offer SNAP and Medicaid services in 11 parishes across the state.

66.     Of the 11 Offices of Family Support contacted in February 2010, staff at offices in the following 8 parishes (72%) indicated that they do not make voter registration opportunities available to clients: Concordia Parish; Iberia Parish; Jefferson Parish; Lafayette Parish; Orleans Parish; Rapides Parish; St. Martin Parish; and Terrebonne Parish.

67.     Of the 11 Medicaid offices contacted in February 2010, staff at offices in the following 7 parishes (63%) indicated they did not offer voter registration: Caddo Parish; Concordia Parish; Iberia Parish; Jefferson Parish; Orleans Parish; Rapides Parish; and St. Martin Parish.

### March-May 2010 Interviews

68.     In March-May 2010, in-person interviews were conducted of 80 individuals exiting Louisiana public assistance agencies who had conducted transactions triggering the NVRA's voter registration obligations.  Interviewers also spoke with staff at public assistance offices to ask about the availability of voter registration at the office. The results of these in-person interviews reveal that voter registration services are not being provided at each statutorily covered transaction.

69.     During March-May 2010, interviews were conducted of clients and/or staff at the following offices: Medicaid Office located at 1010 Common Street, 3rd Fl., New Orleans; Office of Family Support at 1530 Iberville St., New Orleans; Office

Family Support at 2150 Westbank Expressway, Harvey (Jefferson Parish); Office of Family Support located at 3229 36th St., Metairie (Jefferson Parish); Office of Family Support at 1012 West Tunnel Blvd., Houma (Terrebonne Parish); WIC Clinic at 600 Polk St., Houma (Terrebonne Parish); and WIC Clinic at 1281 West Tunnel, Bld., Houma (Terrebonne Parish).

70.     Of the 80 clients contacted between March and May 2010, only 14 clients (17.5%) reported having been asked by any staff person during their office visit whether they would like to register to vote.

71.     In addition, staff at several of the offices contacted between March and May 2010 were unable to produce a voter registration application form when asked, including the following: Medicaid Office at 1010 Common St., 3rd Fl., New Orleans, LA; WIC Clinic at 600 Polk St., Houma, LA; and WIC Clinic at 1281 West Tunnel, Blvd., Houma, LA (WIC).

## November 2010 Interviews

72.     In November 2010, in-person interviews were conducted of 32 individuals who had conducted transactions triggering the NVRA's voter registration obligations, as they were leaving Louisiana public assistance agencies.  Interviews were also conducted of staff at public assistance offices to ask about the availability of voter registration at the office.  The results of these in-person interviews reveal that voter registration services are not being provided at each statutorily covered transaction.

73.     In November 2010, interviews were conducted of clients as well as staff at the following offices: Office of Family Support located at 1630 Iberville St., New Orleans (Orleans Parish); Office of Family Support located at 3229 36th St., Metairie

(Jefferson Parish); Office of Family Support located at 3510 General Meyer Ave., Algiers (Orleans Parish); Office of Family Support located at 2150 Westbank Expressway, Suite 201, Harvey (St. Bernard Parish); Office of Family Support located at 1919 North Blvd., Baton Rouge (East Baton Rouge Parish); Office of Family Support located at 2751 Wooddale Blvd. Baton Rouge (East Baton Rouge Parish); Office of Family Support located at 825 Kaliste Saloom, Building 6, Lafayette, (Lafayette Parish); Office of Family Support located at 900 Murray St., Room K-200, Alexandria (Rapides Parish); Office of Family Support located at 1525 Fairfield Ave., Shreveport (Caddo Parish); and the Office of Family Support located at 1306 N. 19th St., Monroe (Ouachita Parish).

74.     Of the 32 clients contacted during November 2010, only one client reported having been asked by any staff person during their office visit whether they would like to register to vote.  None of the other 31 clients were asked by any agency employee, including any caseworker, whether they would like to register to vote.

75.     Of the 31 clients (97%) who were not asked about voter registration, one client reported that she requested a voter registration application on her own initiative during her office visit but staff did not provide the form.

