UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

ROY FERRAND, LUTHER SCOTT, JR.,       CIVIL ACTION NO. 2:11-00926
and LOUISIANA STATE CONFERENCE               LMA - JCW
OF THE NAACP, for themselves and all
other persons similarly situated,

      v.

TOM SCHEDLER in his official capacity
as the Louisiana Secretary of State, RUTH
JOHNSON, in her official capacity as
Secretary of the Louisiana Department of
Children & Family Services, and BRUCE
D. GREENSTEIN, in his official capacity
as Secretary of the Louisiana Department
of Health & Hospitals,

MEMORANDUM OF DEFENDANT, TOM SCHEDLER IN
HIS OFFICIAL CAPACITY AS LOUISIANA SECRETARY OF STATE,
IN SUPPORT OF MOTION TO DISMISS

MAY IT PLEASE THE COURT:

I.     INTRODUCTION

     Roy Ferrand, Luther Scott, Jr., and Louisiana State Conference of the NAACP (La.

NAACP) filed this Complaint against Louisiana State officials in their official capacities

(Tom Schedler, Secretary of State; Ruth Johnson, Secretary of Department of Children and

Family Services (DCFS); and Bruce Greenstein, Secretary of Department of Health and

Hospitals(DHH)) for declaratory and injunctive relief under 42 U.S.C. § 1973 gg-9(b) of the

National Voter Registration Act (NVRA).

-1-

Louisiana has been effectuating the provisions of the NVRA since its inception. Plaintiffs do not contend that the NVRA is not being effectuated in Louisiana at public assistance agencies in any fashion; rather, the Complaint alleges that the NVRA is not being followed with "every application for public benefits, recertification/renewal, and change of address."  The investigations conducted by plaintiffs in 2008, 2009 and 2010 related in the Complaint at ¶¶ 57-77 suggest perhaps partial noncompliance by some staff at public assistance agencies but also reveal compliance at those same offices by other staff.

Tom Schedler files this memorandum in support of his motion to dismiss.  The Complaint should be dismissed on the following grounds.

A.      This Court Should Dismiss Plaintiffs' Claims For Relief For Failure To Satisfy The Requirements of 42 U.S.C. 1973gg-9(b) Prior To Filing Suit;

B.      This Court Should Dismiss The Complaint of La. NAACP Because It Lacks Standing To Sue;

C.      This Court Should Dismiss The Plaintiffs' Action For Declaratory Relief Because It Seeks To Adjudicate Past Conduct;

D.      This Court Lacks Subject Matter Jurisdiction Over the Plaintiffs' Second Claim For Relief Because The Eleventh Amendment Bars All State Law Claims For Injunctive Or Declaratory Relief; and

E.      This Court Should Dismiss The Plaintiffs' Claims For Imposition Of A Court-Approved Plan of Reporting And Monitoring Because The NVRA Does Not Require Court-Approved Reporting And Monitoring.

## II.  FACTUAL BACKGROUND

Notice of Suit

The NVRA allows a private right of action for civil enforcement of the NVRA

provided prerequisites are met prior to filing suit.  A person aggrieved by a violation of the

NVRA must first provide written notice of the violation to the chief election official of the

state.  Only if the violation is not corrected within 90 days after receipt of the notice of the

violation may the person aggrieved then bring a civil action for declaratory and injunctive

relief, 42 U.S.C. 1973gg-9(b).

Paragraphs 84 to 97 of the 137 paragraph, 36 page, fact specific Complaint (Doc. 1),

entitled "Notice of Violation and Defendants' Failure To Cure," set forth efforts made by one

plaintiff, La. NAACP, to attempt to satisfy the requirements of 42 U.S.C. 1973gg-9 prior to

filing suit.  The La. NAACP sent a letter dated January 12, 2011 to Defendant Schedler

(Doc. 1, Ex. A).  There is no allegation that any notice was sent by either of the two

individual plaintiffs, Ferrand or Scott.

