**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **ROY FERRAND, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **No. 11-926** |
| **TOM SCHEDLER, ET AL.** | **SECTION "I"** |

**ORDER AND REASONS**

Before the Court are motions to dismiss[1] filed pursuant to Fed. R. Civ. P. 12(b)(1) and (6) by defendants Bruce D. Greenstein ("Greenstein"), in his official capacity as Secretary of the Louisiana Department of Health and Hospitals, Tom Schedler ("Schedler"), in his official capacity as Louisiana Secretary of State, and Ruth Johnson ("Johnson"), in her official capacity as Secretary of the Louisiana Department of Children and Family Services. Plaintiffs Roy Ferrand ("Ferrand"), Luther Scott, Jr. ("Scott"), and the Louisiana State Conference of the NAACP ("NAACP") (collectively, "plaintiffs") oppose defendants' motions.[2] For the following reasons, defendants' motions are **GRANTED IN PART** and **DENIED IN PART**.

***BACKGROUND***

Congress enacted the National Voter Registration Act of 1993 ("NVRA" or "the Act") in order to "increase the number of eligible citizens who register to vote in elections for Federal office." 42 U.S.C. § 1973gg(b)(1). Among its many provisions, the NVRA requires public assistance offices to distribute voter registration forms, assist applicants in completing their voter

[1] R. Doc. Nos. 25, 26 and 28.
[2] R. Doc. No. 67.

registration forms unless such assistance is refused, and transmit completed forms to the appropriate state election official. 42 U.S.C. § 1973gg *et seq*. The NVRA allows a private right of action for violations of the NVRA. A person who is "aggrieved by a violation of the Act may provide written notice of the violation to the chief election official" for the relevant state. 42 U.S.C. § 1973gg-9(b)(1). Moreover, the NVRA provides that:

> If the violation is not corrected within 90 days after receipt of a notice under paragraph (1), or within 20 days after receipt of the notice if the violation occurred within 120 days before the date of an election for Federal office, the aggrieved person may bring a civil action in an appropriate district court for declaratory or injunctive relief with respect to the violation.

42 U.S.C. § 1973gg-9(b)(2).

Plaintiffs allege that Ferrand and Scott are individuals who are not registered to vote. According to plaintiffs, Ferrand and Scott did not receive NVRA-mandated voter registration assistance when they applied for public assistance.[3]

On January 12, 2011, counsel for plaintiffs sent a letter to defendants informing them that Louisiana public assistance agencies were not in compliance with the NVRA. Counsel sent this letter in order to comply with the NVRA's provision requiring that Louisiana's "chief election official" receive notice of the state's alleged NVRA violations. 42 U.S.C. § 1973gg-9.[4] Plaintiffs filed their lawsuit seeking to enforce the NVRA on April 19, 2011, more than ninety days after sending their January 12, 2011, letters to defendants.

Defendants raise five principal issues in their motions to dismiss: (1) that plaintiff NAACP lacks standing to sue to enforce the NVRA; (2) that the Eleventh Amendment of the U.S. Constitution bars plaintiffs' state law claims; (3) that plaintiffs' did not satisfy the 42 U.S.C.

[3] R. Doc. No. 1, pp. 26-28.
[4] R. Doc. No. 1, p. 24.

1973gg-9(b) notice requirement prior to filing their lawsuit; (4) that plaintiffs' request for declaratory relief is unavailable because it seeks to adjudicate past conduct; and (5) that the NVRA does not mandate court-approved monitoring and reporting requirements.

***STANDARD OF LAW***

A motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(1) "allow[s] a party to challenge the subject matter jurisdiction of the district court to hear a case." Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001). The party asserting jurisdiction carries the burden of proof. Id. The district court may base its determination as to its subject matter jurisdiction on: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Id. Furthermore, Article III of the Constitution limits the federal courts to adjudicating actual "cases" or "controversies." U.S. Const. art. III, § 2. As such, plaintiffs must show that they have standing to assert a claim in federal court. Standing is a jurisdictional question that a party may raise pursuant to Rule 12(b)(1). Xerox Corp. v. Genmoora Corp., 888 F.2d 345, 350 (5th Cir. 1989).

