UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ROY FERRAND ET AL. | CIVIL ACTION |
| VERSUS | NO. 11-926 |
| TOM SCHEDLER ET AL. | SECTION "I" (2) |

## ORDER ON MOTIONS

Plaintiffs brought this putative class action against the Louisiana Secretaries of State, the Department of Health and Hospitals, and the Department of Children and Family Services, seeking "declaratory and injunctive relief to redress Defendants' systemic and ongoing violations of the obligations imposed by the National Voter Registration Act of 1993 ("NVRA"), 42 U.S.C. § 1973gg-5 . . . , for voter registration by public assistance agencies in Louisiana."  Record Doc. No. 1, Complaint at p. 2.

Each defendant filed a motion for protective order regarding the interrogatories and requests for production of documents that plaintiffs propounded on them: (1) Secretary of the Department of Health and Hospitals Bruce D. Greenstein's Motion for Protective Order, Record Doc. No. 54; (2) Secretary of the Department of Children and Family Services Ruth Johnson's Motion for Protective Order, Record Doc. No. 58; and (3) Secretary of State Tom Schedler's Motion for Protective Order. Record Doc. No. 61. Plaintiffs propounded 15 numbered interrogatories to Secretary of State Schedler and 24 numbered interrogatories to the other two defendants.  All defendants argue that

plaintiffs' interrogatories to them improperly exceed 25 in number and that information sought by plaintiffs regarding events that occurred before December 2008 is irrelevant.

Plaintiffs filed a timely combined memorandum in opposition to all three motions. Record Doc. No. 69. They argue that their interrogatories to each defendant do not exceed 25 and that events before December 2008 are within the scope of discovery.

For the following reasons, **IT IS ORDERED** that defendants' motions are GRANTED IN PART AND DENIED IN PART, as follows.

I. <u>EXCESSIVE INTERROGATORIES</u>

"Unless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, <u>including all discrete subparts</u>." Fed. R. Civ. P. 33(a)(1) (emphasis added). Defendants entered into no such stipulation. "Before serving more than 25 interrogatories, the discovering party must file a motion for leave setting forth the proposed additional interrogatories and the reasons for their use." Local Rule 33.1. Plaintiffs filed no such motion.

    A. <u>Plaintiffs Seek Information Categorized by Three Defined Time Periods</u>

Defendants argue first that the number of interrogatories served on each of them was effectively tripled by plaintiffs' "Definitions and Instructions" lettered "Y" and "Z" in the interrogatories to Johnson and the identical ones lettered "Z" and "AA" in the interrogatories to Schedler and Greenstein. The first of these "Definitions and

2

Instructions" in each set of interrogatories defines three time periods: (1) the "Initial Time Period" from January 1, 2001 through December 31, 2007; (2) the "Interim Time Period" from January 1, 2008 to January 11, 2011; and (3) the "Post-Notification Time Period" from January 12, 2011 to the present. The second of the two contested "Definitions and Instructions" directs the defendant to "provide an answer for each" of the three time periods "for each interrogatory."

In their opposition memorandum, plaintiffs contend that each interrogatory seeks a single answer with information dating back to January 1, 2001 and that the requested divisions of the answers into three time periods "merely seek to provide Defendants with additional focus and specificity to answer each question," without increasing the amount of information sought or the number of questions asked. Plaintiffs contend that, if they had not specified "discrete timeframes [sic]," defendants would still have to respond with the same information spanning the entire time period from January 1, 2001 to the present. Record Doc. No. 69, plaintiffs' memorandum, at p. 2.

If plaintiffs were actually seeking one answer per interrogatory covering the entire ten-year time span, they should have asked that question. Instead, their "Definitions and Instructions" <u>require</u> defendants to provide "<u>discrete</u>" answers to every interrogatory for each of three defined time periods. This forces defendants to organize both their search for responsive information and their interrogatory answers within each time period, rather

than searching for and providing one response that covers the entire ten years. Presumably, defendants do not maintain their business records according to the defined time periods that plaintiffs have created for their own purposes. Plaintiffs' "Definitions and Instructions" increase the burdensomeness of the interrogatories and triple the number of answers required by each interrogatory. Thus, plaintiffs served at least 45 interrogatories on Schedler and at least 72 interrogatories on the other two defendants.

Accordingly, **IT IS ORDERED** that defendants' motions are granted to the extent that, when responding to plaintiffs' future interrogatories, if any, as provided below, defendants need not comply with "Definitions and Instructions" currently labeled "Z" and "AA" in the interrogatories to Schedler and Greenstein and the ones labeled "Y" and "Z" in the interrogatories to Johnson.

