**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **ROY FERRAND, ET AL** | * | **CIVIL ACTION NO. 11-926** |
| **Plaintiffs** | * | |
| | * | **SECTION: H** |
| | * | **JUDGE JANE TRICHE MILAZZO** |
| **VERSUS** | * | |
| | * | |
| | * | **MAGISTRATE: 2** |
| **TOM SCHEDLER, ET AL** | * | **MAG. JOSEPH C. WILKINSON, JR.** |
| **Defendants** | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**ORDER AND REASONS**

The matters before the Court are a Motion for Partial Summary Judgment filed by Bruce Greenstein ("Greenstein"), in his official capacity as Secretary of the Louisiana Department of Health and Hospitals (Doc. 88); a Motion for Partial Summary Judgment filed by Tom Schedler ("Schedler"), in his official capacity as Louisiana Secretary of State (Doc. 94); a Motion for Partial Summary Judgment filed by Ruth Johnson ("Johnson"), in her official capacity as Secretary of the Louisiana Department of Children and Family Services (Doc. 97); and a Cross-Motion for Partial Summary Judgment filed by Plaintiffs, Luther Scott, Jr. and the Louisiana State Conference of the NAACP. (Doc. 112.)

For the following reasons, Defendants Motions for Partial Summary Judgment (Docs. 88, 94 and 97) are hereby **DENIED**; Plaintiffs Cross-Motion for Summary Judgment (Doc. 112) is hereby **GRANTED AS AMENDED** as to the statutory interpretation of the National Voter Registration Act and **DEFERRED** as to the alleged violations of Defendants under the National Voter Registration Act.

## BACKGROUND

Plaintiffs Roy Ferrand[1], Luther Scott, Jr. and the Louisiana State Conference of the NAACP ("Plaintiffs") brought this action on April 19, 2011, for themselves and all other persons similarly situated, against Defendants Tom Schedler, in his official capacity as Louisiana Secretary of State, Ruth Johnson, in her official capacity as Secretary of the Louisiana Department of Children and Family Services ("DCFS") and Bruce D. Greenstein, in his official capacity as Secretary of the Louisiana Department of Health and Hospitals ("DHH").[2]   In their Complaint, Plaintiffs allege that Defendants have engaged in systemic and ongoing violations of their obligations under Section 7 of the National Voter Registration Act ("NVRA" or "the Act"[3]).

---

[1]On February 6, 2012, the Court granted Plaintiffs' Motion to Withdraw Roy Ferrand as Plaintiff.  Thus, Ferrand was dismissed as a party plaintiff to this action, with the case to continue as to the remaining plaintiffs, Luther Scott, Jr. and the Louisiana State Conference of the NAACP. (Doc. 126.)

[2]In Defendants' previous Motions to Dismiss they argued that Plaintiffs did not satisfy the NVRA notice requirement prior to filing their lawsuit.  (Docs. 25-26, 28).  The Court, however, found that the January 12, 2011 letter from plaintiffs' counsel to defendants informing them that Louisiana public assistance agencies were not in compliance with the NVRA was sufficient notice under the NVRA's notice requirement.  (Doc. 71.)  Thus, Plaintiffs' lawsuit was properly filed on April 19, 2011, more than ninety days after sending their January 12, 2011 letters to defendants. (Doc. 71.)

[3]Section 4 of the Act is codified at 42 U.S.C. § 1973gg-2; Section 7 of the Act is codified at 42 U.S.C. § 1973gg-5; Section 10 of the Act is codified at 42 U.S.C. § 1973gg-8

The Parties

Plaintiff Luther Scott, Jr. ("Scott") is a Louisiana citizen who has applied for public assistance benefits in the form of Food Stamps through DCFS.  Plaintiffs assert that Scott meets all of the requirements to register to vote in Louisiana but is not registered where he currently resides.  The Complaint alleges that DCFS neither provided him with a voter registration application form nor offered him assistance in completing that form.

