UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

LUTHER SCOTT, JR., and LOUISIANA
STATE CONFERENCE OF THE
NAACP,

                    Plaintiffs,

    v.

TOM SCHEDLER, in his official capacity as
the Louisiana Secretary of State, SUZY
SONNIER, in her official capacity as
Secretary of the Louisiana Department of
Children & Family Services, and BRUCE D.
GREENSTEIN, in his official capacity as
Secretary of the Louisiana Department of
Health & Hospitals,

                    Defendants.

Civil Action No. 2:11-cv-00926-JTM-JCW

Section "H"

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO SET ATTORNEYS' FEES AND COSTS**

On January 23, 2013, the Court issued Findings of Fact and Conclusions of Law (Doc. No. 436) holding that each of the Defendants had violated the National Voter Registration Act, 42 U.S.C. §§ 1973gg et seq., and that Plaintiffs were entitled to reasonable attorneys' fees, litigation expenses, and costs.   As prevailing parties, Plaintiffs respectfully submit this Memorandum of Law in support of Plaintiffs' motion to set attorneys' fees and costs and pray that the Court award Plaintiffs' the reasonable requested amounts in successfully litigating their claims.

This is the first case in the nation to be litigated to trial under the NVRA.  As explained below, this case already has had, and will continue to have, a significant impact on the ability of

Louisiana's most vulnerable citizens to register to vote, and thus, to exercise the most fundamental right in our democracy.  The significance of this Court's ruling interpreting the NVRA will likely be felt beyond Louisiana.  Moreover, this case was highly technical and extremely complex.  Despite considerable experience in civil rights litigation, Plaintiffs' local counsel Ronald Wilson could not have litigated this case without the resources and support of a large team of attorneys from outside of this district, who also brought unique expertise in voting rights litigation and, specifically, experience with litigation under this particular statute. Notably, the length of this litigation was due in part to the intransigence of Defendants, who repeatedly rebuffed Plaintiffs' attempts to negotiate settlement, despite a number of undisputed violations of the statute.

Plaintiffs seek attorneys' fees in the amount of $2,894,514.80and expenses in the amount of $141,907.35.  These amounts represent the lodestar amounts for hours spent on this litigation (based on reduced, reasonable out-of-district hourly rates, as well as a careful exercise of billing judgment, including (but not limited to), several exclusions for particular categories of attorney time, and a further ten-percent (10%) across-the-board reduction by the three organizations and firms representing Plaintiffs.

Plaintiffs achieved total success in this litigation.  Accordingly, no reduction in the requested fees – beyond the voluntary reductions already taken by Plaintiffs – is necessary or appropriate.

## STATEMENT OF FACTS

I.   The Underlying Litigation

Plaintiffs Luther Scott Jr. and the Louisiana State Conference of the NAACP ("Plaintiffs") brought this action on April 19, 2011, against Tom Schedler, in his official capacity

as the Louisiana Secretary of State ("SOS"), Ruth Johnson,[1] in her official capacity as Secretary of the Louisiana Department of Children & Family Services ("DCFS"), and Bruce D. Greenstein, in his official capacity as Secretary of the Louisiana Department of Health & Hospitals ("DHH") (collectively, "Defendants"), alleging that the Defendants had violated the NVRA, 42 U.S.C. § 1973gg et seq.[2]   Defendant SOS was responsible for coordinating the responsibilities of Louisiana under the NVRA, and Defendants DCFS and DHH were considered mandatory voter registration agencies under Louisiana law and administered a number of public assistance programs including Supplemental Nutrition Assistance Program ("SNAP"), the Family Independence Temporary Assistance ("FITAP"), Medicaid, the Woman, Infants and Children Program ("WIC"), and the Louisiana Children's Health Insurance Program ("LaCHIP").

Plaintiff Luther Scott Jr. is a recipient of benefits under the SNAP program. During three separate transactions in 2009 and 2010, DCFS did not provide Mr. Scott the information required under the NVRA.  (Doc. No. 436, at 8-11).  Plaintiff Louisiana State Conference of the NAACP "expended its limited resources, time, and money, to canvass and conduct registrations outside of Louisiana DCFS and DHH offices" and, because of the failures of those agencies — which failures were also traceable to Defendant SOS because of its failure to coordinate their obligations under the NVRA — was "forced to expend resources registering Louisiana voters who would have already been registered if the Defendants had complied with the NVRA." (Doc. No. 436, at 18).

Prior to the filing of this action, Defendants DCFS and DHH systemically violated the NVRA by, among others, failing to: i) set policies, practices, and procedures which

---

[1]      Secretary Johnson was replaced in her official capacity as Secretary of DCFS by Suzy Sonnier effective July 31, 2012.
[2]      An additional plaintiff, Roy Ferrand, withdrew from the case prior to trial (Doc. No. 126), and Suzy Sonnier, in her official capacity, was substituted for Ruth Johnson as Secretary of the Louisiana Department of Children and Family Services as a defendant (Doc No. 363).

complied with the NVRA; ii) provide voter registration services with remote transactions; iii) provide voter registration services with address changes or renewals of benefits; iv) provide voter registration services unless the client checked the "yes" box to a voter registration question in a covered transaction; v) include a voter registration question in a number of forms; vi) include disclaimers that registering to vote will not affect the "amount" of assistance received; and vii) provide the same level of assistance for voter registration as provided for benefits.  (Doc. No. 436, at 19-27).  Defendant SOS failed to provide accurate and consistent training to the agencies, if such trainings were conducted at all, and failed to "engage in any other measures to ensure that individual public assistance offices are complying with their responsibilities under the NVRA."  (Doc. No. 436, at 28).

As litigation proceeded, Plaintiffs repeatedly attempted to settle this matter, only to see those efforts rebuffed each time.  First, before discovery had begun in earnest—and before the parties had expended much time or resources on this matter—Plaintiffs repeatedly attempted to engage in settlement negotiations, only for Defendants to cut off settlement conversations in September 2011, refusing to even entertain the possibility of a settlement featuring continuing jurisdiction by this Court—a form of relief that was ultimately awarded.  *See* Ho Decl. ¶ 8, Brannon Decl. ¶ 6.  Next, after oral argument on partial summary judgment was conducted in April 2012, this Court ordered further settlement discussions, and Plaintiffs once again expressed their willingness to settle this matter.  Defendants, however, once again refused to engage in meaningful settlement conversations, and reiterated their refusal to even consider any settlement involving continuing jurisdiction by this Court.  *See* Ho Decl. ¶ 10, Brannon Decl. ¶ 6.  Notably, Defendants' repeatedly refused to engage in meaningful settlement conversations despite numerous uncontested violations of the statute, set forth in the parties' Amended Pre-Trial Order,

*see* Doc. 373, at 12-21, and ultimately adopted by this Court's Findings of Fact and Conclusions of Law, *see* Doc. 436, at 20, 25-26, 28.