76.     Staff at the following 5 of the 10 offices (50%) contacted during November 2010 were unable to produce a voter registration application form when asked: 3229 36th St., Metairie; 3510 General Meyer Ave., Algiers; 2150 Westbank Expressway, Suite 201, Harvey; 825 Kaliste Saloom, Building 6, Lafayette; and 1525 Fairfield Ave., Shreveport.

77.     Staff responses to inquiries about the availability of voter registration at the agency offices include:

(i)     Staff at the Office of Family Support, located at 2150 Westbank Expressway, Suite 201 in Harvey, responded to a request for a voter registration application form by saying, "we don't have any of those…. we don't do that here.  You have to go down to the first floor."   When asked, "I have to go to the Office of Motor Vehicles?"  The Office of Family Support staff person replied, "Yes… again we don't do that."

(ii)    When asked for a voter registration application, staff at the Office of Family Support located at 900 Murray St., Room K-200 were unsure whether or not the office offered voter registration materials and stated, "I haven't seen them in awhile."

### DCFS Admission of Noncompliance

78.     On November 19, 2010, a request for records was sent to Defendant Secretary of DCFS Ruth Johnson relating to NVRA compliance.

79.     In its response, DCFS admitted the following:

a.   DCFS does not track the number of completed voter registrations that agency staff forward to Louisiana parish registrars;

b.   Since January 2005, DCFS has made only two requests for voter registration forms for use in DCFS offices.  The first request was made on June 7, 2005 for 20,900 forms.  The second request was made on November 27, 2007 for 10,000 forms.

c.   DCFS had only 30,900 voter registration application forms available for distribution from January 2005 to May 1, 2010, despite yearly SNAP participation rates of 345,000 adult citizens in fiscal year 2005[5], 319,000 adult citizens in fiscal year 2006[6], 321,000 adult citizens in fiscal year 2007[7], 318,000 adult citizens in fiscal year 2008[8], and 356,000 adult citizens in fiscal year 2009.[9]

---

[5] Office of Analysis, Nutrition & Evaluation, Food & Nutrition Serv., U.S. Dep't of Agric., Rpt. No. FSP-06-CHAR, *Characteristics of Supplemental Nutrition Assistance Program Households: Fiscal Year 2005*, at Tables B-11; B-13. (Sept. 2006), *available at* http://www.fns.usda.gov/ora/menu/Published/ SNAP/FILES/Participation/2005Characteristics.pdf.

[6] Office of Analysis, Nutrition & Evaluation, Food & Nutrition Serv., U.S. Dep't of Agric., Rpt. No. FSP-07-CHAR, *Characteristics of Supplemental Nutrition Assistance Program Households: Fiscal Year 2006* at Tables B-11; B-13 (Sept. 2007), *available at* http://www.fns.usda.gov/ora/menu/Published/ SNAP/FILES/Participation/2006Characteristics.pdf.

[7] Office of Analysis, Nutrition & Evaluation, Food & Nutrition Serv., U.S. Dep't of Agric., Rpt.

d.  DCFS does not distribute a voter registration application form with each application for service, and with each recertification, renewal or change of address.  The only time the agency will give a client a voter registration application form is if the client requests the form.

e.  DCFS does not keep track of how many voter registration application forms it distributes to clients, nor does it keep track of how many completed voter registration application forms it collects and transmits to the parish registrars.  Although the form used for application to the Child Care Assistance Program (CCAP), the Family Independence Temporary Assistance Program (FITAP), the Kinship Care Subsidy Program (KCSP) and SNAP includes a written offer of voter registration, the agency does not track whether its clients respond to the offer and how, nor does it track what the case workers do with the clients' responses or lack thereof.

f.  DCFS does not track the number of voter preference forms that are completed by agency clients.

g.  DCFS had not received any directives or memoranda from the Secretary of State's office regarding implementation of the NVRA from at least January 2005 until December 2010.