As noted in the February 25, 2011, letter from La. NAACP attorneys to Schedler

(Doc. 1, Ex. B), Schedler wrote on February 14, 2011, advising that the January 12, 2011,

letter did not constitute "written notice of the violation" required by 42 U.S.C. 1973gg-9(b)

so as to afford an opportunity to correct within 90 days.  The January 12, 2011 letter made

the bold unsubstantiated assertion that "Louisiana public assistance agencies are not in

compliance with the National Voter Registration Act of 1993, 42 U.S.C. § 1973gg, *et seq.*

(The 'NVRA')."  The letter alluded to "substantial evidence" of "failing to provide

mandatory voter registration services at its public assistance offices as required by the

NVRA" but noted no specific violation.  The letter made general reference to a "survey of

clients and staff at public service agencies throughout the state" which allegedly identified again unspecified "widespread noncompliance with the law."   The letter referenced a "number of instances" in which applications to vote required by the NVRA were allegedly not provided; however, no specific person, place or date was mentioned.   Reference was made in the letter to "individuals" who allegedly reported no offer of registration was made, although required, yet no persons, places or dates were provided.   The letter claimed unspecified personnel at unspecified agencies were "wholly unfamiliar with their voter registration obligations under the NVRA" but provided no specifics.   The letter alleged a "number of agencies" did not have hard copies of voter registration forms available for clients but did not list an agency or date.

Due to the broad generality and the lack of specificity of the allegations of alleged noncompliance, the January 12, 2011 letter is not a specific notice of violation from a person aggrieved as required by 42 U.S.C. § 1973gg-9(b)(1).   As the Complaint reveals, the La. NAACP had and has extensive factual knowledge of what it alleges are Defendant's NVRA violations (¶¶ 37 - 83, pp. 10-24), including charts and details of investigations from December 2008 through November 2010, all information not included in the January 12, 2011 letter.   The February 25, 2011 letter (Doc 1, Ex. B) does cite specific instances of alleged violations, listing 29 offices of Family Support, 12 WIC offices and 13 Medicaid offices where specific violations are alleged.   Also named and perhaps overlapping with some of those named above were 11 offices of Family Support, 7 Medicaid offices and

another 8 offices of Family Support.  The specific types of violations allegedly found at each parish office named were noted.  Once armed with this information, the written notice of the violations, Defendants have acted to correct the identified violations, if any, within the 90 day period afforded by 42 U.S.C. 1973gg-9(b)(2), a period which did not end until May 26, 2011.  Nonetheless, La. NAACP and the individuals, Ferrand and Scott, filed this Complaint on April 19, 2011, with no §§ 1973gg-9(b)(2) notice afforded by Ferrand or Scott and before the 90 days had passed for the La. NAACP notice.

La. NAACP Standing Allegations

The allegations with respect to standing of the La. NAACP are found in ¶¶ 13, 16, and 107-119 of the Complaint.  The La. NAACP alleges that, as a result of the alleged failure of Defendants to comply with the NVRA, it and its members have expended "substantial resources," including staff time (¶ 115 states there are no employees, only volunteers) and volunteer allocation, to make voter registration available to minority and low income citizens, particularly those who should have been offered voter registration by DCFS and DHH offices at every public transaction that includes an application, recertification, renewal, or change of address. (¶ 13)

The La. NAACP alleges that, in furtherance of its mission (set forth in ¶ 107), it has engaged in voter registration in recent years.  Enforcement of civil rights statutes relating to voting, including the NVRA, is alleged as a core concern of the La. NAACP (¶ 109), causing La. NAACP to seek to register all of its members and others to vote (¶110).  The La. NAACP