Standing has two components: constitutional and prudential. Ass'n of Comm. Org. for Reform Now v. Fowler, 178 F.3d 350, 356 (5th Cir. 1999). The Fifth Circuit has held that "Congress intended the NVRA's private-right-of-action provision to eliminate prudential limitations on standing." Id. at 365. Consequently, organizations like the NAACP only have to demonstrate that they have constitutional, or "Article III," standing. Id. In order to establish Article III standing, a plaintiff must allege: (1) an injury in-fact; (2) fairly traceable to the defendant's actions; and (3) capable of being redressed by a favorable decision from the court. Rivera v. Wyeth-Ayerst Laboratories, 283 F.3d 315, 318 (5th Cir. 2002)

Pursuant to Fed. R. Civ. P. 12(b)(6), a district court may dismiss a complaint, or any part of it, for failure to state a claim upon which relief can be granted if the plaintiff has not set forth a factual allegation in support of his claim that would entitle him to relief. Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007); Cuvillier v. Taylor, 503 F.3d 397, 401 (5th Cir. 2007). As the Fifth Circuit explained in Gonzalez v. Kay:

> "Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The Supreme Court recently expounded upon the Twombly standard, explaining that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, --- U.S. ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Twombly, 550 U.S. at 570, 127 S.Ct. 1955, 167 L.Ed.2d 929). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. It follows that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' " Id. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

577 F.3d 600, 603 (5th Cir. 2009).

This Court will not look beyond the factual allegations in the pleadings to determine whether relief should be granted. See Spivey v. Robertson, 197 F.3d 772, 774 (5th Cir. 1999); Baker v. Putnal, 75 F.3d 190, 196 (5th Cir. 1996). In assessing the complaint, a court must accept all well-pleaded facts as true and liberally construe all factual allegations in the light most favorable to the plaintiff. Spivey, 197 F.3d at 774; Lowrey v. Tex. A & M Univ. Sys., 117 F.3d 242, 247 (5th Cir. 1997). "Dismissal is appropriate when the complaint 'on its face show[s] a bar to relief.' " Cutrer v. McMillan, 308 Fed. Appx. 819, 820 (5th Cir. 2009) (quoting Clark v. Amoco Prod. Co., 794 F.2d 967, 970 (5th Cir. 1986)).

***DISCUSSION***

**I. NAACP's Standing to Sue**

Defendants argue that the NAACP lacks standing to sue to enforce compliance with the NVRA because, as an organization, it has not suffered an injury in fact necessary to establish Article III standing. In essence, plaintiffs must demonstrate that they have personally "suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant," that the injury "fairly can be traced to the challenged action," and that the injury "is likely to be redressed by a favorable decision." Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 472 (1982) (internal citations omitted). An organization can have standing to sue on its own behalf or as a representative of its members who have been injured. Hunt v. Washington State Apple Advertising Comm'n, 432 U.S. 333, 342-43 (1977). Because the NAACP does not allege that any of its individual members have suffered an injury due to the defendants' actions, the NAACP must demonstrate that it has standing to sue as an organization. Consequently, the NAACP must show that the organization, itself, satisfies the injury requirement. Ass'n of Amer. Physicians & Surgeons, Inc. v. Texas, 627 F.3d 547, 550 (5th Cir. 2010).

The NAACP alleges that it has expended resources in order to remedy defendants' NVRA violations. Defendants argue that these "wasted sources" are not an actionable injury because the NAACP "enjoys no legal right *itself* to public-assistance agencies' compliance with the NVRA."[5] Defendants identify the wrong inquiry.

The U.S. Supreme Court has recognized that an organization has standing to file a lawsuit on its own behalf, regardless of whether the statute at issue entitles the organization to any

---

[5] R. Doc. No. 26, p. 17 (emphasis in original).

protections, when the organization has expended resources to identify and counteract a defendant's statutory violations. Havens Realty Corp. v. Coleman, 455 U.S. 363, 379 (1982). Rather, the question properly before the Court is whether the resources that the NAACP has expended constitutes a sufficient injury.

The Fifth Circuit has conferred standing in cases where organizations have alleged similar injuries. In Ass'n of Comm. Org. v. Fowler, the Fifth Circuit found that the organization ACORN had standing to challenge the State of Louisiana's failure to comply with the NVRA. ACORN presented evidence that it had:

> expended resources registering voters in low registration areas who would have already been registered if the appellees had complied with the requirement under the NVRA that Louisiana must make voter registration material available at public aid offices. Thus, a portion of the resources ACORN has spent and currently spends on voter registration drives counteracts Louisiana's alleged failure to implement the Act. It is these wasted resources, which ACORN could have put to use registering voters that the NVRA, even properly implemented, would not have reached (or which ACORN could have put toward any other use it wished), that provide ACORN with standing to pursue its third claim in its complaint, that Louisiana has failed to comply with [the NVRA], on its own behalf.