### B. Standards for "Discrete Subparts" of Interrogatories

Defendants next argue that, even if the interrogatories are not tripled, many have so many discrete subparts that the total number of interrogatories to each defendant exceeds 25. Defendants concede that the existence of labeled subparagraphs in some interrogatories contain does not necessarily make the interrogatory contain more than one discrete subpart. They argue, however, that the great majority of the interrogatories contain either discrete labeled subparagraphs or multiple questions within the interrogatory that amount to discrete subparts.

Subparts need not be separately numbered or lettered to count as multiple interrogatories. Although there is no "clear and easily applied rule" for counting discrete subparts, this court agrees with the reasoning and the formulations suggested by the district court in Safeco of Am. v. Rawstron, 181 F.R.D. 441, 444 (C.D. Cal. 1998). Thus, "if the subparts are [logically or factually] 'subsumed within' or 'necessarily related to' the 'primary question,' they should be counted as one interrogatory rather than as multiple interrogatories." Id. at 444 (citing Kendall v. GES Exposition Servs., Inc., 174 F.R.D. 684, 685 (D. Nev. 1997); Ginn v. Gemini, Inc., 137 F.R.D. 320, 321 (D. Nev. 1991); Clark v. Burlington N.R.R., 112 F.R.D. 117, 120 (N.D. Miss. 1986); Myers v. U.S. Paint Co., 116 F.R.D. 165, 165-66 (D. Mass. 1987); Advisory Committee Note to Fed. R. Civ. P. 33(a), 146 F.R.D. at 675-676; 8A Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2168.1, at 261 (2d ed. 1994)).

> "Probably the best test of whether subsequent questions, within a single interrogatory, are subsumed and related, is to examine whether the first question is primary and subsequent questions are secondary to the primary question. Or, can the subsequent question stand alone? Is it independent of the first question? Genuine subparts should not be counted as separate interrogatories. However, discrete or separate questions should be counted as separate interrogatories, notwithstanding [that] they are joined by a conjunctive word and may be related."

Id. at 445 (quoting Kendall, 174 F.R.D. at 685).

Numerous district courts have endorsed these guidelines. New River Dry Dock, Inc. v. Falls at Marina Bay, L.P., No. 08-60216-CIV, 2008 WL 2620727, at *4 (S.D. Fla.

June 30, 2008); Estate of Manship v. United States, 232 F.R.D. 552, 554-55 (M.D. La. 2005) (Noland, M.J.) (citing Krawczyk v. City of Dallas, 2004 WL 614842 (N.D. Tex. 2004); Dang v. Cross, 2002 WL 432197 (C.D. Cal. 2002)), aff'd, 2006 WL 594521 (M.D. La. Jan. 13, 2006) (Tyson, J.).

"In other words, '[i]f the first question can be answered fully and completely without answering the second question, then the second question is totally independent of the first and not factually subsumed within and necessarily related to the primary question.'" Id. at 555 (quoting Krawczyk, 2004 WL 614842, at *2) (internal quotation omitted).

Other recent formulations of these guidelines focus on whether the subparts of an interrogatory center on a common theme or topic. Thus, "an interrogatory directed at eliciting details concerning a common theme should not be counted as multiple interrogatories." New River Dry Dock, Inc., 2008 WL 2620727, at *4 (citing Cardenas v. Dorel Juvenile Group, Inc., 231 F.R.D. 616, 620 (D. Kan. 2005) (citing 8A Wright & Miller, Federal Practice and Procedure § 2168.1 at 261 (2d ed. 1994))); ; see also Estate of Manship, 232 F.R.D. at 557 (When sub-questions "seek 'who, what, when, where and how' information which relates to the common theme presented in the" interrogatory, they are not discrete subparts, but are one interrogatory.). "A single question asking for several bits of information relating to the same topic counts as one interrogatory. (E.g.,

'State the name, address and telephone number of each person present at the meeting.') However, questions seeking information about separate subjects count as several interrogatories." Singleton v. Hedgepath, No. 1:08-cv-00095-AWI-GSA-PC, 2011 WL 1806515, at *7 (E.D. Cal. May 10, 2011) (citing Collaboration Props., Inc. v. Polycom, Inc., 224 F.R.D. 473, 475 (N.D. Cal. 2004); Safeco of Am., 181 F.R.D. at 445; Kendall, 174 F.R.D. at 686).