Plaintiff Louisiana State Conference of the NAACP ("NAACP"), is a non-partisan, interracial membership organization founded in 1909.  The NAACP is devoted to civil rights and racial justice. The Louisiana State Conference of the NAACP is headquartered in Baton Rouge, Louisiana.[4]

Defendant Tom Schedler ("Schedler") is sued in his official capacity as the Louisiana Secretary of State. Schedler is designated as the chief state election official in Louisiana and is responsible for the coordination of state responsibilities under Section 10 of the NVRA.  42 U.S.C. § 1973gg-8.  Moreover, Louisiana law provides that the Secretary of State shall "[c]oordinate the responsibilities of th[e] state under the National Voter Registration Act of 1993 (P.L. 103-31) as required by 42 U.S.C. Section 1973gg-8."  La. Rev. Stat. Ann. § 18:18(A)(6)(West 2011). Additionally, the Louisiana Secretary of State is generally responsible for prescribing uniform rules, regulations, forms, and instructions related to voter registration and voter education. La. Rev. Stat. Ann. § 18:18(A)(2), (3), (8).

Defendant Ruth Johnson ("Johnson") is sued in her official capacity as the Secretary of

---

[4]In previously filed Motions to Dismiss (Docs. 25-26, 28) the Defendants urged that the NAACP did not have standing to sue to enforce the NVRA.  The Court, however, found that the NAACP did have standing to sue and thus denied Defendants' claim for dismissal.  (Doc. 71.)

Louisiana's Department of Children and Family Services.  DCFS is a mandatory voter registration agency under Louisiana law.  La. Rev. Stat. Ann. § 18:18(A)(1)(a).  DCFS administers public assistance programs including, but not limited to, the Supplemental Nutrition Assistance Program ("SNAP"), formerly Food Stamps, and Family Independence Temporary Assistance ("FITAP").  La. Rev. Stat. Ann. §§ 36:474(G); 46:231-231.2.

Defendant Bruce D. Greenstein ("Greenstein") is sued in his official capacity as the Secretary of Louisiana's Department of Health and Hospitals.   Like DCFS, DHH is a mandatory voter registration agency under Louisiana law.  La. Rev. Stat. Ann. § 18:18(A)(1)(a).  DHH administers public assistance programs including Medicaid, the Woman, Infants and Children Program ("WIC"), and the Louisiana Children's Health Insurance Program ("LaCHIP").  La. Rev. Stat. Ann. §§ 36:251(B); 46:450.3; 46:976.

The Complaint

Plaintiffs allege that DCFS and DHH, both offices in Louisiana that provide public assistance, routinely fail to: (1) provide the required voter registration services to each person who applies, recertifies, renews, or changes an address in connection with a public assistance benefit; (2) distribute voter registration applications and provide assistance to clients with completing voter registration applications; and (3) accept and transmit completed applications to the appropriate election authority.  Plaintiffs allege that Section 7 of the NVRA requires DCFS and DHS to perform these actions.  (Doc. 1, ¶6-9.)

Additionally, Plaintiffs assert that the Louisiana Secretary of State is committing ongoing violations of the NVRA by failing to coordinate the state's responsibilities under Section 7 as the

chief State Election Official.  (Doc. 1, ¶10.)  They further allege violations by the Secretary of State

for failing to develop adequate employee training programs necessary for acceptance of voter

registration applications under the NVRA. (Doc. 1, ¶42.)

The Motions

On November 2, 2011, Defendant Greenstein filed a Motion for Partial Summary Judgment.

(Doc. 88.)  The Motion for Partial Summary Judgment seeks a ruling from this Court that the NVRA

applies solely to in-person applicants, as well as a ruling that any failure to offer voter registration

to people who apply for services online, by telephone, or by mail does not constitute a violation

of the NVRA.  Next, Defendant Schedler filed a Motion for Partial Summary Judgment (Doc. 94) and

Defendant Johnson filed a Motion for Partial Summary Judgment (Doc. 97).  Both Schedler and

Johnson requested the same ruling from the Court concerning the application of the NVRA to

remote applicants.  Plaintiffs filed an opposition to Defendants' Motions for Partial Summary

Judgment. (Doc. 111.) Defendants Schedler, Johnson and Greenstein filed Reply briefs.  (Docs. 139,

165, 171.)

On January 31, 2012 Plaintiffs also filed a Cross-Motion for Partial Summary Judgment. (Doc.