Thus, this complex litigation lasted over 18 months, including: over one year of discovery, with extensive document and electronic discovery (including several rounds of written discovery requests served by both sides); several months of depositions; substantial discovery-related litigation (including a successful motion to compel production of responsive documents and to obtain a privilege log); cross-motions for partial summary judgment, granted in part for Plaintiffs; and trial.  The ECF docket in this case contains over 400 entries.

After a three day trial held in October 2012, this Court issued a permanent injunction and its findings of fact and conclusions of law on January 23, 2013 and found that Defendants DCFS and DHH came into substantial compliance *only after* this suit was filed, and this, in addition to this Court's findings of fact and conclusions of law on Plaintiffs' allegations, demonstrate that the Plaintiffs' suit was entirely successful — both by inducing DCFS and DHH to come into compliance after filing of the suit, and in this Court's holdings after trial.  (Doc. No. 436, at 32 ("It is undisputed that DHH and DCFS violated the NVRA prior to the filing of this lawsuit. . . . It is evident that the SOS has failed to enforce the NVRA in Louisiana.  Other than publishing a manual on NVRA compliance and conducting sporadic and faulty training sessions, the SOS has done nothing to ensure that the State comply with its NVRA obligations.")).

With the consent of all Defendants in this action, Plaintiffs filed an Ex Parte Consent Motion for Extension of Time to File Motion to Set Attorneys' Fees and Costs (Doc. No. 438) (the "Extension Motion") and an Ex Parte Consent Motion to Expedite Submission Date of the Extension Motion (Doc. No. 439) on Friday, February 8, 2013, requesting an

additional two weeks – until February 26, 2013 – to file a motion to set attorneys' fees and costs. Your Honor granted those motions.  (Doc. Nos. 440, 441).

This case has already had a substantial impact on the ability of Louisiana's most vulnerable citizens to register to vote, and thus exercise the most precious right in our democracy.  Even before the decision on the merits, after this Complaint was filed in April 2011, the number of voter registrations through public assistance offices increased seven-fold (when comparing the third quarter of 2011 to the third quarter during the previous two years).  *See* Pls.' Trial Exs. 54-55; Pls.' PFOF at 9,  29 (Doc. No. 372).  Notably, this figure does not even include voter registration forms submitted by public assistance clients through remote transactions (mail, telephone, or internet).   Prior to this case, Defendants refused to provide voter registration services through such means, even though the vast majority of public assistance benefits transactions are conducted remotely; this unlawful omission translated into hundreds of thousands of Louisiana citizens being denied an opportunity to register to vote.  Amended Pre-Trial Order, Uncontested Facts 10-29 (Doc. No. 373).  Furthermore, Defendants have also been ordered to cure numerous other violations of the statute, which will further ensure that Louisiana citizens are offered an opportunity to register to vote in accordance with federal law.  (Doc. No. 436).  Finally, the impact of this case will likely not be limited to Louisiana, as this Court's rulings interpreting the scope of the NVRA and the requirements it places on state agencies will also likely be influential in other district courts throughout the country.

The SOS filed a notice of appeal on February 19, 2013 and then also filed a motion to a stay on February 22, 2013, stating that the Department of Health and Hospitals and the Department of Children and Family Services have indicated that they do not intend to appeal

but rather, plan to certify compliance with the injunction to the court within the time permitted by the court's order.

II.      Plaintiffs' Counsel's Involvement in this Litigation

      a.      *Plaintiffs' Counsel*

Counsel representing Plaintiffs throughout the litigation were comprised of attorneys from four organizations and firms — the NAACP Legal Defense and Educational Fund, Inc. ("LDF"); Project Vote; Fried, Frank, Harris, Shriver & Jacobson LLP ("Fried Frank"); and Ronald Wilson — which together brought considerable experience in election administration, voting rights, and complex federal litigation, as well as and local Louisiana Practice. Plaintiffs' counsel also included an appropriate mix of attorney experience levels. The Declarations of Michael de Leeuw, Sarah Brannon, Dale Ho, and Ronald Wilson describe the qualifications and educational background of each attorney for whom Plaintiffs are seeking fees. Litigating this complex matter required a large team of attorneys with substantial experience in voting rights litigation, necessitating the participation of three organizations and firms from outside of this district. As explained below, under these circumstances, awarding attorneys fees in conformity with each attorney's home district is appropriate.

      b.      *Hours Worked*

Plaintiffs' counsel maintained detailed time records regarding their work in this litigation. These records are attached as exhibits to the declarations of Plaintiffs' counsel, and summarized in aggregate below. In total, Plaintiffs' counsel seek fees for a total of 7,312.6 hours litigating this action to its successful conclusion, subject to certain exclusions described below.

c.    *Hourly Rates for Plaintiffs' Counsel*

For the reasons explained below in Plaintiffs' Argument, the hourly rates requested by Plaintiffs' counsel are based on prevailing market rates in the Plaintiffs' counsel's "home" districts, subject to reasonable reductions as described in the accompanying declarations of counsel.  The requested rates are as follows:

| Counsel (by Organization/Firm) | Year of Graduation | Hourly Rate |
|---|---|---|
| | | |
| *Fried, Frank, Harris, Shriver & Jacobson LLP (Home District: Southern District of New York)* | | |
| Israel David | 1996 | $650 |
| Michael de Leeuw | 1996 | $650 |
| Erica Sollie | 2008 | $400 |
| David Yellin | 2011 | $280 |
| Jesse Ryan Loffler | 2011 | $280 |
| Joseph Chan (Litigation Support) | N/A | $280 |
| Michael Deguzman (Paralegal) | N/A | $200 |
| | | |
| *NAACP Legal Defense and Educational Fund, Inc. (Home District: Southern District of New York)* | | |
| Ryan Haygood | 2001 | $600 |
| Dale Ho | 2005 | $475 |
| Natasha Korgaonkar | 2007 | $350 |
| La Tanya Harry (Paralegal) | 2007 | $175 |
| Dhiren Patel (Paralegal) | N/A | $175 |
| Joseph Puma (Paralegal) | N/A | $175 |
| | | |
| *Project Vote  (Home District: District of the District of Columbia)* | | |
| Sarah Brannon | 1999 | $600 |
| Nicole Kovite Zeitler | 2006 | $600 |
| Niyati Shah | 2005 | $275 |
| Michelle Rupp | 2011 | $280 |
| Kelly Gerlach (Data Analyst) | N/A | $175 |
| | | |
| *Law Offices of Ronald Wilson (Home District: Eastern District of Louisiana)* | | |
| Ronald Wilson | 1975 | $400 |