80.   DCFS's policy of not distributing voter registration application forms unless a client affirmatively requests the form violates the agency's obligation to ensure distribution of a mail voter registration application, and to provide assistance in completing those applications, with every application for service or assistance, and with

---

No. FSP-08-CHAR, *Characteristics of Food Stamp Households:  Fiscal Year 2007*, at Tables B-11; B-13 (Sept. 2008), *available at* http://www.fns.usda.gov/ora/menu/Published/SNAP/FILES/Participation/ 2007Characteristics.pdf.

[8] Office of Analysis, Nutrition & Evaluation, Food & Nutrition Serv., U.S. Dep't of Agric., Rpt. No. SNAP-09-CHAR, *Characteristics of Supplemental Nutrition Assistance Program Households:  Fiscal Year 2008*, at Tables B-11; B-13 (Sept. 2009), *available at* http://www.fns.usda.gov/ ora/menu/Published/SNAP/FILES/Participation/2008Characteristics.pdf.

[9] Office of Analysis, Nutrition & Evaluation, Food & Nutrition Serv., U.S. Dep't of Agric., Rpt. No. SNAP-10-CHAR, *Characteristics of Supplemental Nutrition Assistance Program Households:  Fiscal Year 2009*, at Tables B-11; B-13 (Oct. 2010), *available at* http://www.fns.usda.gov/ora/ menu/Published/SNAP/FILES/Participation/2009Characteristics.pdf.

each recertification, renewal, or change of address form relating to such service or assistance under 42 U.S.C § 1973gg-5(a)(6).

81.     DCFS's failure to track client responses to the voter preference form, the number of voter registration application forms it distributes to clients, or the number of completed voter registration application forms it collects and transmits to the parish registrars, is indicative of a violation of DCFS's duty to ensure distribution, equal assistance, and timely transmittal of voter registration application forms under 42 U.S.C § 1973gg-5(a)(4)(A)(i)-(iii).[10]  *See* La. Rev. Stat. Ann. § 18:116(G).

82.     Defendant Secretary of State is failing to coordinate Louisiana's responsibilities under the NVRA.  42 U.S.C. § 1973gg-8.

83.     Defendant Secretary of State is failing to develop adequate "employee training programs" to ensure compliance with the NVRA.  La. Rev. Stat. Ann. § 18:117(A).

### Notice of Violations and Defendants' Failure to Cure

84.     On January 12, 2011, Plaintiffs' counsel sent letters to Defendants, the Secretaries of DCFS, DHH, and the Secretary of State, in order to "provide written notice of the violation to the chief election official of the State," as required by the NVRA, 42 U.S.C. § 1973gg-9, (the "Notice Letter"). Exhibit 1.

85.     The Notice Letter explained that Defendants, the Secretaries of DCFS, DHH, and the Secretary of State, were in violation of Section 7 of the NVRA, pointing to investigations and interviews that revealed, among other things, "a number of instances in

---

[10]  *See* U.S. Dep't of Justice, Civil Rights Division, Voting Section, *The National Voter Registration Act of 1993 (NVRA): Questions and Answers*, at No. 42, *available at* http://www.justice.gov/crt/about/vot/nvra/nvra_faq.php ("[S]tates should consider having a system in place to track the number of voter registration applications from each designated voter registration agency.").

which individuals were not provided with an application to register to vote as a part of their application for benefits, recertification, or change of address as required by law." *Id.*

86.    The Notice Letter further explained that Plaintiffs' counsel had "identified individuals who reported they had not received any offer of voter registration by agency staff, even though such an offer should have been made." *Id.*

87.    The Notice Letter expressed an interest in working cooperatively to "assist with developing a plan that will quickly bring the state into compliance with the requirements of Section 7 of the NVRA," and thus requested a "response, including a timeline and plan for achieving and sustaining compliance with the NVRA at Louisiana public assistance agencies." *Id.*

88.    Defendant Secretary of DHH Greenstein responded to the Notice Letter of NVRA violations with a letter from the agency's General Counsel Kimberly Humbles, dated January 24, 2011 (the "DHH Response Letter").