alleges it engages in <u>regular voter registration drives</u> across Louisiana, with emphasis on minority communities, directing efforts at poor African Americans (¶ 111); and notes <u>it will remain engaged in voter registration opportunities</u> (¶ 112). The La. NAACP admits it does not employ workers; and that its work is performed by volunteers (¶ 115). The La. NAACP contends that more volunteers are allocated to voter registration drives when the need for voter registration is great, and fewer volunteers are needed for registration drives when more people are already registered (¶ 116). La. NAACP contends that the alleged NVRA noncompliance has resulted in some low-income and minority Louisiana citizens missing opportunity to register at a Louisiana public assistance office (¶ 113), which allegedly "frustrates" the organizational mission of the La. NAACP to protect the voting rights of members of communities it serves in Louisiana. The most direct allegation found in the Complaint is that such <u>"had a direct effect on Plaintiff Louisiana NAACP's volunteer allocation with respect to voter registration"</u> (¶ 114). The La. NAACP claims the alleged NVRA noncompliance has caused it to send volunteers to assist people with voter registration who should have been offered voter registration services by Defendants (¶ 117). If Defendants were NVRA compliant, the La. NAACP contends it could reallocate volunteers currently devoted to registration drives "that could have been devoted to registering voters at other locations, or to other activities all together" (¶ 118). The alleged harm is characterized as "inability to best use its volunteers and resources" (¶ 119).

III.    STANDARD OF REVIEW

Review of a motion to dismiss for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1) requires a court to "accept as true all material factual allegations in the complaint." *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974). Allegations in the complaint should be construed in favor of the pleader. *Scheuer*, 416 U.S. at 237. A court, however, is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain,* 478 U.S. 265, 286 (1986). When the question to be considered is one involving the jurisdiction of federal courts, "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Norton v. Larney,* 266 U.S. 511, 515 (1925), *accord, Walls v. Waste Resource Corp.,* 761 F.2d 311, 317 (6th Cir. 1985). The plaintiff bears the burden of proving that subject matter jurisdiction exists. *Walls*, 761 F.2d at 317, *citing, McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189 (1936).

Review of a complaint for failure to state a claim under Fed.R.Civ.P. 12(b)(6) requires the Court to construe the complaint liberally in plaintiff's favor and accept all factual allegations and permission inferences as true. See *Sistrunk v. City of Strongville,* 99 F.3d 194, 197 (6th Cir. 1996). Despite this instruction to construe the complaint liberally in a plaintiff's favor, a complaint must contain "either direct or inferential allegations respecting all the material elements" and those allegations must amount to more than "bare assertions of legal conclusions." *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 436 (6th

Cir. 1988) (quoting *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1106 (7th Cir. 1984)).   Ultimately, because a Fed.R.Civ.P. 12(b)(6) motion tests the sufficiency of the complaint, the Court's review amounts to a determination of whether it is possible for the plaintiff to prove any set of facts in support of his claim that would entitle him to relief.  See *Miller v. Currie,* 50 F.3d 373, 377 (6th Cir. 1995).

IV.   LAW AND ARGUMENT

A.   This Court Should Dismiss Plaintiffs' Claims For Relief For Failure To Satisfy The
Requirements of 42 U.S.C. 1973gg-9(b) Prior To Filing Suit

    1.   Plaintiffs Ferrand and Scott Provided No Notice; and

    2.   Plaintiff La. NAACP Filed Suit Prior To Affording Defendants The Required
       90 Days To Correct The Alleged Violation(s).

Prior to filing a private action under the NVRA, the prerequisites set forth in 42 U.S.C. 1973gg-9(b) must be met:

> §1973gg-9.  Civil enforcement and private right of action
>
>        *   *   *
>
> (b) Private right of action
> (1) A person who is aggrieved by a violation of this subchapter
> may provide written notice of the violation to the chief election
> official of the state involved.
> (2) If the violation is not corrected within 90 days after receipt
> of a notice under paragraph (1), or within 20 days after receipt
> of the notice if the violation occurred 120 before the date of an
> election for federal office, the aggrieved person may bring a
> civil action in an appropriate district court for declaratory or
> injunctive relief with respect to the violation.