178 F.3d 350, 361 (5th Cir. 1999).

The Court examines plaintiffs' complaint to determine if the NAACP alleges that it has expended such "wasted resources." "[G]eneral factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.' " Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992) (quoting Lujan v. National Wildlife Federation, 497 U.S. 871, 889 (1990)).

In their complaint, plaintiffs have alleged that "[v]oter registration and education is a core component of the Louisiana NAACP's mission and central to the accomplishment of its

objectives."[6] As such, the NAACP conducts voter registration drives in low-income and minority Louisiana communities, and allocates volunteers and resources to areas with the greatest need. Due to defendants' alleged non-compliance with the NVRA, the NAACP alleges that it must "send volunteers to assist people with voter registration and education who should have been offered those services" by defendants.[7] If defendants provided the NVRA-mandated voter registration services, the NAACP maintains that it could reallocate volunteers "to other activities altogether," including "disaster-related activities" or "after-school tutoring programs."[8] Defendants do not dispute that the NAACP allocates resources to these activities.

As the Fifth Circuit recognized in Fowler, having to expend these "wasted resources" on additional voter registration initiatives is traceable to defendants' failure to comply with the NVRA, and this injury would be redressed by a decision in the NAACP's favor requiring defendants to comply. The NAACP has demonstrated that it satisfies the injury requirement and that it has standing to sue. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). Accordingly, defendants' motions to dismiss the NAACP's claims due to lack of standing are **DENIED**.

### II. Whether the Eleventh Amendment Bars Claims Based on Violation of State Law

Defendants assert that plaintiffs' claims against defendants for violations of state law are barred by the Eleventh Amendment of the U.S. Constitution. Plaintiffs counter that because the state laws at issue are intended to implement the NVRA in Louisiana, plaintiffs' claims based on state law are not barred by the Eleventh Amendment.

[6] R. Doc. No. 1, p. 29.
[7] R. Doc. No. 1, p. 31.
[8] R. Doc. No. 1, p. 31.

Generally, the Eleventh Amendment bars citizens of a state from bringing suit against that state in federal court. Hans v. Louisiana, 134 U.S. 1 (1890). However, the U.S. Supreme Court has also carved out a few exceptions to such a bar.

In Ex Parte Young, the U.S. Supreme Court held that a lawsuit may be brought in federal court to enjoin a state official enforcing a state statute that violates the U.S. Constitution. 209 U.S. 123 (1907). "The theory of the case [Young] was that an unconstitutional enactment is 'void' and therefore does not 'impart to [the officer] any immunity from responsibility to the supreme authority of the United States.' . . . Since the State could not authorize the action, the officer was 'stripped of his official or representative character and [was] subjected to the consequences of his official conduct.' " Pennhurst State Sch. & Hops. v. Halderman, 465 U.S. 89, 102 (1984) (quoting Young, 209 U.S. at 160). Nevertheless, the U.S. Supreme Court limited Young's scope in Pennhurst, *supra*, and held that this stripping doctrine is limited to federal sources of law. The Supreme Court concluded that plaintiffs may not sue state officials in federal court for violations of state law. Pennhurst, 465 U.S. at 106. Plaintiffs' second claim for relief relies on defendants' violations of Louisiana state statutes.[9]

Plaintiffs are asserting state law claims predicated on violations of state law. Though the same factual basis underlies plaintiffs' federal claims and state claims, plaintiffs are asking this Court to enter judgment against state officials based on state law. For the Court to do so would abrogate the main tenet of Pennhurst that the Eleventh Amendment prohibits plaintiffs from suing in federal court for violations of state law. *McIntosh v. Partridge*, 540 F.3d 315, 325 (5th Cir. 2008).

[9] R. Doc. No. 1, pp. 33-34.

Plaintiffs cite Frew ex rel. Frew v. Hawkins, 540 U.S. 431 (2004) as authority for their claim that "the Eleventh Amendment does not bar federal courts from hearing claims for violations of provisions, like those at issue where, which *implement* a federal statute"[10] (emphasis in original). Frew, which was confronted with a factual scenario involving state participation in voluntary Medicaid programs, is distinguishable. In Frew, mothers of children eligible for the Texas EPSDT program filed a civil action in federal court pursuant to 42 U.S.C. § 1983 against various Texas state agency officials alleging that Texas's EPSDT program failed to satisfy federal Medicaid requirements. Id. at 434. The parties resolved the dispute by entering into a wide-ranging consent decree that required the state to provide more specific services than federal Medicaid law mandated. Id. Two years after the consent decree was entered, petitioners filed a motion to enforce the decree because state officials were not complying with all of its terms. Id. at 436. The U.S. Supreme Court concluded that enforcing the *federal* consent decree did not violate Pennhurst because state officials and the petitioners agreed to the consent decree's terms to resolve a *federal* claim. Id. at 439.