"Court[s] have also held that the request for identification of documents should be counted as a separate interrogatory." New River Dry Dock, Inc., 2008 WL 2620727, at *4 (citing Banks v. Office of the Senate Sergeant-At-Arms, 222 F.R.D. 7, 10 (D.D.C. 2004); Kendall, 174 F.R.D. at 686); accord Estate of Manship, 232 F.R.D. at 555.

Although "it falls slightly short of constituting a bright-line test," these principles "will tend to avoid 'sap[ping] the court's limited resources in order to resolve hypertechnical disputes.'" Safeco of Am., 181 F.R.D. at 446 (quoting Ginn, 137 F.R.D. at 322).

C. Plaintiffs' Interrogatories to Secretary of State Schedler

Plaintiffs propounded 15 numbered interrogatories to Secretary of State Schedler. He argues that, even without the tripling of the interrogatories by time period discussed above, Interrogatories No. 1, 2, 3, 5, 6, 7, 8, 10, 11, 12, 13 and 15 contain multiple discrete subparts, so that the total number of interrogatories exceeds 25. Based on the

standards described in the preceding section, I find that plaintiffs have propounded more than 25 interrogatories to Schedler.

Interrogatory No. 1 consists of two discrete subparts: (1) identification of the Secretary of State's organizational structure in general and (2) identification of its reporting structure with respect to voter registration specifically. This totals two interrogatories.

Interrogatory No. 2 contains four discrete subparts: (1) identification of the duties and responsibilities of the Secretary of State concerning compliance with the NVRA; (2) identification of the measures taken to administer compliance; (3) identification of the policies for implementing the NVRA; and (4) identification of documents concerning such policies. This brings the total to six interrogatories.

Interrogatory No. 3 contains two discrete subparts because it requires the Secretary of State to identify communications with both the Department of Health and Hospitals and the Department of Children and Family Services. This brings the total to eight interrogatories.

Interrogatory No. 4 is not in dispute, and raises the total to nine interrogatories.

Interrogatory No. 5 contains three discrete subparts: (1) identification of Secretary of State employees or agents who trained personnel at the Secretary of State, the Department of Health and Hospitals, and the Department of Children and Family

Services regarding their responsibilities under the NVRA; (2) identification of individuals who developed training materials; and (3) identification of individuals who supervised persons in the previous categories. This brings the total to twelve interrogatories.

Interrogatory No. 6 contains at least two discrete subparts because it requires answers regarding both the Department of Health and Hospitals and the Department of Children and Family Services, neither of which is subsumed in the other. This brings the total to fourteen interrogatories.

Interrogatory No. 7 contains three discrete subparts: (1) identification of the dates, persons and locations when the Secretary of State received training about the NVRA; (2) identification of the dates, persons and locations when the Secretary of State provided training about the NVRA; and (3) identification of training documents. This brings the total to seventeen interrogatories.

Interrogatory No. 8 consists of a single broad interrogatory, which brings the total to eighteen interrogatories.

Interrogatory No. 9 is not in dispute, and brings the total to nineteen.

Interrogatory No. 10 contains two discrete subparts: (1) identification of reports and (2) identification of the persons involved in preparing the reports. This brings the total to 21 interrogatories.

Interrogatory No. 11 is unclear as written. However, plaintiffs' opposition memorandum clarifies that this interrogatory seeks only document retention policies related to all of the other documents described in the interrogatory. This is a single broad interrogatory, so that the total number of interrogatories is 22 at this point.

Interrogatory No. 12 asks for the identification of any complaints made concerning voter registration and a description of the response or results of any investigation regarding such complaints. Had plaintiffs worded the question slightly differently and asked instead for a description of the response or results of any investigation regarding any complaints made, the identification of the complaints would be logically and factually subsumed within the description. The slight difference in wording does not make Interrogatory No. 12 into discrete subparts. This single question brings the total number of interrogatories to 23.

Similarly, Interrogatory No. 13 contains one interrogatory seeking the identification of any instances when the Secretary of State learned of a state agency's noncompliance with the NVRA and the steps taken by the Secretary of State to address that noncompliance. This brings the total to 24.

Defendant does not dispute that Interrogatory No. 14 is a single question, which brings the total to 25 interrogatories. All subsequent interrogatories exceed the 25-interrogatory limit of Rule 33(a)(1).