112.)  Plaintiffs argue that the text and structure of the NVRA make clear that public assistance

offices are required to offer voter registration services with each covered transaction, regardless

of whether those transactions occur in person or remotely.  Additionally, Plaintiffs assert that

Defendants have violated and are in violation of the NVRA by denying voter registration services

to public assistance clients who do not appear in person at state offices.

Defendants separately opposed Plaintiffs' Cross-Motion for Summary Judgment.  (Docs.

138-139, 144.)  Defendant Schedler also filed a Motion to Strike Exhibits offered by Plaintiff in support of their Motion for Partial Summary Judgment.  (Doc. 140.)  The Court denied Schedler's Motion.  (Doc. 176.)  Plaintiffs filed a Supplemental Memorandum in Support(Doc. 173), as did Defendant Schedler (Doc. 183).  Lastly, Plaintiffs filed a Surreply.  (Doc. 190.)

Additionally, the United States of America filed a Statement of Interest (Doc. 157) concerning the four pending Motions for Partial Summary Judgment.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c)(2012).  Additionally, "[s]ummary judgment is appropriate where the facts are not in dispute and the issue before the court poses a purely legal question." *Diversified Group, Inc. v. Van Tassel*, 806 F.2d 1275, 1277 (5th Cir. 1987).

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in her favor. *Coleman v. Houston Independent School District,* 113 F.3d 528 (5th Cir. 1997).  After a proper motion for summary judgment is made, the non-movant must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986).  The non-movant's burden, however is not satisfied by some metaphysical doubt as to the material facts, or by conclusory allegations, unsubstantiated assertions or a scintilla of evidence. *Little v. Liquid Air*

*Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994).  Summary judgment is appropriate if the non-movant

"fails to make a showing sufficient to establish the existence of an element essential to that party's

case."  *Celotex Corp. v. Catrett,* 477 U.S. 317, 324(1986).


**LAW AND DISCUSSION**

The first issue, raised in all four motions, concerns the application of the National Voter

Registration Act to remote transactions.  Defendants assert that the NVRA applies solely to in-

person applications for services, whereas Plaintiffs argue that the NVRA applies to in-person

applications for services as well as remote services, i.e. online, telephonic and mail applications.

All parties agree that this matter is ripe for review as this is a straightforward question of statutory

construction.  Thus, the initial inquiry is whether the NVRA applies to any applications for public

assistance beyond those applications made in person.

Plaintiffs additionally addressed in its' Cross-Motion for Summary Judgment various

violations of the Defendants under the National Voter Registration Act.  Plaintiffs assert that no

disputed issues of fact exist concerning the alleged violations of the Defendants, making this issue

ripe for summary judgment.  Defendants oppose summary judgment for varying reasons and assert

that Plaintiffs' contentions are without merit.  The Court has deferred this matter and has set

submission on July 11, 2012.

Statutory Construction of the NVRA

This Court holds that when an applicant presents in person at a voter registration agency

the agency must provide an application, assistance in completing such form unless refused, and

acceptance of the applicant's form for transmittal. 42 U.S.C. § 1973gg-5(a)(4). These three services need only be made available at the agency itself. Furthermore, this Court holds that a mandatory voter registration agency must distribute with each application, recertification, renewal, or change of address a voter registration form as required in Section 7(a)(6) of the NVRA regardless of whether the transaction is done in person or remotely. 42 U.S.C. § 1973gg-5(a)(6). Additionally, Section 7(a)(6)(C) requires that the agency and its staff must provide the same degree of assistance to the applicant as it provides with their own forms and that this assistance must be provided during all transactions, including remote transactions.

### A. Arguments of the Parties

Defendants argue that the NVRA applies solely to applications for public assistance or disability services made in person and that any failure to offer voter registration to citizens who apply for such services remotely does not constitute a violation of the NVRA. Specifically, Defendants argue that Section 4 is clear in that it requires a state to offer voter registration in three ways. First, it must provide an opportunity for voter registration during application for a motor vehicle drivers license. Second, it must provide an opportunity for citizens to register to vote by mail. Third, it must provide for registration in person, at either an office of the registrar of voters or at a federal, state, or nongovernmental office designated under Section 7 of the NVRA. 42 U.S.C. § 1973gg-2. Defendants argue that, read together, Sections 4 and 7 of the Act clearly state that the only way to register to vote at a state office which provides public assistance or disability services is in person. Accordingly, Section 4 requires Defendants to offer voter registration only to those persons who apply in person for such services. They assert that no statutory provision of

the NVRA requires voter registration forms to be offered to persons who apply for public assistance remotely.  Consequently, any failure to offer voter registration to persons who apply for public assistance or disability services other than in person cannot constitute a violation of the NVRA.