For time spent in travel, counsel are requesting rates discounted by fifty percent (50%). Further, as set forth in the accompanying declarations, a number of attorneys, paralegals, and other support staff assisted in review and management of the litigation and with filings, but Plaintiffs' counsel voluntarily eliminated the hours billed by these individuals, as described more fully in the accompanying declarations. *See* Declaration of Michael de Leeuw ("de Leeuw Decl."); Declaration of Sarah Brannon ("Brannon Decl."); Declaration of Dale Ho ("Ho Decl.").

  d.  *Expenses and Costs*

As this Court's order permits recovery of litigation expenses and costs related to this action (Doc. No. 436), this application also seeks reasonable expenses and costs, subject to a number of voluntary exclusions set forth below. Itemizations of these expenses are also attached as exhibits to the declarations of Plaintiffs' counsel.

## ARGUMENT

As explained in detail below, Plaintiffs' requested amounts for fees and expenses are eminently reasonable. The highly technical and complex nature of this case required the participation of a large team of attorneys from outside of this district, who have expertise in voting rights matters and trial practice, thus justifying the use counsel's home district rates in the calculation of this fee award. Moreover, the number of hours for which Plaintiffs seek compensation is eminently reasonable, particularly given the various exclusions and write-downs that Plaintiffs have voluntarily adopted as an exercise of billing judgment.

I.  <u>Plaintiffs Are Entitled to the Requested Amount of Fees Under the Lodestar Method</u>

The Fifth Circuit uses the "lodestar" method to calculate attorneys' fees, "which is applied by multiplying the number of hours reasonably expended by an appropriate hourly rate." *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 490 (5th Cir. 2012).

The "linchpin of the reasonable fee is the lodestar calculation, a product of the hours reasonably expended by the law firms and the reasonable hourly rate for their services." *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381 (5th Cir. 2011), *cert. denied*, 132 S. Ct. 589 (2011).  There is a strong presumption that an award based on the lodestar method is a reasonable fee.  *See Smith & Fuller, P.A.*, 685 F.3d at 490; *see also Creecy v. Metro. Prop. & Cas. Ins. Co.*, 548 F. Supp. 2d 279, 283-84 (E.D. La. 2008).  "After the calculation of the lodestar, the burden then shifts to the party opposing the fee to contest the reasonableness of the hourly rate requested or the reasonableness of the hours expended 'by affidavit or brief with sufficient specificity to give fee applicants notice' of the objections." *Creecy*, 548 F. Supp. 2d at 284 (citation omitted).  As part of the lodestar calculation, any charges for "excessive, duplicative, or inadequately documented work must be excluded." *McClain*, 649 F.3d at 381.

> a.    *Plaintiffs' Counsel's Hourly Rates are Reasonable*

As an initial matter, Ronald Wilson's rates are reasonable and in accordance with the rates that he normally charges and collects in this district.  *See* Wilson Decl. ¶ 8.

With respect to out-of-district counsel, the Fifth Circuit has joined the majority of its sister circuits in taking "the position that out-of-district counsel may be entitled to the rates they charge in their home districts" under certain circumstances, which are present here. *McClain*, 649 F.3d at 381-82 (citing *Hadix v. Johnson*, 65 F.3d 532, 535 (6th Cir. 1995); *Zolfo, Cooper & Co. v. Sunbeam–Oster Co.*, 50 F.3d 253, 259–60 (3d Cir. 1995); *Casey v. City of Cabool, Mo.*, 12 F.3d 799, 805 (8th Cir.1993); *Nat'l Wildlife Fed'n v. Hanson*, 859 F.2d 313, 317 (4th Cir. 1988); *Maceira v. Pagan*, 698 F.2d 38, 40 (1st Cir. 1983); *Donnell v. United States*, 682 F.2d 240, 252 (D.C. Cir. 1982); *Chrapliwy v. Uniroyal, Inc.*, 670 F.2d 760, 768–69 (7th Cir. 1982)).

In *McClain*, the Fifth Circuit cites positively the Sixth Circuit's two-prong test to determine the appropriateness of out-of-district rates. Applying this two-prong test, "courts must determine (1) whether hiring the out-of-town specialist was reasonable in the first instance, and (2) whether the rates sought by the out-of-town specialist are reasonable for an attorney of his or her degree of skill, experience, and reputation." *McClain*, 649 F.3d at 382 (quoting *Hadix*, 65 F.3d at 535).

(i)    Reliance on Out-of-Town Counsel

First, Plaintiffs' use of out-of-town counsel was reasonable, thus justifying the use of out-of-town rates in this fee award. In considering whether to award out-of-town rates, courts inquire whether "there is reason to believe that competent counsel was readily available locally at a lower charge or rate." *Hadix*, 65 F.3d at 535. In *McClain*, the Fifth Circuit held that out-of-town counsel's rates should serve as the starting point of its lodestar calculation, because, *inter alia*, the successful plaintiffs in that case offered sufficient proof of the need for out-of-town counsel, in form of declarations fro local lawyers "who swore that no [local] attorneys were willing and able to assist in such a large case that might drag on for years without any guarantee of financial remuneration." 649 F.3d at 383. Such rates are particularly appropriate in civil rights matters such as this case, given the nature of the interests at stake. Where, as here, "out-of-district counsel are proven to be necessary to secure adequate representation for a civil rights plaintiff, the rates charged by that firm are the starting point for the lodestar calculation." *Id.* Accordingly, the Fifth Circuit remanded for the district court to reconsider its reduction of out-of-town counsel's rate from $650 per hour to $400 per hour. *See id.* at 382-84.