89.    In the DHH Response Letter, Ms. Humbles informed Plaintiffs' counsel that DHH's procedures would be reviewed to determine whether NVRA violations are occurring, and that DHH would apprise Plaintiffs' counsel of the results of that review, but did not offer any plan for bringing DHH into compliance with the NVRA.

90.    As of the date of this filing, Plaintiffs' counsel have received no further contact from DHH regarding NVRA violations or the results of the agency's review.

91.     Subsequently, Defendant Secretary of State Schedler sent a letter to Plaintiffs' counsel, dated February 14, 2011, more than one month after the January 12, 2011 Notice Letter of NVRA violations (the "SoS Response Letter").

92.     In the SoS Response Letter, Defendant Secretary of State Schedler did not provide any plan for bringing the state of Louisiana into compliance with the NVRA.

93.     Plaintiffs' counsel, as a courtesy, responded to Defendant Secretary of State Schedler in a letter dated February 25, 2011, with copies to the Defendant Secretaries of DCFS and DHH, which provided additional information regarding Louisiana's NVRA violations. Exhibit 2.

94.     As of the date of this filing, Defendant Secretary of State Schedler has provided no additional response to Plaintiffs' notice of NVRA violations.

95.     DCFS Executive Counsel, Amy Colby, responded to Plaintiff's Notice Letter of NVRA violation by letter dated February 23, 2011 (the "DCFS Response Letter").

96.     In her letter, Ms. Colby did not offer any plan for bringing DCFS into compliance with the NVRA.

97.     As of the date of this filing, Defendant Secretary of DCFS Johnson has made no other attempt to contact Plaintiffs' counsel regarding issues relating to NVRA compliance.

**Harm to Individual Plaintiffs**

98.     Plaintiffs Roy Ferrand and Luther Scott, Jr. have not and are not being offered the opportunity to register to vote, or to complete and submit a voter registration

application, in accordance with federal law, as a result of Defendants' noncompliance with Section 7.

99.    Plaintiff Roy Ferrand is not currently registered to vote in Louisiana.

100.    Plaintiff Ferrand last applied for SNAP assistance in 2009 at the Office of Family Support located at 1630 Iberville St., in New Orleans, Louisiana.

101.    At no time during the application process did any agency staff person ask Plaintiff Ferrand if he wanted to register to vote or complete and submit a voter registration application form.   Plaintiff Ferrand was not given a voter registration application form.  If Plaintiff Ferrand had been offered a voter registration application form and assistance with filling out the form during his initial visit to the Louisiana public assistance agency office, he would have completed and submitted a voter registration application form.

102.    Plaintiff Luther Scott, Jr. is not registered to vote in Louisiana at his current address.

103.    Plaintiff Scott was most recently registered approximately six years ago, when he in lived New Orleans prior to Hurricane Katrina.  Plaintiff Scott moved after the Hurricane, and has moved several more times since then.  Plaintiff Scott is not registered to vote at his present address.

104.    Plaintiff Scott first applied for SNAP assistance in January 2010 at the Office of Family Support located at 1630 Iberville Street in New Orleans, Louisiana.

105.    At no time during the application process did any agency staff person ask Plaintiff Scott if he wanted to register to vote or complete and submit a voter registration application form.   Plaintiff Scott was not given a voter registration

application form.  If Plaintiff Scott had been offered a voter registration application form and assistance with filling out the form during his initial visit to the Louisiana public assistance agency office, he would have completed and submitted a voter registration application form.

106.    Plaintiff Scott returned to the Office of Family Support in 2010 approximately two more times after his initial application for SNAP.  At no time during any of those visits to the agency did any staff person ask Plaintiff Scott if he would like to register to vote or complete and submit a voter registration application form.  Plaintiff Scott did not receive a voter registration application form from any agency staff person during any of his visits to the office.  If any agency staff person had offered Plaintiff Scott a voter registration application form and assistance in completing that form during any of his visits to the agency office, he would have completed and submitted a voter registration application form.