    1.   Plaintiffs Ferrand and Scott Provided No Notice

The individual plaintiffs, Ferrand and Scott, provided no notice of their very specific

allegations that each was not afforded the opportunity to register to vote when applying for food stamps.  In *Broyles v. Texas*, 618 F.Supp. 661, 691 (S.D. Tex. 2009), the first "notice" the individual plaintiffs gave the Secretary of State was in the form of the Complaint.  The same is true here.  The district court there held that these voters could not pursue a private cause of action based on alleged violations of the NVRA, as they have failed to provide prior notice and thus failed to meet the 42 U.S.C. 1973-gg(9) requirements prior to filing suit.  The Court there recognized:

> The language and legislative history of 42 U.S.C. § 1973gg-9(b) indicate that Congress structured the notice requirement in such a way that notice would provide states in violation of the Act an opportunity to attempt compliance before facing litigation. Senate Comm. On Rules and Admin., National Voter Registration Act of 1993, S.Rep. No. 6, 103d Cong., 1st Sess. 41 (1993), *citing ACORN v. Miller*, 129 F.3d 833, 838 (6th Cir. 1997).

This situation before this Court is otherwise factually distinguishable from *ACORN v. Miller*, 129 F.3d 833(6th Cir. 1997), cited in the *Broyles* decision, a case which concerned Michigan's <u>refusal</u> to follow the NVRA in any respect.  In *ACORN v. Miller*, the court found that specific allegations as to specific violations at specific locations were not required because Michigan was not following the NVRA in any manner.  It also found that the individual plaintiffs there were not required to give notice.  The holding is however, limited to the facts of that case. The Sixth Circuit found that because ACORN, the first plaintiff, gave actual notice of the complete failure, and Michigan then indicated a refusal to comply in any fashion with the NVRA, there was no need for individual plaintiffs to give notice in

light of Michigan's refusal to comply in any fashion.

The failure of the individual plaintiffs here, Ferrand and Scott, to afford the required § 1973gg-9(b) notice requires dismissal of their Complaint, as the district court did in *Broyles v. Texas, supra*.

2.    Plaintiff La. NAACP Filed Suit Prior To Affording Defendants The Required 90 Days To Correct the Alleged Violation(s)

The organizational plaintiff, La. NAACP, did send a letter dated January 12, 2011; however, that letter provided no notice of a specific violation, only general claims (despite that fact that the letter indicated knowledge of specific violations by specific individuals at specific locations at specific times). Defendant Schedler, mindful of his responsibility to coordinate state responsibilities under the NVRA, wrote to the La. NAACP to request actual notice of alleged violations, which notice was afforded by a February 25, 2011 letter. Knowledge of these specifics has allowed the Secretary of State to use the 90 day period afforded by 42 U.S.C. § 1973gg-9(b)(2) to seek to correct the alleged violations, fulfilling the Congressional intent noted in *ACORN v. Miller*, 129 F.3d at 838.

There are no Fifth Circuit cases, and not many cases at all, dealing with the sufficiency of notice under 42 U.S.C. 1973gg-9(b). The reported cases were decided early during the history of the NVRA and dealt with either a refusal to effectuate the NVRA by a state or the failure to effectuate its provisions at all at a specified location. None have been found dealing with sporadic noncompliance by specific locations as alleged in this Complaint. As noted above, *ACORN v. Miller*, *supra*, concerned Michigan's refusal to

effectuate the NVRA in any fashion.  Unlike Michigan, Louisiana has been following the NVRA since the 1990's and is herein alleged to have been partial noncompliant at only some locations.

In *National Coal. For Students with Disabilities Educ. And Legal Defense Fund v. Scales*, 150 F.Supp.2d 845, 851 (D. Mich. 2001), the allegation of violation concerned only one office, the disability service office at the University of Maryland at College Park, an office not providing NVRA required services at all.  The district court found a general allegation that services are not offered at that office sufficient to constitute notice of the violation, holding: "[T]he statement that [a state public assistance agency] failed to provide voter registration services to its *clients* that *made their initial application for services . . .* is sufficient to dispense with the notice provisions of the NVRA."  Such cannot be compared, however, with a bareboned allegation that the entire State of Louisiana is noncompliant because of alleged violations at unspecified locations.  The notice given to the Maryland authority of wholesale noncompliance at a specific location afforded an opportunity to correct.  The notice given to Louisiana in the January 12, 2011 letter did not.