The dispute in Frew did not implicate Texas state law. In this case, plaintiffs are asking the Court to enter judgment on state law claims pursuant to state law. The Eleventh Amendment prohibits such relief. Accordingly, defendants' motions to dismiss plaintiffs' state law claims should be **GRANTED** and plaintiffs' state law claims are **DISMISSED WITHOUT PREJUDICE**.

## III. The NVRA Notice Requirement

Defendants argue that plaintiffs did not satisfy the NVRA notice requirement prior to filing their lawsuit. However, 42 U.S.C. § 1973gg-9(b)(1) requires notice be given only to the

[10] R. Doc. No. 67, p. 42.

state's chief election official. Defendant Schedler, as Secretary of State, is the NVRA chief election official for the State of Louisiana.[11] Defendants Greenstein and Johnson were not entitled to notice from plaintiffs. Accordingly, the Court considers only Schedler's arguments with respect to the notice requirement.

Schedler asserts that the letters to defendants dated January 12, 2011, did not identify the specific persons aggrieved by an NVRA violation, did not detail the factual bases for the violations, and did not identify the individual offices where the violations allegedly occurred. According to Schedler, it was only after plaintiffs provided a second set of letters dated February 25, 2011, with additional information regarding Louisiana's NVRA violations that Schedler believed he was "afford[ed] an opportunity to cure" the alleged violations.[12] Because the original January 12, 2011, letter lacked specificity, Schedler concludes that plaintiffs did not provide him with adequate notice pursuant to 42 U.S.C. § 1973gg-9(b). Consequently, Schedler maintains that it was not until February 25, 2011, that plaintiffs triggered the ninety-day remedial period. Schedler argues that plaintiffs could not file their lawsuit until May 26, 2011.

The purpose of the notice requirement is to "provide states in violation of the Act an opportunity to attempt compliance before facing litigation." Ass'n of Community Org. for Reform Now v. Miller, 129 F.3d 833, 838 (6th Cir. 1997). The January 12, 2011, letter described the nature of the violations and identified the allegedly non-compliant public assistance offices. The Court finds that the January 12, 2011, letter provided enough detail to enable Schedler to investigate the alleged violations and attempt to comply with the NVRA before facing litigation. As such, the NAACP satisfied the notice requirement's purpose.

---

[11] R. Doc. No. 26-2, p. 10.
[12] R. Doc. No. 26-2, p. 12.

Schedler further argues that individual plaintiffs Ferrand and Scott did not provide notice, and hence their claims should be dismissed. The Court has already determined that the purpose of the notice requirement is to allow states to attempt compliance before facing litigation over alleged NVRA violations. The NAACP's letter afforded Schedler the ability to address NVRA compliance prior to facing litigation.[13] Schedler received sufficient notice of the alleged violations in the January 12, 2011, letter. Consequently, it was inconsequential that individual plaintiffs Ferrand and Scott failed to provide duplicate notice of the alleged NVRA violations and the defendants were not prejudiced by the same. Accordingly, Schedler's motion to dismiss for plaintiffs' failure to comply with the 42 U.S.C. § 1973gg-9(b) notice requirement is **DENIED**.

**IV. Plaintiffs' Request For Declaratory Relief**

Defendants argue that plaintiffs cannot request a declaratory judgment finding that defendants have violated the NVRA because this would, in effect, be an adjudication of past conduct.[14] Defendants maintain that adjudicating past conduct is an inappropriate use of declaratory relief ("Declaratory judgment is inappropriate *solely* to adjudicate past conduct. Nor is declaratory judgment meant simply to proclaim that one party is liable to another." Corliss v. O'Brien, 200 Fed. App'x 80, 84 (3rd Cir. 2006) (internal citations omitted) (emphasis added)).[15]

Plaintiffs, however, are not seeking to *solely* adjudicate past conduct. Plaintiffs repeatedly allege that defendants continue to subvert the NVRA.[16] As such, plaintiffs are not asking that the Court "simply proclaim that one party is liable to another," Id. at 84, but rather

[13] The Sixth Circuit has declined to require additional plaintiffs provide notice where defendants have already received actual notice of alleged violations from other plaintiffs. See Miller, 129 F.3d at 838.
[14] R. Doc. No. 25-2, p. 3.
[15] R. Doc. No. 25-2, p. 3.
[16] R. Doc. No. 1, ¶¶ 121-126, 129-136.

they seek to clarify the parties' existing legal relationship and to alter defendants' future conduct.