Interrogatory No. 15 contains two discrete subparts. It asks Schedler to identify all databases that contain information concerning 15 listed categories of information for persons who applied for public assistance at either the Department of Health and Hospitals or the Department of Children and Family Services. The 15 listed categories flesh out the "who, what, when, where and how" information related to the common theme of this interrogatory and are not discrete subparts. However, the request that defendant respond as to both the Department of Health and Hospitals or the Department of Children and Family Services creates two discrete subparts.

Plaintiffs propounded more than 25 interrogatories to Schedler. Therefore, his motion for protective order is granted in that he need not answer any of these interrogatories. If plaintiffs seek interrogatory discovery from this defendant, they must serve him with a new set of not more than 25 interrogatories that comply with the foregoing standards.

### D. Interrogatories to the Secretaries of the Department of Health and Hospitals and the Department of Children and Family Services

Greenstein, the Secretary of the Department of Health and Hospitals, and Johnson, the Secretary of the Department of Children and Family Services, argue that the 24 numbered interrogatories served on each of them actually exceed 25 because Interrogatories No. 3, 4, 5, 6, 9, 10, 11, 13, 15, 17, 20, 21 and 23 contain multiple discrete

subparts. Based on the standards previously described, I find that plaintiffs propounded more than 25 interrogatories on these defendants.

Although Johnson and Greenstein do not specifically make this argument, plaintiffs' Interrogatory No. 1 to them, just like the virtually identical Interrogatory No. 1 propounded to the Secretary of State, consists of two discrete subparts: (1) identification of each Secretary's organizational structure in general and (2) identification of its reporting structure with respect to voter registration specifically. This totals two interrogatories.

Interrogatory No. 2 is undisputed and brings the total to three interrogatories.

Interrogatory No. 3 contains two subparagraphs labeled (a), which asks how each agency determines the number of forms and supplies needed, and (b), which asks how the agency acquires its forms and supplies. Neither of these questions is logically or factually subsumed in the other. These discrete subparts bring the total to five interrogatories.

Although Interrogatory No. 4 contains labeled subparagraphs, it is only one interrogatory because it seeks the combined "who, what, when, where and how" information related to the common theme of this interrogatory, namely, the agency's orders of voter registration application forms. This totals six interrogatories.

Interrogatory No. 5 contains two discrete subparts because it asks defendants in the second half of the question to identify all documents concerning the policies they describe in response to the first half of the interrogatory. The total number of interrogatories is now eight.

Interrogatory No. 6 contains three discrete subparts: (1) description of how staff are evaluated; (2) identification of evaluation tools and forms; and (3) description of disciplinary actions taken. This brings the total to eleven interrogatories.

Interrogatories 7 and 8 are not in dispute and bring the total number to thirteen.

Interrogatory Nos. 9, 10 and 11 are contention interrogatories that ask defendants to answer yes or no to a stated contention, and then to identify the facts supporting their affirmative or negative answer. The secondary questions are logically and factually subsumed in the primary question. Each of these interrogatories counts as only one, bringing the total to sixteen interrogatories.

Defendants do not dispute that Interrogatory No. 12 is a single question. The total is now seventeen.

Defendants argue that Interrogatory No. 13 has eight discrete subparts "because it asks first for a list" of each public assistance program the agency has administered ("Identify each public assistance program . . ."), followed by seven questions related to the agency's procedures for clients to apply for assistance. Had plaintiffs phrased this

interrogatory slightly differently (e.g., "For each public assistance program the agency administers, describe the procedures . . ."), it would be more obvious that identification of the program is a necessary and integral part of the remainder of the questions, not a discrete question on a different topic. I further find that the subparagraphs labeled (a) through (f) are logically and factually subsumed in the larger question of what procedures the client must follow. This interrogatory therefore consists of only one question, bring the total to eighteen.

Defendants do not dispute that Interrogatory No. 14 poses one question. The total number of interrogatories is now nineteen.

Interrogatory No. 15 asks several questions, beginning with a description of the process by which the agency distributes voter registration forms to its clients. The second sentence and the fourth sentence of the interrogatory are not discrete subparts because, like the subparts of Interrogatory No. 13, they merely seek elaboration of the processes initially described. However, the third sentence of this interrogatory introduces a new topic concerning the circumstances in which the agency provides voter registration services in a language other than English, and seeks identification of documents that are translated. This sentence adds two discrete subparts to Interrogatory No. 15, making a total of three discrete subparts. Interrogatory No. 15 raises the total number of interrogatories to 22.

Defendants do not dispute that Interrogatory No. 16 is a single question. The total is now 23.