Defendant Schedler further notes that Section 7 of the Act provides a list of services that are to be provided at the designated voter registration agencies. (Doc. 94-6, p. 9.)   After designation of offices as voter registration agencies, Section 7, paragraph (A) lists voter registration services that shall be made available at each voter registration agency.  Thus, Defendant Schedler argues that Section 7 clearly contemplates only in-person transactions as it unambiguously states that the services are to be provided "[a]t each voter registration agency . . ."."  Schedler concludes that had Congress meant for this portion of the NVRA to apply to remote applications by telephone, on-line, mail, or other means, it certainly would have chosen other terms to make its mandate clear.

Plaintiffs argue first that the text and structure of the NVRA make it clear that public assistance offices are required to offer voter registration services with each transaction, regardless of whether the transaction occurs in person or remotely.  The use of the term "in person" in Section 4 of the Act does not limit the plain meaning of Section 7(a)(6).  Although the NVRA requires all Voter Registration Agencies to provide voter registration services in person, public assistance offices have an additional obligation to provide voter registration services with each covered transaction, regardless of where those transactions occur.

Plaintiffs further assert that Defendants' narrow interpretation of the NVRA frustrates the purpose of the statute.  The purpose of the NVRA is to make access to voter registration as broad

as possible, particularly for impoverished Americans, by imposing mandatory obligations on public assistance offices.  Plaintiffs state that Defendants' attempt to impose an "in person" limitation on public assistance offices obligations would eviscerate Section 7.

Finally, Plaintiffs argue that case law and other authorities support the plain meaning of Section 7 of the Act.  Namely, that Section 7 applies "with each" covered transaction at a public assistance agency, and courts have approved settlement agreements covering remote transactions.  Furthermore, not a single court has held that the NVRA excludes public assistance clients who conduct transactions via remote means rather than in person.  Finally, the United States Attorney General, the executive officer charged with enforcing the NVRA, interprets the statute to apply to remote transactions.

The United States, although not a party in this litigation, filed a Statement of Interest concerning the construction of the NVRA relating to remote transactions.[5]  (Doc. 157.)  The United States summarizes the statutory framework of the NVRA, noting that Congress passed the NVRA to "[e]stablish procedures that will increase the number of eligible citizens who register to vote in elections for Federal office."  42 U.S.C. § 1973gg(b).  The clear language of the statute implies that voter registration applications should be provided during all transactions, both remote and in person.  The United States asserts that Defendants' position is inconsistent with the NVRA's plain text and structure and would lead to results at odds with Congress's intent.  The United States asks

---

[5]The United States filed its statement of interest pursuant to 28 U.S.C. § 517.  This Court understands that the judiciary is the final authority on issues of statutory construction.  *See I.N.S. v. Cardoza-Fonseca,* 480 U.S. 421, 447 (1987).  Additionally, the Supreme Court has noted that the United States' views merit no special deference.  *See Republic of Austria v. Altmann* 541 U.S. 677, 701 (2004).  On the other hand, the United States' views on such issues are of import to this Court.

this Court to hold that voter registration agencies providing services and assistance, including all mandatory voter registration agencies, must provide voter registration opportunities with each application, recertification, renewal or change of address, regardless of how or where such transactions are conducted.

B**. The National Voter Registration Act of 1993**

The United States Congress enacted the National Voter Registration Act in 1993. The NVRA is codified at 42 U.S.C. § 1973gg *et seq*.  Congress found that (1) the right of citizens of the United States to vote is a fundamental right; (2) it is the duty of the federal, state and local governments to promote the exercise of that right; and (3) discriminatory and unfair registration laws and procedures can have a direct and damaging effect on voter participation in elections for federal office and disproportionately harm voter participation by various groups, including racial minorities.  42 U.S.C. § 1973gg(a).