Thus, courts in this district and elsewhere have routinely awarded out-of-town rates. *See, e.g., Greater New Orleans Fair Hous. Action Ctr. v. St. Bernard Parish*, Civ. A. No.

06-7185, Doc. No. 381, at 35-37 (E.D. La. Sept. 1, 2010) (report and recommendation in civil rights case, approving the use of hourly rates based on Washington, D.C. rates of up to $625 per hour for out-of-district counsel, because out-of-town counsel served as lead counsel and had specialized knowledge of the subject matter of the litigation); 2012 WL 4959636, at *7 (E.D. La. Aug. 24, 2012), *report and recommendation adopted*, 2012 WL 4959633 (E.D. La. Oct. 17, 2012); *Feinberg v. Hibernia Corp.*, 966 F. Supp. 442, 446 (E.D. La. 1997) (in complex securities fraud class action, finding local rates to be "unduly restrictive to out of state counsel" and that "New York counsel pays New York rates in maintaining their law practices . . . [and] to restrict New York counsel to the prevailing hourly charges in the less expensive New Orleans market would be unduly unfair"); *Jeffers v. Clinton*, 776 F. Supp. 465, 469 (E.D. Ark. 1991), *vacated and remanded on other grounds, judgment reinstated without change*, 796 F. Supp 1202 (E.D. Ark. 1992) (noting that the "mammoth [Voting Rights Act] case could not have been undertaken without the [NAACP] Legal Defense Fund's lawyers and resources," that the "expertise, energy, and resources" of the LDF was instrumental in successfully prosecuting the case, and counsel's "unique expertise" warranted the compensation of out-of-town attorneys at non-local rates).

This reasonableness standard for the use of out-of-town counsel is satisfied here. As explained below, this complex voting rights case required a large team of practitioners with: (i) substantial experience in this particular area of law; and (ii) the ability to commit significant resources at the outset of the case.  Here, as in *McClain*, local counsel were simply unavailable to litigate this case.  As explained in his declaration, William P. Quigley, who has practiced as a public interest lawyer in southern Louisiana since 1977 and has been repeatedly recognized for his work, Quigley Decl. at ¶¶ 2-5, states that "there is a dearth of practitioners here who specialize in voting rights and election law specifically, as LDF and its co-counsel do."  Quigley

Decl. at ¶ 8.  Moreover, Mr. Quigley is aware of "no attorneys in the Eastern District of Louisiana who possess: (i) expertise in litigation under the NVRA, and (ii) sufficient time and resources to serve as lead counsel in such a large case without any guarantee of financial remuneration."  Quigley Decl. at ¶ 10.  Mr. Quigley thus believes that it was "reasonable that this case was litigated by out-of-state attorneys, as local practitioners generally do not have both the requisite specialization in the relevant area of law, along with the resources to undertake such a lawsuit."  Quigley Decl. at ¶ 10.

Additionally, Ronald Wilson – local counsel in this matter since its inception – has worked primarily on civil rights and other public interest cases in his nearly four decades of practice in Louisiana, has participated in over thirteen voting rights cases in Louisiana, many with LDF, and is well-recognized as a leader in the Louisiana legal community.  Wilson Decl. at ¶¶ 10-13.  Mr. Wilson concurs with Mr. Quigley that a voting rights claim such as the NVRA claim at bar "requires a significant investment of resources . . . invested upfront, and with potentially no fees awarded at the end."  Wilson Decl. at ¶ 15.  Although there are civil rights attorneys in Louisiana, "there is a paucity of in-state practitioners here who could have served as lead counsel in this case."  Wilson Decl. at ¶ 16.  In fact, even though Mr. Wilson has considerable experience in civil rights cases, he affirms that he "could not have litigated this case without support" and "[t]his is simply not an investment that a private practitioner in this District could make independently."  Wilson Decl. at ¶ 16.  Simply put, Mr. Wilson explains that he, like local practitioners, "do[es] not have the time or resources to serve as lead counsel for indigent clients in a case, such as this one, without any guarantee of remuneration" and, in fact, he is "doubtful that even two private practitioners in the New Orleans area could have undertaken this litigation together."  Wilson Decl. at ¶ 16.

Thus, it was reasonable that this case was litigated primarily by out-of-state counsel. Wilson Decl. at ¶ 17. Plaintiffs' out-of-town counsel expended the bulk of the hours in this case. LDF, Project Vote, and Fried Frank were able to commit significant resources to this complex civil rights matter, and brought significant expertise and experience with respect to voting rights litigation and/or trial practice. *See, e.g.*, Ho Decl. ¶¶ 14, 30-35 (explaining LDF's voting rights work and the experience of its attorneys); Rosenberg Decl ¶¶ 11 (describing experience and qualifications of LDF attorneys who worked on this matter); Brannon Decl. ¶¶ 10-18; de Leeuw Decl. ¶¶ 2-6. Under these circumstances, out-of-town rates are appropriate. *See McClain*, 649 F.3d at 383 (awarding out-of-town rates for civil rights practitioners where local counsel was unavailable); *Greater New Orleans Fair Hous. Action Ctr.*, Civ. A. No. 06-7185, Doc. No. 381, at 35-37 (awarding out-of-town rates where counsel brought special expertise to case at bar); *Jeffers*, 776 F.Supp. at 469 (awarding out-of-town expenses to LDF based on LDF's "unique" "expertise, energy, and resources").

First, Plaintiffs' use of out-of-town counsel was reasonable. Where, as here, there is strong, uncontradicted evidence that plaintiffs were required to turn to out-of-district counsel to litigate their claims – such necessity rendering plaintiffs engagement of counsel in this matter reasonable, *see* Declaration of William P. Quigley, at ¶¶ 8-10 ("Quigley Decl."); Declaration of Ronald Wilson, at ¶¶ 15-17 ("Wilson Decl.") — counsel's "'home' rates should be considered as a starting point for calculating the lodestar amount." *McClain*, 649 F.3d at 382. In *McClain*, for example, the 5th Circuit remanded after the district court had reduced out-of-town counsel's rate from $650 per hour to $400 per hour; the Fifth Circuit held that the district court erred by failing to use out-of-town counsel's rates as the starting point of its lodestar calculation. *See id.* at 382-84; *see also Greater New Orleans Fair Hous. Action Ctr. v. St. Bernard Parish*, Civ. A. No. 06-