**Harm to Plaintiff Louisiana NAACP**

107.    Plaintiff Louisiana NAACP's mission is to ensure the political, educational, social, and economic equality of rights of all persons, and to eliminate racial hatred and racial discrimination.  Plaintiff Louisiana NAACP's mission includes the following principal objectives:

> a.  To ensure the political, educational, social, and economic equality of all citizens;
>
> b.  To achieve equality of rights and eliminate race prejudice among the citizens of the United States;
>
> c.  To remove all barriers of racial discrimination through democratic processes;

    d.  To seek enactment and enforcement of federal, state, and local laws securing civil rights;

    e.  To inform the public of the adverse effects of racial discrimination and to seek its elimination; and

    f.  To educate persons as to their constitutional rights and to take all lawful action to secure the exercise thereof, and to take any other lawful action in furtherance of these objectives, consistent with the NAACP's Articles of Incorporation.

108.    In furtherance of its mission, Plaintiff Louisiana NAACP has engaged in a wide range of activities in recent years, including voter registration and education efforts.

109.    Ensuring full and equal voting rights for African Americans and other communities of color has long been a key focus of the NAACP's work.  As early as 1915, in the case of *Guinn v. United States*, 238 U.S. 347 (1915), the NAACP has been involved in legal challenges to discriminatory voting laws.  Throughout the 1950's and 1960's, the NAACP was active throughout the South challenging laws where African Americans were denied the right to register and vote.  The NAACP also helped pass major civil rights legislation, including the Voting Rights Act of 1965.  Enforcement of civil rights statutes relating to voting, including the National Voter Registration Act, is a core concern of Plaintiff Louisiana NAACP.

110.    Voter registration and education is a core component of Plaintiff Louisiana NAACP's mission and central to the accomplishment of its objectives. Accordingly, Plaintiff Louisiana NAACP seeks to register all of its members, and other eligible individuals, to vote.

111.    Toward that end, Plaintiff Louisiana NAACP engages in regular voter registration drives and voter education activities across the State of Louisiana, with a

particular emphasis on minority communities.  Plaintiff Louisiana NAACP has registered tens of thousands of people since its inception.  Plaintiff Louisiana NAACP directs its voter registration and education activities at poor African Americans, because they are less likely to be registered than the more affluent.

112.   Plaintiff Louisiana NAACP will remain engaged in voter registration and education efforts, as well as other issues relating to the equal representation and participation of minority communities.

113.   Defendants' continued noncompliance with Section 7 has resulted in many low-income and minority Louisiana citizens missing their opportunity to complete and submit a voter registration application form at Louisiana public assistance offices.

114.   Defendants' continued noncompliance with Section 7 frustrates the organizational mission of Plaintiff Louisiana NAACP to protect the civil rights generally, and voting rights in particular, of the members of the communities it serves in Louisiana, and has had a direct effect on Plaintiff Louisiana NAACP's volunteer allocation with respect to its voter registration and education efforts.

115.   Plaintiff Louisiana NAACP does not employ any individuals.  Plaintiff Louisiana NAACP's mission is promoted and its work carried out by volunteers. Volunteer time is spent on projects and issues that are central to its mandate.

116.   Plaintiff Louisiana NAACP allocates increased numbers of volunteers to conduct voter registration drives where the need for voter registration services is greatest.  Conversely, Plaintiff Louisiana NAACP sends fewer volunteers to conduct voter registration drives in locations where more people are already registered.

117.    Defendants' continued noncompliance with Section 7 has forced Plaintiff Louisiana NAACP to send volunteers to assist people with voter registration and education who should have been offered those services by DCFS and DHH.   If Defendants were operating in compliance with the NVRA requirement to offer voter registration services at regular intervals at public assistance offices, Plaintiff Louisiana NAACP would be able to reallocate volunteers and resources currently devoted to voter registration drives and education activities.