Defendant Schedler's February 14, 2011 letter requesting the specifics alluded to in the January 12, 2011 letter, showed that he, as the chief Louisiana election official designated to coordinate responsibilities under the NVRA, took seriously the unsubstantiated general assertion of NVRA noncompliance by Louisiana public assistance agencies.  Providing the specifics and details the NAACP claimed to have would allow and has allowed the

Department to investigate to ascertain whether the procedures set forth by the Department to ensure compliance with the NVRA are being followed in Louisiana.  Louisiana, unlike Michigan, has not refused to comply with the NVRA; it has effectuated policies and procedures to comply, and has complied.  Louisiana, unlike Maryland, does not have an entire specified office disregarding the NVRA in its entirety.  In the event some specific agencies or employees fall short of compliance, the notice provision requires the state to be so advised and given 90 days to correct before a private enforcement action can be filed.  The January 12, 2011 letter did not provide the required notice.

Defendant has not been afforded the notice required by 42 U.S.C. 1973gg-9(2).  Notice sufficient to afford an opportunity to cure was not mailed by the La. NAACP until February 14, 2011.  The complaint was filed on April 19, 2001.  The law requires the complaint not be filed until 90 days have passed, not until after May 26, 2011.  The filing prior to the passage of 90 days fails to state a claim upon which relief can be granted.  The Complaint of the La. NAACP should be dismissed.

B.    This Court Should Dismiss The Complaint of La. NAACP Because It Lacks Standing To Sue

To bring a suit in federal court, the plaintiff has the burden of showing it has standing to bring the claim pursuant to Article III of the U.S. Constitution.  See *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 471 (1982).  As an aspect of justiciability, the standing question is whether the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant his/her

invocation of a federal-court jurisdiction and to justify exercise of the court's powers on his/her behalf.  *Warth v. Seldin*, 422 U.S. 490, 498-499 (1975).

There are two types of standing an organization such as the La. NAACP might have, associational or organizational.  Under either, plaintiff must meet the requirements set forth in *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 112 S.Ct. #2130, 119 L.Ed.2d 351 (1992), specifically:

1.      Plaintiff must have suffered an "injury in fact" - an invasion of a legally protected property interest which is:

(a)      "concrete and particularized" and

(b)      "actual or imminent, not 'conjectural' or 'hypothetical';" and

2.      There must be a connection between the injury and the conduct complained of -- the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court," and

3.      It must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

Associational Standing

In order to demonstrate *associational* standing (that is, standing to sue on behalf of its members), a plaintiff organization must show that: 1) its members would otherwise have standing to sue in their own right; 2) the interests it seeks to protect are germane to the organization's purpose; and 3) neither the claim asserted nor the relief requested requires the

participation of the individual members in the lawsuit. *Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333 (1977).

The complaint does not allege associational standing. There is no allegation that a specific member of the La. NAACP was not offered the opportunity to register to vote when required by the NVRA. The individual plaintiffs, Ferrand and Scott, are not alleged to be La. NAACP members.

<u>Organizational Standing</u>

To demonstrate standing *on its own behalf,* an organization must show that it has itself suffered an injury; it must be seeking to vindicate a right or immunity that the organization itself enjoys. See *id*. at 511. In *NAACP v. City of Kyle, Texas,* 626 F.3d 233, 238 (5th Cir. 2010), the Fifth Circuit recognized that

> "...an organization may establish injury in fact by showing that it had diverted significant resources to counteract the defendant's conduct, hence, the defendant's conduct significantly and 'perceptibly impaired' the organization's ability to provide its 'activities - with the consequent drain on the organization's resources -' *Havens*, 455 U.S. at 379, 102 S.Ct. 1114. Such injury must be concrete and particularized."

The La. NAACP contends that the alleged failure of the Defendants to furnish the required voter registration opportunities at public assistance agencies has "frustrated" its organizational mission (to protect voting rights of members of communities its serves) and had a "direct effect" on "volunteer allocation with respect to voter registration." The La. NAACP contends it had to send additional volunteers to its existing drives to conduct voter

-14-

registration of people who should have been offered the service by the public assistance agencies, volunteers who could have been used for other drives or other services. The La. NAACP admits that voter registration drives are an activity it already conducts, has conducted and will continue to conduct regardless of the allegations of noncompliance. The La. NAACP does not contend that its method for allocation of volunteers to work at the drives has changed, in fact, it admits it allocates more volunteers where the need is greater.