The Fifth Circuit provides a three-step framework when analyzing whether a court should dismiss a suit seeking declaratory relief. "A federal district court must determine: (1) whether the declaratory action is justiciable; (2) whether the court has the authority to grant declaratory relief; and (3) whether to exercise its discretion to decide or dismiss the action." Sherwin-Williams Co. v. Holmes Cnty., 343 F.3d 383, 387 (5th Cir. 2003).

With respect to the first factor, plaintiffs can show that a case is justiciable if they establish "actual present harm or a significant possibility of future harm." Roark & Hardee LP v. City of Austin, 522 F.3d 533, 542 (5th Cir. 2008) (internal citations omitted). Throughout their complaint the plaintiffs repeatedly allege the ways in which defendants continue to violate the NVRA. Consequently, this case concerns harm that is "real and immediate, not conjectural or hypothetical." Id. at 542 (internal citations omitted).

As for the second factor, whether this Court can grant declaratory relief, the Court looks to two sources for such authority. Pursuant to 28 U.S.C. § 2201(a), this Court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." Moreover, the NVRA, itself, provides that a person aggrieved by a violation of the Act "may bring a civil action in an appropriate district court for *declaratory* or injunctive relief with respect to the violation." 42 U.S.C. § 1973gg-9(b)(2) (emphasis added). Hence, the Court has the authority to grant declaratory relief and the second factor is satisfied.

The third and final factor asks whether this Court should exercise, or decline to exercise, its discretion to determine plaintiffs' request for declaratory relief. In St. Paul Ins. Co. v. Trejo,

39 F.3d 585, 590-91 (5th Cir. 1994), the Fifth Circuit identified seven relevant bases for a federal court to consider when determining whether to decide or dismiss a declaratory action. These include:

> 1) whether there is a pending state action in which all of the matters in controversy may be fully litigated;
>
> 2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant;
>
> 3) whether the plaintiff engaged in forum shopping in bringing the suit;
>
> 4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist;
>
> 5) whether the federal court is a convenient forum for the parties and witnesses; and
>
> 6) whether retaining the lawsuit in federal court would serve the purposes of judicial economy.

Id. The Trejo factors seek to balance fairness, efficiency, and "the proper allocation of decision-making between state and federal courts." Sherwin-Williams, 343 F.3d at 390-92.

Defendants have not raised any arguments that plaintiffs' grievances would be better resolved in state court and defendants have not identified a parallel proceeding currently advancing in state court. The "absence of any pending related state litigation strengthens the argument against dismissal of the federal declaratory judgment action." Id. at 394. Defendants have not alleged that plaintiffs filed their lawsuit in anticipation of defendants filing their own lawsuit, that plaintiffs engaged in forum shopping in bringing their lawsuit, or that any inequities exist due to plaintiffs' selection of a federal forum. Moreover, plaintiffs have filed their lawsuit in federal court seeking vindication of federal rights and all parties are citizens of the State of

Louisiana within a reasonable distance of this Court. Consequently, this Court is a convenient forum for parties and witnesses and retaining this lawsuit serves the interest of judicial economy.

The balance of factors weighs in favor of the plaintiffs' request for relief and the Court has determined that declaratory relief would serve a "useful purpose" in declaring the legal obligations in this matter. Allstate Ins. Co. v. Emp'rs Liab. Assurance Corp., 445 F.2d 1278, 1280 (5th Cir. 1971). Accordingly, defendants' motions to dismiss plaintiffs' suit for declaratory relief are **DENIED.**

### V. Plaintiffs' Request for a Reporting and Monitoring Plan

Finally, defendants assert that the Court "should dismiss the plaintiffs' claims for imposition of a court-approved plan of reporting and monitoring because the NVRA does not require court-approved reporting and monitoring."[17] Motions to dismiss under Rule 12(b)(6) concern whether a plaintiff has sufficiently alleged a claim for relief, not the most appropriate remedy to which he is entitled. Consequently, the Court declines to consider at this time whether an NVRA "reporting and monitoring" plan would serve as a suitable remedy.

## ***CONCLUSION***

**IT IS ORDERED** that defendants' motions to dismiss plaintiffs' state law claims for relief are **GRANTED**. Plaintiffs' state law claims are **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that defendants' motions to dismiss are **DENIED** in all other respects.

New Orleans, Louisiana, July 19th, 2011.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

[17] R. Doc. No. 25-2, p. 8.