Interrogatory No. 17 asks two distinct questions: (1) the total number of clients who were given voter preference forms and (2) the total number of client responses. Each of these questions can be answered fully and completely without reference to the other, and therefore constitute two discrete subparts. This brings the total of interrogatories to 25. All subsequent interrogatories exceed the 25-interrogatory limit of Rule 33(a)(1).

Defendants do not dispute that Interrogatories 18 and 19 are single questions.

Interrogatory No. 20 has three discrete subparts: (1) description of how the agency's personnel are provided with training about the NVRA; (2) identification of the dates and locations when such training occurred; and (3) identification of training materials.

Interrogatory No. 21 contains only one interrogatory concerning how part-time, temporary or seasonal workers, if any, are trained regarding the NVRA. The subparts of this interrogatory merely elicit the details of such training.

Defendants do not contend that Interrogatory No. 22 poses more than one question.

Interrogatory No. 23 asks for the identification of any complaints made concerning voter registration services and a description of the results of any investigation regarding such complaints. Had plaintiffs worded the question slightly differently and asked for a description of the response or results of any investigation regarding any complaint made, the identification of the complaint would be logically and factually subsumed within the description. This is a single interrogatory.

Defendants do not dispute that Interrogatory No. 24 is a single question.

Because plaintiffs propounded more than 25 interrogatories to Johnson and Greenstein, their motions for protective order are granted in that these defendants need not answer any of these interrogatories. If plaintiffs seek interrogatory discovery from these defendants, they must serve them with a new set of not more than 25 interrogatories that comply with the foregoing standards.

II.     RELEVANT TIME PERIOD

Defendants argue that any information regarding events that occurred before December 2008 is irrelevant and non-discoverable because December 2008 is the earliest date on which plaintiffs' complaint alleges any specific violation of the NVRA. See Record Doc. No. 1, Complaint at ¶¶ 58-63 (describing telephonic investigation of the Department of Health and Hospitals and the Department of Children and Family Services in December 2008). Defendants state that the only allegation in the complaint related to

any earlier time period is that the Department of Children and Family Services had only 30,900 voter registration application forms available for distribution to its clients from at least January 2005 until May 1, 2010, see id. ¶ 48, but that the complaint does not cite any violations as far back as January 1, 2001, which is the beginning of the time period for which plaintiffs seek discovery.

Plaintiffs respond that their complaint alleges that defendants have been out of compliance with the NVRA since at least 1997 to 1998, as reflected by the statistical information in the complaint. See id. ¶¶ 52-56. Plaintiffs argue that, even if the first alleged violation was in December 2008, they would "still be entitled to discovery for years prior to that date" because they seek to establish a pattern of violations.

> Fed. R. Civ. P. 26(b) provides that
>
> the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense–including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.

Fed. R. Civ. P. 26(b)(1).

Plaintiffs misstate this standard in their memorandum. They have not shown or even argued that good cause exists to expand the scope of discovery from the baseline of "relevant to any party's claim or defense" to the more expansive "any matter relevant

to the subject matter" of the action. Nonetheless, I agree that defendants' argument that discovery should be limited to the time period after December 2008 is too narrow.

The parties have not cited any law, and my research has located none, concerning the burden of proof necessary to establish a violation of the NVRA. However, it seems likely, as plaintiffs argue, that they will need to prove the existence of a pattern, rather than an isolated violation. See, e.g., United States v. Missouri, 535 F.3d 844, 846 (8th Cir. 2008) (In granting summary judgment, "[t]he district court examined Missouri's actions to comply with the NVRA and Missouri's actions between 1996 to 2004 to attempt to remove ineligible voters from the voter rolls. . . . The district court also delineated Missouri's actions from 2004 to the time of its decision.").

I find that a time period of 10 years before plaintiffs notified defendants of their alleged NVRA violations, beginning on January 1, 2001, is appropriate in this case. Accordingly, defendants' motions for protective order are denied to the extent they seek to limit discovery to a time period after December 2008.

IV. SCHEDLER'S REQUEST FOR ATTORNEY'S FEES

Schedler requested an award of attorney's fees for bringing his motion for protective order. His motion has been granted in part and denied in part. In these

circumstances, I find that the parties should bear their own costs. Fed. R. Civ. P. 37(a)(5)(A)(iii).

New Orleans, Louisiana, this   21st   day of July, 2011.

                          JOSEPH C. WILKINSON, JR.
                       UNITED STATES MAGISTRATE JUDGE