In light of these findings, the purposes of the NVRA are: (1) to establish procedures that would increase the number of eligible citizens who register to vote in elections for federal office; (2) to make it possible for federal, state, and local governments to implement the Act in a manner that would enhance the participation of eligible citizens as voters in elections for federal office; (3) to protect the integrity of the electoral process; and (4) to ensure that accurate and current voter registration rolls are maintained. 42 U.S.C. § 1973gg(b).

In order to achieve these purposes, Section 4 of the Act requires states to provide three methods of voter registration for federal elections: (1) registration as a part of the application or renewal of a motor vehicle driver's license pursuant to Section 1973gg-3; (2) by mail application

pursuant to Section 1973gg-4; and (3) by application in person both at the appropriate registration site designated with respect to the residence of the applicant in accordance with state law, as well as at a federal, state, or nongovernmental office designated under Section 1973gg-5.  42 U.S.C. § 1973gg-2(a).  Specifically, Section 4(a) requires states to "establish procedures" to accomplish these three methods.  *Id.*

Section 7 of the Act is applicable to voter registration agencies.  42 U.S.C. § 1973gg-5.  It requires each state to designate as voter registration agencies all offices in the state that provide public assistance as well as all offices in the state that provide state-funded programs primarily engaged in providing services to persons with disabilities. 42 U.S.C. § 1973gg-5(a)(2)(A)-(B).  These agencies are commonly referred to as "mandatory" voter registration agencies.

In addition to the mandatory voter registration agencies delegated under paragraph (2), each state shall designate other offices within the state as voter registration agencies.  42 U.S.C. § 1973gg-5(a)(3)(A).  Voter registration agencies designated under this subparagraph may include:

> (i) State or local government offices such as public libraries, public schools, offices of city and county clerks (including marriage license bureaus), fishing and hunting license bureaus, government revenue offices, unemployment compensation offices, and offices not described in paragraph (2)(B) that provide services to persons with disabilities; and
> (ii) Federal and nongovernmental offices, with the agreement of such offices.

42 U.S.C. § 1973gg-5(a)(3)(B)(i)-(ii)

The NVRA further demands that all offices designated as voter registration agencies shall make the following services available at each voter registration agency: (1) distribution of voter registration application forms for voting in federal elections; (2) assistance to applicants in completing the voter registration application forms; and (3) acceptance of completed voter

registration applications to transmit those applications to the appropriate state election official in a timely manner. 42 U.S.C. § 1973gg-5(a)(4)(A)(i)-(iii).

Lastly, a voter registration agency that is an office that provides service or assistance, in addition to conducting voter registration, shall distribute with each application for such service or assistance, and with each recertification, renewal or change of address form relating to such service or assistance, a mail voter registration application form described in Section 1973gg-7(a)(2). The agency shall also provide a form that includes various questions and statements provided by Section 7.  42 U.S.C. § 1973gg-5(a)(4)(A)(i)-(iii).

C. **Analysis**

(i) Textual Analysis

When the language of a statute is clear and unambiguous, a court must "give effect to the unambiguously expressed intent of Congress." *Bd. of Governors of the Fed. Reserve Sys. v. Dimension Fin. Corp.*, 474 U.S. 361, 368 (1986)(quoting *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc*., 467 U.S. 837, 842-843(1984)). Thus, "[w]hen courts interpret statutes, the initial inquiry is the language of the statute itself." *Hightower v. Tex. Hosp. Ass'n*, 65 F.3d 443, 448 (5th Cir. 1995)(*citing United States v. James*, 478 U.S. 597, 604 (1986)). This initial inquiry seeks to determine "the plain meaning of a statute." *Id.*  Additionally, "[i]t is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Davis v. Mich. Dept. of Treasury,* 489 U.S. 803, 809 (1989).

The responsibilities of states generally are set out in Section 4 of the Act.  42 U.S.C. §

1973gg-2.  The responsibilities of designated voter registration agencies specifically are set out in

Section 7 of the Act.  42 U.S.C. § 1973gg-5.  The Court must give effect to each of these provisions

so as to not render any language in the statute superfluous.  *Bustamente-Barrera v. Gonzales*, 447

F.3d 388, 397 (5th Cir. 2006).