7185, 2012 WL 4959636, at *7 (E.D. La. Aug. 24, 2012), *report and recommendation adopted*, 2012 WL 4959633 (E.D. La. Oct. 17, 2012) (in Fair Housing Act civil rights case, approving the use of hourly rates based on Washington D.C. rates up to $625 per hour for out-of-district counsel); *Greater New Orleans Fair Hous. Action Ctr. v. St. Bernard Parish*, Civ. A. No. 06-7185 (E.D. La. Sept. 1, 2010) (Doc. No. 381, at 14, 35-37; Doc. No. 381-1, Ex. A at 1), *report and recommendation adopted*, (E.D. La. Oct. 17, 2012) (Doc. No. 394) (in earlier related proceeding in Fair Housing Act case, approving use of Washington D.C. rates – up to $625 per hour for the lead partner – for firm with specialized skills where local counsel could not be located); *Feinberg v. Hibernia Corp.*, 966 F. Supp. 442, 446 (E.D. La. 1997) (in complex securities fraud class action, the court found local rates to be "unduly restrictive to out of state counsel" and "New York counsel pays New York rates in maintaining their law practices . . . [and] to restrict New York counsel to the prevailing hourly charges in the less expensive New Orleans market would be unduly unfair"); *Jeffers v. Clinton*, 776 F. Supp. 465, 469 (E.D. Ark. 1991), vacated and remanded on other grounds, judgment reinstated without change, 796 F. Supp 1202 (E.D. Ark. 1992) (noting that the "mammoth [Voting Rights Act] case could not have been undertaken without the [NAACP] Legal Defense Fund's lawyers and resources," that the "expertise, energy, and resources" of the LDF was instrumental in successfully prosecuting the case, and counsel's "unique expertise" warranted the compensation of out-of-town attorneys at non-local rates).

In considering whether to award out-of-town rates, courts first determine "whether hiring the out-of-town specialist was reasonable in the first instance." *McClain*, 649 F.3d at 382 (quoting *Hadix*, 65 F.3d at 535)). Thus courts inquire whether "there is reason to believe that competent counsel was readily available locally at a lower charge or rate." *Hadix*,

65 F.3d at 535; *see also McClain*, 649 F.3d at 383 (successful plaintiffs offered sufficient proofs in form of local lawyers "who swore that no Texas attorneys were willing and able to assist in such a large case that might drag on for years without any guarantee of financial remuneration").

The Declarations of William P. Quigley and Ronald Wilson demonstrate that this standard was met in this case.  For example, William P. Quigley, who has practiced as a public interest lawyer in southern Louisiana since 1977 and has been repeatedly recognized for his work, Quigley Decl. at ¶¶ 2-5, explains that although there are Louisiana attorneys with general civil rights experience, "there is a dearth of practitioners here who specialize in voting rights and election law specifically, as LDF and its co-counsel do."  Quigley Decl. at ¶ 8.  Moreover, Mr. Quigley was aware of "no attorneys in the Eastern District of Louisiana who possess: (i) expertise in litigation under the NVRA, and (ii) sufficient time and resources to serve as lead counsel in such a large case without any guarantee of financial remuneration."  Quigley Decl. at ¶ 10.  Mr. Quigley thus believed that it was "reasonable that this case was litigated by out-of-state attorneys, as local practitioners generally do not have both the requisite specialization in the relevant area of law, along with the resources to undertake such a lawsuit."  Quigley Decl. at ¶ 10.

Additionally, Ronald Wilson – local counsel in this matter since its inception – has worked primarily on civil rights and other public interest cases in his nearly four decades of practice in Louisiana, has participated in over thirteen voting rights cases in Louisiana, many with LDF, and is well-recognized as a leader in the Louisiana legal community.  Wilson Decl. at ¶¶ 10-13.  Mr. Wilson concurs with Mr. Quigley that a voting rights claim such as the NVRA claim at bar "requires a significant investment of resources . . . invested upfront, and with potentially no fees awarded at the end."  Wilson Decl. at ¶ 15.  Although there are civil rights

16

attorneys in Louisiana, "there is a paucity of in-state practitioners here who could have served as lead counsel in this case." Wilson Decl. at ¶ 16. In fact, even though Mr. Wilson has considerable experience in civil rights cases, he affirms that he "could not have litigated this case without support" and "[t]his is simply not an investment that a private practitioner in this District could make independently." Wilson Decl. at ¶ 16. Simply put, Mr. Wilson explains that he, "as most private practitioners, do not have the time or resources to serve as lead counsel for indigent clients in a case, such as this one, without any guarantee of remuneration" and, in fact, he is "doubtful that even two private practitioners in the New Orleans area could have undertaken this litigation together." Wilson Decl. at ¶ 16. Therefore, it was reasonable that this case was litigated by plaintiffs' out-of-state counsel. Wilson Decl. at ¶ 17.

(ii)    The Reasonableness of Counsel's Rates

The second inquiry is "whether the rates sought by the out-of-town specialist are reasonable for an attorney of his or her degree of skill, experience, and reputation." *McClain*, 649 F.3d at 382 (quoting *Hadix*, 65 F.3d at 535)). This Court has considerable discretion in fashioning a fair and reasonable award of attorneys' fees and costs for prosecuting this complex, time-consuming, and ultimately entirely successful litigation. *See id.* ("[A]ppellate courts should be particularly reluctant to find an abuse of discretion. . . . [T]he district court retains discretion to adjust the lodestar and achieve an overall reasonable fee award."); *see also Nat'l Wildlife Fed'n*, 859 F.2d at 317 ("The computation of attorneys fees is primarily the task of the district court, and we are not entitled to disturb a district court's exercise of discretion even though we might have exercised that discretion quite differently.").[3]

---

[3]    Although Plaintiffs' counsel believes out-of-market rates are warranted in this case, even if the Court were to be inclined to look at New Orleans rates, the requested rates – already discounted voluntarily by counsel – are not unreasonable by comparison. *See Wagner v. Boh Bros. Const. Co., LLC.*, Civ. A. No. 11-2030, 2012 WL 3637392, at *14 (E.D. La. Aug. 22, 2012) (Wilkinson, J.) (collecting cases in New Orleans area finding reasonable rates for

Here, the rates sought by Plaintiffs' counsel are generally below market for attorneys experienced in complex litigation generally and voting rights litigation in particular, and thus well within reason. First, for purposes of this litigation, Fried Frank has dramatically lowered its rates below what the firm normally charges and collects for its attorneys' time. *See* de Leeuw Decl. ¶¶ 3-4, 9, 11.