118.    As a result of Defendants' violations, Plaintiff Louisiana NAACP has allocated volunteer time to voter registration that could have been devoted to registering voters at other locations, or to other activities altogether.  For instance, Plaintiff Louisiana NAACP could spend more time on its disaster-relief efforts, or on its many education-related activities, such as advocacy for educational reform or after-school tutoring programs.  Plaintiff Louisiana NAACP could also spend time on issues of economic development to help local business leaders to develop capacity and infrastructure.  There is no shortage of additional projects to which the Plaintiff Louisiana NAACP could devote its resources if there were less need for voter registration-related activities as a result of Defendants' violations.

119.    Plaintiff Louisiana NAACP's inability to best use its volunteers and resources will continue unless and until Defendants' violations are remedied.

**<u>Causes of Action</u>**

**First Claim for Relief**
**Violations of Section 7 of the National Voter Registration Act of 1993**

120.    Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 119 as if fully set forth herein.

121.    Defendants have violated and continue to violate 42 U.S.C. § 1973gg-5(a)(6)(B) by failing to provide the voter preference form with every application for public benefits, recertification/renewal, and change of address.

122.    Defendants have violated and continue to violate 42 U.S.C. § 1973gg-5(a)(6)(A) by failing to provide a mail voter registration application form with every application for public benefits, recertification/renewal, and change of address.

123.    Defendants have violated and continue to violate 42 U.S.C. § 1973gg-5(a)(6)(C) by failing to provide the same degree of assistance with completing the voter registration application form as would be provided with regard to completion of DCFS's and DHH's own forms.

124.    Defendants have violated and continue to violate 42 U.S.C. § 1973gg-5(a)(4)(A)(iii) by failing to accept completed voter registration application forms at public assistance offices.

125.    Defendants have violated and continue to violate 42 U.S.C. § 1973gg-5(d) by failing to transmit completed applications to the appropriate state election official no later than 10 days after the date of acceptance, or, if a registration application is accepted within 5 days before the last day for registration to vote in an election, no later than 5 days after the date of acceptance.

126.    Defendant Secretary of State has violated and continues to violate 42 U.S.C. § 1973gg-8 by failing to coordinate the state of Louisiana's responsibilities under 42 U.S.C. § 1973gg-5 and by failing to develop adequate employee training programs necessary for acceptance of voter registration applications under the NVRA.

127.    Plaintiffs have been aggrieved by this violation of the NVRA and have no adequate remedy at law for the Defendants' violation of their rights.  Declaratory and injunctive relief are required to remedy the Defendants' violation of the NVRA and to secure ongoing compliance with the NVRA.

<u>Second Claim for Relief</u>
**Violations of Louisiana State Statutes Implementing**
**Section 7 of the National Voter Registration Act of 1993**

128.    Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 127 as if fully set forth herein.

129.    Defendants have violated and continue to violate La. Rev. Stat. Ann. § 18:116(C)(1)(b) by failing to provide the voter preference form with every application for public benefits, recertification/renewal, and change of address.

130.    Defendants have violated and continue to violate La. Rev. Stat. Ann. § 18:116(C)(1)(a) by failing to provide a mail voter registration application form with every application for public benefits, recertification/renewal, and change of address.

131.    Defendants have violated and continue to violate La. Rev. Stat. Ann. § 18:116(C)(4) by failing to provide the same degree of assistance with completing the voter registration application form as would be provided with regard to completion of DCFS's and DHH's own forms.

132.    Defendants have violated and continue to violate La. Rev. Stat. Ann. § 18:116(B)(1)(c) by failing to accept completed voter registration application forms at public assistance offices.

133.    Defendants have violated and continue to violate La. Rev. Stat. Ann. § 18:116(D) by failing to transmit completed applications to the appropriate state election

official no later than 10 days after the date of acceptance, or, if a registration application is accepted within 5 days before the last day for registration to vote in an election, no later than the close of the business day.

134. Defendant Secretary of State has violated and continues to violate La. Rev. Stat. Ann. § 18:18(A)(6) by failing to coordinate the state of Louisiana's responsibilities under Section 7.