Registration drives conducted by private, non-governmental entities such as La. NAACP is a method of voter registration recognized by the NVRA, just as is registration at public assistance agencies. In order to increase the number of eligible citizens who register to vote in elections for federal office, 42 U.S.C. 1973gg(b)(1), Congress enacted the National Voter Registration Act, 42 U.S.C. 1973gg et seq. (NVRA) in 1993, to provide methods for eligible voters to become registered to vote in federal elections. The NVRA requires, with regard to federal elections, that states must adopt procedures which allow eligible persons to register to vote by three different methods: (1) by application made simultaneously with an application for a motor vehicle driver's license, 42 U.S.C. 1973gg-3; (2) by mail application, 42 U.S.C. 1973gg-4; (3) and by application in person at designated registration sites, including public assistance agencies, 42 U.S.C. 1973gg-5. The Complaint alleges partial noncompliance at public assistance agencies, the third method required under the NVRA. The activities of the La. NAACP are facilitated by mail registration, the second method. The NVRA recognizes that the La. NAACP and other similar entities will conduct

-15-

voter registration drives using mail applications and encourage such.  See 42 U.S.C. 1973gg-4(b):

> § 1973gg-4.  Mail registration
>
> *   *   *
>
> (b) Availability of forms
>
> The chief State election official of a State shall made the forms described in subsection (a) of this section available for distribution through governmental and private entities, with particular emphasis on making them available for organized voter registration programs.

The La. NAACP admits that it is a private entity that engages in voter registration drives and will continue to engage in voter registration drives in Louisiana.  The NVRA clearly contemplated the voter registration efforts of the NAACP, providing procedures for the organization to receive mail registration forms to use for its organized voter registration programs.  These programs exist under the NVRA in addition to procedure for registering simultaneously with applying for a drivers license and for registering in person while conducting certain business at public assistance agencies.  No one exclusive method exists.  The NVRA sought to provide registration opportunities and does provide those opportunities through at least three forms of procedure.

The La. NAACP lacks standing to sue on its own behalf, because it is not seeking to vindicate a right or immunity that the La. NAACP enjoys.  See *Warth v. Seldin,* 422 U.S. 490, 511 (1975).  The La. NAACP has not even attempted to identify such a right or immunity, unless its attempt is its allegation that its volunteer allocation has been effected.

-16-

But the La. NAACP enjoys no legal right *itself* to public-assistance agencies' compliance with the NVRA.   Furthermore, the La. NAACP has no legal right to specific volunteer allocation.  The La. NAACP admits its protocol is to allocate more volunteers where the need is greater.  The La. NAACP fails to meet the first *Lujan* test for organizational standing.  It has suffered no injury in fact; no legally protected property interest of the La. NAACP has been invaded, certainly not one concrete and particularized, and actual or imminent, not conjectural or hypothetical.

The second *Lujan* test for organizational standing likewise fails.  The La. NAACP admittedly conducts drives and allocates more volunteers where the need is greatest, regardless of the cause.  The fact that it allegedly has continued to allocate more volunteers where a perceived need is great follows its standard protocol, causing it no injury, certainly not one traceable to any actions of defendants.  This case is distinguishable from *Harkless v. Brunner,* 545 F.3d 445, 458-459 (6th Cir. 2008) where standing was found based on the assertion that "ACORN would not have expended funds on voter registration activities outside DJFS offices but for defendants' NVRA violations."  Likewise, in *National Coalition for Students with Disabilities Education and Legal Defense Fund v. Scales,* 150 F.Supp.2d 845, 850 (D. Md. 2001), standing was found because "If the University had complied with the NVRA, NCSD would not have to devote time and money towards voter registration efforts in College Park," the site of the university where NVRA non-compliance was alleged.  The La. NAACP conducts these drives and, as standard operating procedure, assigns

volunteers where the need is greater.  It has undertaken no new activity as a result of defendants' alleged non-compliance.