Section 4(a) sets out the three modes by which voter registration opportunities are

expanded by the NVRA:

(1) by application made simultaneously with an application for a motor vehicle license . . .
(2) by mail application . . .; and
(3) by application in person . . .
       (B) at a Federal, State, or nongovernmental office designated under [Section 7]

42 U.S.C. § 1973gg-2.

This Court finds that Section 4 does no more than identify a states's general obligation to

establish procedures for voter registration.  Thus, Section 4 only requires the state to establish

"procedures to register to vote . . . by application in person" at the voter registration agencies.  *Ga.*

*State Conf. of the NAACP v. Kemp*, 2012 U.S. Dist. LEXIS 14326, 19-20 (N.D. Ga. 2012)(citing 42

U.S.C. § 1973gg-2).  Although Defendants suggest that these three methods of registration

constitute the exclusive sum of obligations imposed by the NVRA, this Court finds that Section 4's

requirements are not intended to be exclusive.

Section 7 specifically dictates what designated voter registration agencies, such as DHH and

DCFS, must do.  Section 7(a)(4) is clear in that:

*at* each voter registration agency, the following services *shall* be made available:
(i) distribution of mail voter registration application forms in accordance with paragraph (6).
(ii) assistance to applicants in completing voter registration application forms, unless the
applicant refuses such assistance.

(iii) acceptance of completed voter registration application forms for transmittal to the appropriate State election official.

42 U.S.C. § 1973gg-5(a)(4)(A)(emphasis added).

This Court finds that the use of the word "at" indicates that Congress intended for these three services to be made available at the physical location of the voter registration agency. "At" is "used as a function word to indicate presence or occurrence in, on, or near." Merriam Webster Dictionary 77 (11th ed. 2007). Thus, when someone is in person at a designated voter registration agency then the applicant must be distributed a mail voter registration application, offered assistance in completing such form unless refused and, finally, the agency must accept the applicant's form for transmittal. On the other hand, the Court finds that the statute clearly denotes that these three services need only be made available at the voter registration agency itself, and that these services need not be provided during remote applications.

Section 7(a)(6), however, imposes additional and more particularized obligations concerning the distribution of materials. Section 7(a)(6) provides, in pertinent part, that:

A voter registration agency that is an office that provides service or assistance *in addition* to conducting voter registration *shall*–

   (A) *distribute* with *each* application for such service or assistance, and with *each* recertification, renewal, or change of address form relating to such service or assistance--
      (i) the mail voter registration application form described in section 1973gg-7(a)(2) of this title, including a statement that--
         (I) specifies each eligibility requirement (including citizenship);
         (II) contains an attestation that the applicant meets each such requirement; and
         (III) requires the signature of the applicant, under penalty of perjury; or
      (ii) the office's own form if it is equivalent to the form described in section 1973gg-7(a)(2) of this title,

-15-

unless the applicant, in writing, declines to register to vote;

(B) provide a form that includes – . . .

(C) provide to each applicant who does not decline to register to vote *the same degree of assistance* with regard to the completion of the registration application form as is provided by the office with regard to the completion of its own forms, unless the applicant refuses such assistance.

42 U.S.C. § 1973gg-5(a)(6)(emphasis added).

These additional requirements in Section 7(a)(6) do not apply to all voter registration agencies because not all voter registration agencies provide "service or assistance in addition to conducting voter registration" through an application process.  42 U.S.C. § 1973gg-5(a)(6).  These requirements are, however, applicable to mandatory voter registration agencies such as DHH and DCFS.

The Supreme Court has noted that "each word in a statute should carry meaning."  *Ransom v. FIA Card Services, N.A.*, 131 S. Ct. 716 (2011).  Thus, the Court will begin with the analysis of the text of Section 7(a)(6) itself.

"Each" is commonly defined to mean "every (individual of a number) regarded or treated separately." 5 OXFORD ENGLISH DICTIONARY 16 (2d ed. 1989); *see also Sierra Club v. EPA*, 5 F.3d 673, 678 (D.C. Cir. 2008) ("There can be no doubt about the plain meaning of this phrase. 'Each' means '[e]very one of a group considered individually.'") (quoting AMERICAN HERITAGE DICTIONARY 269 (4th ed. 2001).  This Court finds that nothing in Section 7(a)(6) limits its scope to in-person transactions only. Indeed, the statute's plain language makes clear that voter registration must be offered to clients and applicants with "each" covered transaction, including remote transactions.