Similarly, LDF's rates are well-below market for experienced practitioners of complex civil litigation in New York. *See, e.g.*, Declaration of Ezra D. Rosenberg at ¶¶ 13-14 ("Rosenberg Decl."); Declaration of Adam Klein at ¶¶ 10-11 ("Klein Decl."); Declaration of Cyrus Mehri at ¶¶ 6-8 ("Mehri Decl."); Ho Decl. at ¶¶ 25-28. Indeed, LDF attorneys Dale Ho and Ryan Haygood are former associates at Fried Frank, and their requested rates in this matter are well below what Fried Frank would currently charge for their work. *See* de Leeuw Decl. ¶¶ 3-5, 9-10. Moreover, the rates sought by LDF of $350 to $600 per hour are within the range of rates awarded in civil rights litigation by New York courts. *See, e.g.*, *Vilkhu v. The City of New York*, 2009 U.S. Dist. LEXIS 73696 at *13 (E.D.N.Y. June 26, 2009) (describing the range of rates paid to experienced civil rights attorneys as "$250 to $600 . . . with average awards increasing over time."); *Rozell v. Ross-Holst*, 576 F. Supp.2d 527, 546 (S.D.N.Y. 2008) (awarding an experienced civil rights litigator fees at $600 per hour).

And, Project Vote's rates are similarly below what comparable firms would charge in the Washington, D.C. market. *See* Brannon Decl. ¶¶ 21-25; Mehri Decl. ¶¶ 5-8. Furthermore, the rates sought by Project Vote of $280 to $600 per hour are within the range for D.C.-based attorneys as set forth under the Updated Laffey Matrix, on which the U.S. District Court for the District for the District of Columbia frequently relies when awarding attorneys'

---

attorneys up to $450 per hour for partner-level attorneys, and up to $112 per hour for paralegal work). Moreover, even under the *Johnson* factors, discussed *infra*, "[b]ecause the lodestar is presumptively reasonable, it should be *modified only in exceptional cases*." *Wagner*, 2012 WL 3637392, at *13.

fees.  *See* Adjusted Laffey Matrix, *available at* http://laffeymatrix.com/see.html (setting rates for attorneys of comparable experience levels at $312 to $625 per hour); *Ricks v. Barnes*, No. 05-1756 HHK/DAR, 2007 U.S. Dist. LEXIS 22410, at *16 (D.D.C. Mar. 28, 2007) (finding Updated Laffey Matrix rates reasonable); *Smith v. District of Columbia*, 466 F. Supp. 2d 151, 156 (D.D.C. 2006) (concluding that use of the Updated Laffey Matrix is reasonable").

Accordingly, all of the rates sought by Plaintiff's counsel are eminently reasonable for the markets in which these attorneys practice.

b.   *Plaintiffs' Counsel Worked Reasonable Hours, and This Time Should be Fully Compensated*

As a general proposition, all time that is excessive, duplicative or inadequately documented should be excluded.  *See Wagner v. Boh Bros. Const. Co., LLC*., Civ. A. No. 11-2030, 2012 WL 3637392, at *15 (E.D. La. Aug. 22, 2012).  Further, attorneys should "exercise 'billing judgment' by 'writing off unproductive, excessive, or redundant hours' when seeking fee awards."  *Id.* (quoting *Green v. Administrators of the Tulane Educ. Fund*, 284 F.3d 642, 662 (5th Cir. 2002)).

As described in the accompanying declarations of Plaintiffs' counsel, Plaintiffs have conservatively calculated the number of hours claimed in this fee application.  *See* de Leeuw Decl. at ¶¶ 9, 11; Brannon Decl. at ¶¶ 9; Ho Decl. at ¶¶ 20; Wilson Decl. at ¶¶ 6-8. Counsel have reviewed their time records and exercised billing judgment to eliminate or reduce time entries that could arguably be considered unproductive, duplicative, or excessive. Additionally, counsel have voluntarily reduced their hours worked in the following respects: (i) with respect to LDF and Project Vote, eliminating any time billed in investigating the claims underlying this case, for purposes of drafting and filing the complaint, prior to the filing of the Complaint on April 19, 2011; (ii) with respect to LDF and Project Vote, omitting time spent by

senior staff at reviewing and editing the briefing at the various stages of litigation; (iii) with respect to LDF and Project Vote, writing off any additional attorney time whenever more than two attorneys from either of their respective organizations attended a deposition; (iv) with respect to Fried Frank, omitting time spent by paralegals helping on the matter, as needed from time to time, and certain individuals from Fried Frank's Managing Attorneys Office, which helped coordinate and file the numerous documents and briefing submitted in this case; (v) with respect to all three organizations, billing travel time to and from Louisiana at one-half the respective rates sought for attorneys in this litigation; (vi) with respect to all three organizations, writing off all time in connection with the preparation and filing the instant fee application, including the time expended gathering and reviewing counsel's records concerning work hours and litigation expenses; (vii) with respect to all three organizations, writing off an additional ten percent (10%) of the fees request as an exercise of billing judgment and to account for any potential duplication.  With these voluntary reductions, no further reductions are required.

c.      *Fees & Expenses Calculations*

The "lodestar" method "is applied by multiplying the number of hours reasonably expended by an appropriate hourly rate."  *Smith & Fuller, P.A.*, 685 F.3d at 486.  As discussed above, Plaintiffs' counsel seeks an appropriate hourly rate for this case and the hours expended and fees incurred in this action were eminently reasonable.[4]   The Court also ordered in the Findings of Fact and Conclusions of Law (Doc. No. 436) that Plaintiffs be awarded costs and

---

[4]      Plaintiffs' counsel LDF and Project Vote have not included any time or expenses associated with the re-depositions taken as a result of the grant of their motion for sanctions.  (Doc. No. 423).

expenses in prosecuting this action.  Thus, the attorneys' fees and expenses are calculated, by counsel affiliation and cumulatively, as follows:[5]