135. Defendant Secretary of State has violated and continues to violate La. Rev. Stat. Ann. § 18:117(A) by failing to develop adequate employee training programs necessary for acceptance of voter registration applications under the NVRA.

136. Defendant Johnson has violated and continues to violate La. Rev. Stat. Ann. § 18:116(G) by failing to keep statistical records on the number of completed voter registration applications that agency staff forward to Louisiana parish registrars.

137. Plaintiffs have been aggrieved by this violation of the Louisiana state statutes implementing the NVRA and have no adequate remedy at law for the Defendants' violation of their rights. Declaratory and injunctive relief are required to remedy the Defendants' violation of the Louisiana State Statutes implementing the NVRA and to secure ongoing compliance with the NVRA.

<u>**Prayer for Relief**</u>

WHEREFORE, Plaintiffs respectfully request that the Court enter an Order:

(i)     Declaring, pursuant to 28 U.S.C. § 2201 and 42 U.S.C. § 1973gg-9(B)(2), that the Defendants have violated Section 7 of the NVRA, 42 U.S.C. §1973gg-5, by failing to provide voter registration services as required by the NVRA at offices that provide public assistance in Louisiana;

(ii)    Permanently enjoining the Defendants, their agents and successors in office and all persons working in concert with them, from implementing practices and procedures that violate Section 7 of the NVRA, 42 U.S.C. §1973gg-5;

(iii)    Directing the Defendants, under a court-approved plan with appropriate reporting and monitoring requirements, to take all appropriate measures necessary to remedy the harm caused by their noncompliance with Section 7 of the NVRA, including, without limitation, ensuring that individuals affected by the Defendants' non-compliance with Section 7 of the NVRA are provided immediate opportunities to register to vote or change their voter registration addresses as required by Section 7;

(iv)    Directing the Defendants, under a court-approved plan with appropriate reporting and monitoring requirements, to take all steps necessary to ensure ongoing compliance with the requirements of Section 7 of the NVRA, 42 U.S.C. § 1973gg-5, including, without limitation, training and monitoring personnel to ensure that designated agencies are distributing voter registration application forms and other materials to each person who applies, recertifies, renews, or changes an address in connection with public assistance benefits; inquiring of all clients, in writing, whether they would like to register to vote or change their voter registration addresses during their visit or transaction with the agency; assisting clients in completing the voter registration applications; accepting completed voter registration application forms and transmitting them to the appropriate election authority, and providing other voter registration services and assistance as required by the NVRA;

(v)    Awarding the Plaintiffs costs and disbursements incurred in connection with this action, including, without limitation, reasonable attorneys fees and costs pursuant to 42 U.S.C. § 1973gg-9(c);

(vi)    Retaining jurisdiction over this action to ensure that the Defendants are complying with their obligations under the NVRA; and

(vii)    Awarding such other equitable and further relief as the Court deems just and proper.

DATED:  April 19, 2011

Respectfully submitted,

    Ronald Wilson
Ronald L. Wilson (LSBN 13575)
701 Poydras Street – Suite 4100
New Orleans, Louisiana  70139

Telephone: (504) 525-4361
Facsimile: (504) 525-4380
Email: cabral2@aol.com

NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.
John Payton
Debo P. Adegbile
Kristen Clarke*
Ryan P. Haygood
Dale Ho*
Natasha Korgaonkar
99 Hudson St., Suite 1600
New York, NY 10013
Telephone: (212) 965-2252
Facsimile: (212) 965-7592
Email: dho@NAACPLDF.ORG
Email: kclarke@NAACPLDF.ORG
*MOTION FOR ADMISSION PRO HAC
VICE PENDING

PROJECT VOTE
Nicole K. Zeitler*
Niyati Shah*
737 ½ 8th Street SE
Washington, DC 20003
Telephone: (202) 546-4173 Ext. 303
Facsimile: (202) 629-3754
Email: nzeitler@projectvote.org
Email: nshah@projectvote.org
*MOTION FOR ADMISSION PRO HAC
VICE PENDING