In *ACORN v. Fowler,* 178 F.3d 350, 360 (5th Cir. 1999), the Fifth Circuit recognized that continuing activities already conducted by the organization is insufficient to confer standing:

> In addition we have grave doubts that ACORN's allegations of injury due to including voter registration applications with its membership applications or 'set[ting] up' a voter registration table at house fairs that it already attends suffice to confer standing on ACORN to sue on its own behalf.  We fail to see any concrete or identifiable resources that ACORN could reallocate to other uses if Louisiana were to properly implement the NVRA, that it now spends engaging in these activities.

In *ACORN v. Fowler, supra*, ACORN's claim that it expended resources registering voters in low registration areas who would have been registered if defendants had complied with NVRA requirements to make voter registration available at public assistance offices, was sufficient to confer standing.  The Court obviously determined that concentration of drives in low registration areas equated with a portion of the resources spent counteracting the alleged failure to implement the NVRA.  The Court termed these "wasted resources" which ACORN could have put to other use, sufficient to confer standing.

The Complaint here is distinguishable as it does not allege more voter registration drives are being conducted or that drives are being concentrated in specific areas.  It simply alleges at most that it cannot allocate volunteers as it would like as it is forced to allocate more volunteers to its existing drives because of the alleged noncompliance at public

-18-

assistance agencies, at the same time admitting that its protocol is to allocate more volunteers where the need is greater.  Nothing has changed.  Its method of volunteer allocation continues as before, with more volunteers being allocated where the need is greater.

The standing question here becomes a matter of degree.  La. NAACP was careful to craft the Complaint using terms found in existing jurisprudence.  The question becomes whether these more limited standing allegations are injury in fact (invasion of a legally protected property interest) which is concrete and particularized and actual or imminent, not conjectural or hypothetical; whether the injury is traceable to the challenged action of the defendant; and whether it is likely that the injury will be redressed by a favorable decision.

The La. NAACP is merely doing what the NVRA contemplated it would do, conducting private registration drives.  No injury in fact has been shown.  The alleged injury to the La. NAACP is not traceable to the actions of Defendant; La. NAACP admits it conducts and will continue to conduct voter registration drives and admits that its protocol calls for it to allocate more volunteers where the need is greater.  The claim that the need is greater because of the alleged partial noncompliance at some public assistance agencies did not cause injury to La. NAACP.  The La. NAACP simply continued to follow its protocol and allegedly allocated more volunteers.  The alleged intermittent noncompliance did not cause it to conduct more drives or concentrate those drives in certain areas (as in *ACORN v. Fowler*).

The La. NAACP lacks standing, the Complaint accordingly fails to state a claim under

Fed.R.Civ.P. 12(b)(6) and should be dismissed.

C.     This Court Should Dismiss The Plaintiffs' Action For Declaratory Relief Because It Seeks To Adjudicate Past Conduct

Defendant Schedler adopts the arguments of Defendant Greenstein on this ground for dismissal.  Inasmuch as the Complaint seeks a declaratory judgment which adjudicates past conduct and proclaims that the defendants are liable to the plaintiffs, it is an inappropriate use of declaratory judgment, and the claim for declaratory relief should be dismissed under Fed.R.Civ.P. 12(b)(1).

D.     This Court Lacks Subject Matter Jurisdiction Over the Plaintiffs' Second Claim For Relief Because The Eleventh Amendment Bars All State Law Claims For Injunctive Or Declaratory Relief

Defendant Schedler adopts the arguments of Defendant Greenstein on this ground for dismissal Plaintiffs second claim for relief alleges that defendants have violated Louisiana laws and seeks declaratory and injunctive relief based upon Louisiana law.  The Eleventh Amendment to the United States Constitution bars all such claims in this Court.  Because the Eleventh Amendment bars federal courts from granting injunctive and declaratory relief against state officials for claims based upon state law, this Court must dismiss the plaintiffs' Second Claim for Relief for lack of subject matter jurisdiction, Fed.R.Civ.P. 12(b)(1).