"[I]n addition" is defined "as an extra or additional thing (to something else); furthermore, besides."  OXFORD ENGLISH DICTIONARY 143 (2nd ed. 1989).  Thus, while all voter registration agencies are required under Section 7(a)(4) to make basic voter registration services available "[a]t each voter registration agency," Section 7(a)(6) articulates an additional set of obligations that mandatory public assistance offices owe to their clients during every transaction.  42 U.S.C. § 1973gg-5(a)(6); 42 U.S.C. § 1973gg-2.

Additionally, the voter registration agency must distribute with each application and with each recertification, renewal, or change of address form, voter registration applications as described in section 1973gg-7(a)(2).  42 U.S.C. § 1973gg-5(a)(6)(A).  Distribute is defined as "deliver[ing]" or "to disperse."  Black's Law Dictionary (9th ed. 2009).  The statute is very clear in that with each transaction the applicant must be given a form that is described in Section 9 of the NVRA.  42 U.S.C. § 1973gg-5.

Ultimately, this Court finds that the language in Section 7(a)(6)(A) is indicative of an application to both in person transactions and remote transactions, including those via the internet, telephone and mail.

In addition to the plain language of Section 7(a)(6)(A) indicating that it applies to both remote and in-person transactions, this Court also finds noteworthy the two separate provisions in Section 7 concerning assistance.   Section 7(a)(4) states that assistance shall be provided to an applicant when completing a voter registration form. 42 U.S.C. § 1973gg-5(a)(4)(A).  On the other hand, Section 7(a)(6) iterates that the assistance provided to the applicant must be the same degree of assistance with regard to the completion of its own forms. 42 U.S.C. § 1973gg-5(a)(6)(C).

A "statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Corley v. U.S.*, 129 S. Ct. 1558, 173 L. Ed. 2d 443 (2009).  Thus, it seems to this Court that Congress purposefully devised two different versions of assistance - assistance that will be provided at the agency under Section 7(a)(4) and assistance that will be provided either at the agency or remotely under Section 7(a)(6).

Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion. *Dean v. U.S.*, 556 U.S. 568 (2009).  When looked at separately, Section 7(a)(4) clearly applies to only in person transactions and Section 7(a)(6) applies to all transactions, both in person and remote.  An ambiguity arises, however, when Section 7(a)(4) references Section 7(a)(6).  Notably, the use of the word "at" does not appear in Section 7(a)(6).  The Court finds that there is an uncertainty in the statute when Congress uses "at," which clearly denotes a specific location, in one section of a statute that references another section utilizing "each," which has no locational limitation.

Ultimately, this Court finds that the plain meaning of Section 7 is indeterminate.  Thus, this Court must turn to the NVRA's legislative history to resolve any textual ambiguities.

(ii) Statutory Purpose

The courts only resort to the rule of lenity and legislative history if the text of a statute is opaque or ambiguous.  *Administaf Companies, Inc. v. N.Y. Joint Bd.*, 337 F.3d 454, 457 (5th Cir. 2003).  Moreover, it is a "[w]ell-known canon of construction that statutes should be interpreted in harmony with their dominant purpose."  *Dupuy v. Dupuy*, 511 F.2d 641, 643 (5th Cir. 1975)(*citing*

*Kokoszka v. Belford*, 417 U.S. 642, 650-651 (1974)).

A principal purpose of the NVRA was "to increase the number of eligible citizens" to register to vote. H.R. CONF. REP. 103-66, 19, 1993 U.S.C.C.A.N. 140, 144. The NVRA was intended as an aggressive effort to counteract low levels of participation in federal elections. As the House Committee Report notes:

> Expanding the rolls of the eligible citizens who are registered . . . is one positive action Congress can take to give the greatest number of people an opportunity to participate. The Committee believes that Congress should assist in reducing barriers, particularly government-imposed barriers, to apply for registration wherever possible.