**Fried, Frank, Harris, Shriver & Jacobson LLP**

| Name | Hours | Rate | Total |
|------|-------|------|-------|
| Israel David | 58.3 | $650 | $30,095 |
| Michael de Leeuw | 459.7 | $650 | $288,730 |
| Erica Sollie | 308.2 | $400 | $118,140 |
| David Yellin | 389.6 | $280 | $107,268 |
| Jesse Ryan Loffler | 282.8 | $280 | $77,140 |
| Michael Deguzman | 18.7 | $200 | $3,740 |
| Joseph Chan | 12.4 | $180 | $2,232 |
|  |  |  |  |
| Total | 1555.4 |  | $627,345 |
|  |  |  |  |
| Total (less 10% voluntary reduction) |  |  | $564,610.50 |

**NAACP Legal Defense & Educational Fund, Inc.**

| Name | Hours | Rate | Total |
|------|-------|------|-------|
| Ryan Haygood | 185 | $600 | $110,000.00 |
| Dale Ho | 1414.3 | $475 | $671,792.50 |
| Natasha Korgaonkar | 922.3 | $350 | $322,805.00 |
| Dhiren Patel | 31.5 | $175 | $5,512.50 |
| La Tanya Harry | 62.1 | $175 | $10,867.50 |
| Joseph Puma | 260 | $175 | $45,500.00 |
|  |  |  |  |
| Total | 2875.2 |  | $1,166,477.50 |
|  |  |  |  |
| Total (less 10% voluntary reduction) |  |  | $1,049,829.80 |

**Project Vote**

| Name | Hours | Rate | Total |
|------|-------|------|-------|
| Sarah Brannon | 702.1 | $600 | $394,310 |
| Nicole Zeitler | 638.8 | $600 | $369,630 |
| Niyati Shah | 781.9 | $475 | $354,540 |
| Michelle Rupp | 560.0 | $280 | $151,515 |
| Kelly Gerlach | 22.0 | $175 | $3,850 |
|  |  |  |  |

---

[5]     Note that the totals take into account a voluntary fifty percent (50%) reduction in the lodestar rate for any travel time, and therefore, the total column may be less than a straight multiplication of the hours and rates, as set forth in the exhibits to the accompanying declarations of plaintiffs' counsel.

| Total | 2,704.8 | | $1,273,845 |
|---|---|---|---|
| | | | |
| Total (less 10% voluntary reduction) | | | $1,146,460 |

**Law Offices of Ron Wilson**

| Name | Hours | Rate | Total |
|---|---|---|---|
| Ron Wilson | 177.2 | $400 | $70,880.00 |
| | | | |
| Total | 177.2 | | $70,880.00 |

**Expenses**

| Counsel | Total Expenses |
|---|---|
| Fried, Frank, Harris, Shriver & Jacobson LLP | $49,838.96 |
| NAACP Legal Defense and Education Fund, Inc. | $60,939.44 |
| Project Vote | $31,128.95 |
| Law Offices of Ron Wilson | N/A |
| | |
| Total Expenses | $141,907.35 |

Thus, the total fees, costs, and expenses incurred are $564,610.50 by Fried, Frank, Harris, Shriver & Jacobson LLP, $1,049,829.80 by NAACP Legal Defense and Educational Fund, Inc., $1,146,460.00 by Project Vote, and $70,880.00 by the Law Offices of Ron Wilson, for a cumulative total of $2,894,514.80.  In addition to the already reasonable reductions made, Plaintiffs' counsel from LDF, Project Vote, and Fried Frank will voluntarily reduce the requested amount by a ten percent (10%) across-the-board cut to the fee request, as reflected in the tables above, as an exercise in billing judgment and to eliminate any duplicative or excessive hours billed.  Thus, the total fees, expenses and costs requested by Plaintiffs are $141,907.35, of which each Defendant is responsible for one-third.  Plaintiffs respectfully request that the Court award

Plaintiffs' these reasonable requested fees and expenses incurred in successfully litigating their claims.[6]

II.        The Lodestar Calculation Need Not be Adjusted

After the lodestar is calculated, "which [lodestar calculation] is presumptively reasonable," the amount can be "adjusted upward or downward by the district court based on the district court's considerations of the [Fifth Circuit's] *Johnson* factors." *Wagner v. Boh Bros. Const. Co., LLC.*, Civ. A. No. 11-2030, 2012 WL 3637392, at *12 (E.D. La. Aug. 22, 2012) (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).   The twelve *Johnson* factors are:

> (1) the time and labor required for the litigation; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney by acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.*; *see also Crosby v. Blue Cross Blue Shield of Louisiana*, Civ. A. No. 08-0693, 2013 WL 139805, at *1 n.1 (E.D. La. Jan. 10, 2013).[7]  However, "[b]ecause the lodestar is presumptively reasonable, it should be *modified only in exceptional cases*." *Wagner*, 2012 WL 3637392, at *13 (emphasis added).   Moreover, after the party seeking attorneys' fees has submitted adequate documentation of the hours reasonably expended and the qualifications of the attorneys, "the party seeking reduction of the lodestar bears the burden of showing that a reduction is warranted." *Id.*

---

[6]        Additionally details concerning these fees, costs and expenses are set forth in the accompanying declarations of Plaintiffs' counsel.  Further details, if necessary, can be provided based on contemporaneous records maintained by Plaintiffs' counsel.

[7]        After *Johnson* was decided, the Supreme Court "barred any use of the sixth factor, whether the fee is fixed or contingent." *Wagner*, 2012 WL 3637392, at *13 (citing *Walker v. U.S. Dep't of Housing & Urban Dev.*, 99 F.3d 761, 772 (5th Cir. 1996) (internal citation omitted).

The Fifth Circuit has instructed that, of the *Johnson* factors, the Court should give special heed to: i) the time and labor involved; ii) the customary fee; iii) the amount involved and the result obtained; and iv) the experience, reputation, and ability of counsel.  *Id.* (citing *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998).  It is without question that the result obtained in the litigation was entirely on the side of the Plaintiffs.  Counsel for Plaintiffs — with significant experience handling voting and civil rights, and complex federal litigations — diligently prosecuted this action, engaged in extensive fact discovery, and put on an ultimately successful trial – all less than two years after filing the complaint, which itself required extensive investigation prior to filing.  Moreover, the result in this case is of both local and national significance – it not only vindicates the rights of multitudes of Louisiana voters under the NVRA, but also serves as a roadmap to compliance with the NVRA nationally, and as the only Section 7 case to go to and complete trial, is of particular import for potential litigants seeking to enforce their NVRA-related rights.