E.     This Court Should Dismiss The Plaintiffs' Claims For Imposition Of A Court-Approved Plan of Reporting And Monitoring Because The NVRA Does Not Require Court-Approved Reporting And Monitoring

Defendant Schedler adopts the arguments of Defendant Greenstein on this ground for dismissal.  The NVRA, 42 U.S.C. 1973gg-9(b), clearly limits the Court's jurisdiction, both

equitable and otherwise, to declaratory or injunctive relief.  Accordingly, the plaintiffs have

no right to seek the additional reporting and monitoring relief requested in their Complaint.

Requiring paragraphs ii and iv of the prayer for relief should be dismissed, pursuant to Fed.

R. Civ. P. 12(b)(6), for failure to state a claim upon which relief can be granted.

<u>CONCLUSION</u>

This Complaint should be dismissed in its entirety for failure of any plaintiff to satisfy

the notice requirements of 42 U.S.C. 1973gg-9(b) prior to filing the Complaint.  The

individual plaintiffs, Ferrand and Scott, failed to provide the required notice at all.  The

notice initially provided by plaintiff La. NAACP was inadequate.  Although adequate notice

was subsequently provided, the Complaint was filed prior to affording the defendant the 90

days required to correct.

The Complaint of the La. NAACP should also be dismissed under Fed.R.Civ.P.

12(b)(6) because the La. NAACP lacks standing to assert this Complaint in federal court.

There are three other grounds requiring dismissal of parts of plaintiffs' claims under

Fed.R.Civ.P. 12(b)(1) and (6).  The plaintiffs' action for declaratory judgment seeks to

adjudicate past conduct and is thus an inappropriate use of declaratory judgment and should

be dismissed.  Next, the plaintiffs' Second Claim for Relief is based upon allegations of state

law and is barred by the Eleventh Amendment to the United States Constitution, requiring

dismissal.  Lastly, the request for monitoring and reporting as relief do not fall within relief

afforded 42 U.S.C. 1973gg-9 and should be dismissed.

Respectfully Submitted:


s/Celia R. Cangelosi
CELIA R. CANGELOSI
Bar Roll No. 12140
918 Government Street, Suite 101
P.O. Box 3036
Baton Rouge, LA 70821
Telephone: (225) 387-0511
Facsimile: (225) 387-3198
Email:  celiacan@bellsouth.net


Attorney for Defendant, Tom Schedler in his
official capacity as Louisiana Secretary of State

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a copy of the above and foregoing "Memorandum of Defendant, Tom Schedler In His Official Capacity As Louisiana Secretary Of State, In Support Of Motion To Dismiss" was sent electronically or via U.S. First Class Mail, postage prepaid, to the following:

Ronald L. Wilson (cabral2@aol.com)
710 Poydras Street, Suite 4100
New Orleans, LA 70139

Kristen Clarke (kclarke@naacpldf.org)
Dale Ho (dho@naacpldf.org)
Natasha Korgaonkar
(nkorgaonkar@naacpldf.org)
99 Hudson Street, Suite 1600
New York, NY 10013

Nicole K. Zeitler
(nzeitler@projectvote.org)
737 ½ 8th Street SE
Washington, DC 20003

William P. Bryan, III
(bryanb@ag.state.la.us )
Louisiana Department of Justice
1885 N. 3rd Street
Baton Rouge, LA 70804

Stephen R. Russo (srusso@la.gov)
David McCay (david.mccay@la.gov)
Douglas L. Cade (douglas.cade@la.gov)
Kimberly L. Humbles (kim.humbles@la.gov)
Department of Health & Hospitals
Bureau of Legal Services
Bienville Blvd.
628 N. 4th Street
Baton Rouge, LA 70802

Amy Colby (amy.colby@la.gov)
Celia Alexander (celia.alexander@la.gov)
Bureau of General Counsel
Louisiana Department of Children and Family Services
P.O. Box 1887
Baton Rouge, LA 70821

Baton Rouge, Louisiana, this 2nd day of June, 2011.

s/Celia R. Cangelosi
CELIA R. CANGELOSI