H.R. Rep. No. 103-9, at 2, reprinted in 1993 U.S.C.C.A.N. 105, 107. Consistent with the statute's goal of increasing voter registration, the Senate Report makes clear that, in implementing the NVRA, the "[g]overnment should do all it can to make registration widely and easily available." S. Rep. No. 103-6, at 13. Congress found that "[i]t is the duty of the Federal, State, and local governments to promote the exercise of th[e] right [to vote]." 42 U.S.C. 1973gg(a)(2).

The Conference notes on Section 7 are particularly enlightening to this Court. In designating mandatory voter registration agencies, Congress confirmed that no state would be able to restrict its agency registration program. H.R. CONF. REP. 103-66, 19, 1993 U.S.C.C.A.N. 140, 144). Thus, Congress affirmed that all states would have an agency registration program that would not discriminate against a distinct portion of the population. *Id.* These agencies are those that would also have regular contact with those who do not have drivers licenses. *Id.* Lastly, Congress was confident in enacting the NVRA that almost all citizens would connect "[w]ith an office at which they may apply to register to vote with the same convenience as will be available to most other people" when they apply for motor vehicle driver's licenses. *Id.*

This Court finds that mandating an "in person" requirement to Section 7(a)(6) frustrates the plain intent of the NVRA.  It is evident to this Court that Congress's purpose in enacting the NVRA was to ensure that all Americans are affirmatively provided an opportunity to register to vote. Congress made this intent clear when it uses such language as "in addition" and "each."  Thus, the reading of Section 7(a)(6) as applying to every transaction, whether it be in person or remote, serves to accomplish the clear goal of Congress "by ensuring access for public assistance clients to the appropriate forms no matter how they contact the public assistance offices."  *Ga. State Conf. of the NAACP v. Kemp*, 2012 U.S. Dist. LEXIS 14326 (N.D. Ga. 2012).

Furthermore, it is evident to this Court that Congress was concerned with making sure that every person was given the **opportunity** to register to vote.  By using the word "at" in Section 7(a)(4) Congress clearly indicated that the three designated services were to occur at the physical location of the voter registration agency itself.  By eliminating the word "at" in Section 7(a)(6) and instituting the word "each" in Section 7(a)(6) Congress clearly implemented its purpose of giving everyone the opportunity to vote during each transaction, however limiting the services that must be provided by the agency during remote transactions.

Defendant Schedler raised concerns at oral argument about protecting the integrity of the electoral process.  Schedler argued that reading the statute so as to include remote transactions would lead to a result in conflict with this purpose of the NVRA.  The Court finds no merit with this argument.  The other sections of the NVRA, specifically the mail registration provisions, would be applicable to those transactions thereby keeping the integrity of the electoral process intact.

(iii) Conclusion

In conclusion, this Court holds that when an applicant presents in person at a voter registration agency the agency must provide an application, assistance in completing such form unless refused, and acceptance of the applicant's form for transmittal.  42 U.S.C. § 1973gg-5(a)(4). These three services need only be made available at the agency itself.  This Court additionally holds that a mandatory voter registration agency must distribute with each application, recertification, renewal, or change of address a voter registration form as required in Section 7(a)(6) of the NVRA regardless of whether the transaction is done in person or remotely.  42 U.S.C. § 1973gg-5(a)(6). Additionally, Section 7(a)(6)(C) requires that the agency and its staff provide the same degree of assistance to the applicant as it provides with their own forms and that this assistance must be provided during all transactions, including remote transactions.

**CONCLUSION**

For the foregoing reasons, Defendants Motions for Partial Summary Judgment (Docs. 88, 94 and 97) are hereby **DENIED**; Plaintiffs Cross-Motion for Summary Judgment (Doc. 112) is hereby **GRANTED AS AMENDED** as to the statutory interpretation of the National Voter Registration Act, and **DEFERRED** as to the violations of Defendants under the National Voter Registration Act.

In light of the Court's ruling on the statutory interpretation of the National Voter Registration Act, the Plaintiffs Motion for Summary Judgment on the issue of the violations of the Defendants is now set for submission on July 11, 2012.

New Orleans, Louisiana on this 3rd day of May, 2012.


**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT COURT JUDGE**