The same justifications weigh in favor of factors 3, 7, and 11; Plaintiffs' counsel worked diligently on behalf of Plaintiffs to analyze numerous policies, practices, and forms — in addition to successfully securing NVRA-related rights for public assistance beneficiaries connecting with the agencies remotely, often using technology that did not exist when the NVRA was passed — with no assurance they would be compensated for the time dedicated to the litigation or reimbursement for the substantial litigation expenses of prosecuting this action outside of their "home" districts, and completed an extensive amount of discovery and legal briefing under relatively short time limitations.  Moreover, as this was the first time a case proceeded to trial under Section 7 of the NVRA, plaintiffs' counsel had even less assurance of compensation.

It is also well-established that cases vindicating civil rights are often "undesirable" for attorneys because their "decision to help eradicate discrimination is not pleasantly received." *Johnson*, 488 F.2d at 719.  Despite their total vindication and success in this matter, Plaintiffs' attempt to secure and enhance voting rights for the most vulnerable Louisianans was not received well, as indicated by the Declarations of William Quigley and Ronald Wilson, describing the unavailability of local counsel — as well as the fact that Defendants often fought tooth and nail over even innocuous matters such as an amendment of the case caption to accurately reflect the parties to the matter.  Indeed, as noted, Plaintiffs repeatedly attempted to settle this litigation before discovery began in earnest and the parties expended much time or resources on this matter, *see* Ho Decl. ¶ 8, Brannon Decl. ¶ 6, and attempted to do so again after partial summary judgment briefing, *see* Ho Decl. ¶ 10, Brannon Decl. ¶ 6, only to be rebuffed on both occasions.  Defendants repeatedly refused to even consider any settlement featuring continuing jurisdiction by this Court—a form of relief that, as noted, was ultimately ordered—despite the fact that Defendants' did not dispute numerous facts indicating violations of the statute.

Further, "[t]hree of the Johnson factors, complexity of the issues, results obtained and preclusion of other employment, are presumably fully reflected and subsumed in the lodestar amount." *Id.* (citing *Heidtman v. County of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999)).

Finally, awards in similar and analogous cases demonstrate that Plaintiffs' requested amounts in this case are eminently reasonable.  *See Valdez v. Herrera*, No. 09-cv-668 JCH/DJS (D.N.M. Mar. 13, 2012) (Doc. No. 171) (awarding plaintiffs fees and costs in a case involving Section 7 of the NVRA – which was resolved on summary judgment and settlement); *see also Inclusive Communities Project, Inc. v. Texas Dep't of Housing & Community Affairs*,

No. 3:08-cv-00546 (N.D. Tex. Feb. 15, 2013) (Doc. No. 214) (awarding attorneys' fees of $1,869,577 and costs of $24,392 for success on the merits after a bench trial challenging race discrimination in allocation of Low Income Housing Tax Credits); *Graves v. Barnes*, 700 F.2d 220, 221 (5th Cir. 1983) (affirming, after reducing by $2,300, an award of approximately $948,700 in voting rights case); *Lochren v. County of Suffolk*, 344 F. App'x 706, 707 (2d Cir. 2009) (the district court awarded $578,704.14 in attorneys' fees and costs in civil rights suit regarding female advancement in police department; vacating and remanding for recalculation to add amounts by applying 2008 rather than 2006 rates, and to add fees for a reply paper in the fee application); *Butler v. MBNA Tech. Inc.*, 140 F. App'x 542, 543 (5th Cir. 2005) (in Title VII claim, awarded fees of $265,205.07 for requested amounts only from the *end* of discovery through completion of trial); *Lalla v. City of New Orleans*, 161 F. Supp. 2d 686, 713 (E.D. La. 2001) (in civil rights claims of racial discrimination against city, awarding plaintiffs attorneys' fees in the total amount of $250,922.34 and costs in the amount of $9,147.37 where claims were decided on summary judgment and settled prior to trial).

Even if the Court were to consider the *Johnson* factors — which it should not because "the lodestar is presumptively reasonable" and under *Johnson*, "it should be modified only in exceptional cases," *Wagner*, 2012 WL 3637392, at *13 — these factors weigh in favor of awarding Plaintiffs the lodestar amount calculated with a reasonable rate based on counsel's rates set forth above, and the reasonable hours expended in this litigation.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request an award of reasonable attorneys' fees in the amount of $2,894,514.80 and expenses in the amount of $141,907.35 incurred in connection with this litigation.

Dated: February 26, 2013

                              Respectfully submitted,

                              __/s/ Dale E. Ho_____
                              Dale E. Ho (dho@naacpldf.org)*
                              Natasha M. Korgaonkar
                              (nkorgaonkar@naacpldf.org)*
                              Debo P. Adegbile
                              Elise C. Boddie
                              Ryan P. Haygood (rhaygood@naacpldf.org)*
                              NAACP Legal Defense & Educational Fund, Inc.
                              (New York)
                              99 Hudson Street, Suite 1600
                              New York, NY 10013
                              212-965-2200
                              *MOTION FOR ADMISSION PRO HAC VICE
                              GRANTED

                              Ronald Lawrence Wilson
                              (cabral2@aol.com)
                              Ronald L. Wilson, Attorney at Law
                              701 Poydras Street, Suite 4100
                              New Orleans, LA 70139
                              504-525-4361

                              Michael B. de Leeuw
                              (michael.deleeuw@friedfrank.com)*
                              Israel David (israel.david@friedfrank.com)*
                              Erica Sollie*
                              Jesse Ryan Loffler*
                              David Yellin*
                              Fried, Frank, Harris, Shriver & Jacobson LLP
                              One New York Plaza
                              New York, NY 10004
                              212-859-8000
                              *MOTION FOR ADMISSION PRO HAC VICE
                              GRANTED

                              Sarah Brannon (sbrannon@projectvote.org)*
                              Niyati Shah (nshah@projectvote.org)*
                              Michelle Rupp (mrupp@projectvote.org)*
                              Project Vote
                              1350 Eye Street NW, Suite 1250
                              Washington, DC 20005

202-546-4173
*MOTION FOR ADMISSION PRO HAC VICE
GRANTED

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on the 26th of February, 2013, I electronically filed the foregoing Notice of Submission with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to persons electronically noticed.  I further certify that I mailed the foregoing document and the notice of electronic filing by first class mail to any non-CM/ECF participant.


__ /s/ Dale E. Ho_____

8863590