UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| LUTHER SCOTT, JR. ET AL. | CIVIL ACTION |
| VERSUS | NO. 11-926 |
| TOM SCHEDLER ET AL. | SECTION "H" (2) |

## FINDINGS AND RECOMMENDATION

In this action for injunctive relief under the National Voter Registration Act (the "Act"), the court found in favor of plaintiffs, Luther Scott, Jr. and the Louisiana State Conference of the NAACP, and entered a permanent injunction against all three defendants. These defendants are Tom Schedler in his official capacity as Louisiana Secretary of State ("Schedler" or "the Secretary"), and the Secretaries of the Louisiana Department of Health and Hospitals ("DHH") and Louisiana Department of Children and Family Services ("DCFS"), also in their official capacities. Record Doc. No. 437. The court entered judgment in plaintiffs' favor and against all defendants, including in the amounts of $355,489.38 in reasonable attorney's fees and $34,251.57 in reimbursable expenses. Record Doc. No. 492.

Schedler alone appealed. As to him, the Fifth Circuit Court of Appeals dismissed all of Scott's claims for lack of standing, dismissed the NAACP's claims "as to the remote transactions" for lack of standing, vacated the injunction in part and affirmed it in part, and remanded for the district court to modify the injunction in accordance with the Fifth Circuit's opinion. Scott v. Schedler, 771 F.3d 831, 841 (5th Cir. 2014). The Fifth Circuit

did <u>not</u> consider Schedler's arguments regarding this court's award of attorney's fees, but ordered that the district court on remand "must consider whether, if at all, to alter the award of attorney's fees in a manner consistent with our opinion." <u>Id.</u> at 841. After remand, the presiding district judge entered an amended permanent injunction against Schedler, Record Doc. No. 538, and "determined that the Secretary of State is entitled to a <u>reduction</u> in attorneys fees[1] awarded for remote transactions. Accordingly, this matter is referred to [the] magistrate judge for a determination of the amount of the reduction." Record Doc. No. 543 (emphasis added).

Schedler filed a timely Memorandum in Support of Reduction in Attorney's Fees After Remand by Fifth Circuit Court of Appeals, which the court treats as a motion. Record Doc. No. 547. The NAACP filed a timely opposition memorandum. Record Doc. No. 551. The Secretary received leave to file a reply memorandum. Record Doc. Nos. 553, 554, 555.

Having reviewed the written submissions of the parties, the record and the applicable law, I recommend that the motion for a reduction in attorney's fees and costs be GRANTED IN PART AND DENIED IN PART as follows. I recommend that Schedler's one-third share of the previous award be reduced by 20 percent from

---

[1] Neither the Fifth Circuit nor Judge Milazzo in her order of reference mentioned the award of <u>costs</u>. However, both parties in their memoranda make the same arguments regarding a reduction in the costs award as they do regarding the award of attorney's fees. As the parties have done, I assume that the order of reference encompasses the award of attorney's fees <u>and</u> costs.

$118,496.46 (one-third of $355,489.38) to $94,797.17 in reasonable attorney's fees and from $11,417.19 (one-third of $34,251.57) to $9,133.75 in reimbursable expenses.

I. BACKGROUND

The Fifth Circuit summarized this action as follows.

> Luther Scott, Jr. and the Louisiana NAACP both sought to enjoin two state agencies and the Louisiana Secretary of State to comply with the National Voter Registration Act. Scott alleges he was not provided with a voter registration form when applying for food stamps, and the Louisiana NAACP alleges it had to divert resources to voter registration drives as a result of Louisiana's purported non-compliance. The district court enjoined all three defendants. The state agencies do not appeal. Thus the only question for us is the validity of the injunction against the Secretary of State.
> Although the National Voter Registration Act is complex, today we are primarily concerned with the Secretary of State's challenge to the extent of its requirement that state welfare agencies provide benefits applicants with voter registration forms. The plaintiffs sought injunctive relief to (1) ensure the agencies provided voter registration forms to <u>applicants transacting remotely</u> over the internet, phone, or mail; (2) ensure the agencies provided voter registration forms to applicants checking neither box on the <u>declination form</u>; and (3) ensure the agencies complied with <u>other miscellaneous provisions</u> of the Act. The district court ruled in favor of the plaintiffs on all three sets of claims, issuing a broad injunction. The Secretary of State alone now appeals, asserting that he had no authority to enforce the Act. He also disputes the extent of the Act's obligations. Furthermore, he contends that neither Scott nor the Louisiana NAACP has satisfied Article III standing or the Act's notice requirement.

Scott, 771 F.3d at 832-33 (emphasis added).

The Fifth Circuit dismissed all of Scott's claims for lack of standing and dismissed the NAACP's first claim regarding remote transactions because the NAACP also lacked standing as to that claim. The appeals court ruled in Schedler's favor on the merits of the

3

second claim, finding that he had complied with the Act's requirements with respect to applicants who checked neither "Yes" nor "No" on the form that asked if they wanted to register to vote while they were at the DHH or DCFS for other purposes. The Fifth Circuit affirmed this court's judgment in the NAACP's favor on the third claim, finding that the Secretary had authority to enforce the Act and to require the DHH and DCFS to comply with other miscellaneous provisions of the Act that they had previously violated. Id. at 841.

In determining the original award of attorney's fees and costs, this court reduced the hourly rates requested by plaintiffs' counsel, deducted time and cost entries that the court deemed unrecoverable, and reduced the remaining requested hours and expenses by 75 percent because of extreme overstaffing that led to duplication of attorney efforts, lack of billing judgment and plaintiffs' "modestly successful" results. Record Doc. No. 485 at p. 2; Record Doc. No. 491. After remand, Judge Milazzo referred to me for findings and recommendation the amount of the "reduction in attorneys fees awarded for remote transactions" to which Schedler is entitled based on the Fifth Circuit's decision. Record Doc. No. 543.

## II. STANDARDS FOR AN AWARD OF ATTORNEY'S FEES

The lodestar method is routinely used to determine attorney's fee awards in federal civil actions and applies in this case brought under a federal statute. Under the lodestar method,

4

> [t]he determination of a fees award is a two-step process. First the court calculates the "lodestar[,]" which is equal to the number of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work. The court should exclude all time that is excessive, duplicative, or inadequately documented. Once the lodestar amount is calculated, the court can adjust it based on the twelve factors set forth in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974)[, abrogated on other grounds by Blanchard v. Bergeron, 489 U.S. 87 (1989)].

Jimenez v. Wood Cnty., 621 F.3d 372, 379-80 (5th Cir. 2010) (citations omitted).

"The lodestar may not be adjusted due to a Johnson factor, however, if the creation of the lodestar award already took that factor into account. Such reconsideration is impermissible double-counting." Heidtman v. County of El Paso, 171 F.3d 1038, 1043 (5th Cir. 1999) (citing City of Burlington v. Dague, 505 U.S. 557, 562 (1992); Shipes v. Trinity Indus., 987 F.2d 311, 319-20 (5th Cir. 1993)); accord Perdue v. Kenny A., 130 S. Ct. 1662, 1669 (2010).

The Johnson factors are:

(1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) the award in similar cases.

Johnson, 488 F.2d at 717-19.

"[O]f the Johnson factors, the court should give special heed to the time and labor involved, the customary fee, the amount involved and the result obtained, and the experience, reputation and ability of counsel." Migis v. Pearle Vision, Inc., 135 F.3d 1041, 1047 (5th Cir. 1998) (citation omitted). Three of the Johnson factors, complexity of the issues, results obtained and preclusion of other employment, are presumably fully reflected and subsumed in the lodestar amount. Heidtman, 171 F.3d at 1043 (quoting Pennsylvania v. Del. Valley Citizens' Council for Clean Air, 478 U.S. 546, 565 (1986); Shipes, 987 F.2d at 319-22 & n.9). After Johnson was decided, the "Supreme Court has barred any use of the sixth factor," whether the fee is fixed or contingent. The Johnson factors are taken into account after the court has determined the lodestar amount. Walker v. U.S. Dep't of Housing & Urban Dev., 99 F.3d 761, 772 (5th Cir. 1996) (citing City of Burlington, 505 U.S. at 567).

Degree of success obtained is one of several Johnson factors subsumed in the lodestar amount to consider in the district court's "'measured exercise of discretion'" when determining an attorney's fees award. Roussell v. Brinker Int'l, 441 F. App'x 222, 234 (5th Cir. 2011) (quoting Farrar v. Hobby, 506 U.S. 103, 114 (1992)).

The Supreme Court recently reiterated that "there is a strong presumption that the lodestar is sufficient" and that "an increase is permitted [only] in extraordinary circumstances." Perdue, 559 U.S. at 546; accord Smith & Fuller, P.A. v. Cooper Tire & Rubber Co., 685 F.3d 486, 490 (5th Cir. 2012); Jimenez, 621 F.3d at 380. Although the

6

party seeking attorney's fees bears the initial burden of submitting adequate documentation of the hours reasonably expended and of the attorney's qualifications and skill, the party seeking reduction of the lodestar bears the burden of showing that a reduction is warranted. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); Wegner v. Std. Ins. Co., 129 F.3d 814, 822 (5th Cir. 1997); La. Power & Light Co. v. Kellstrom, 50 F.3d 319, 329 (5th Cir. 1995) (hereinafter "LP&L").

"Moreover, the court need not explicitly calculate the lodestar to make a reasonable award." No Barriers, Inc. v. Brinker Chili's Tex., Inc., 262 F.3d 496, 501 (5th Cir. 2001) (citation omitted).

> The fee applicant . . . must, of course, submit appropriate documentation to meet the burden of establishing entitlement to an award. But trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time.

Fox v. Vice, 131 S. Ct. 2205, 2216 (2011). "If the district court has articulated and clearly applied the correct criteria, [the appeals court] will not require the trial court's findings to be so excruciatingly explicit in this area of minutiae that decisions of fee awards consume more paper than did the cases from which they arose." In re High Sulfur Content Gas. Prods. Liab. Litig., 517 F.3d 220, 228-29 (5th Cir. 2008) (quotations and citations omitted).

III.     ANALYSIS

Schedler argues for a substantial reduction in his share of the attorney's fees and costs award based on the NAACP's overall lack of success after the Fifth Circuit's rulings. He contends first that, because the court lacked jurisdiction over any of Scott's claims, this court can award no fees for work devoted to those claims or to plaintiffs' efforts to prove that Scott had standing. Schedler argues that he should not be compelled to pay any attorney's fees or expenses for plaintiffs' time spent proving the liability of the other defendants. Second, because the NAACP lacked standing to pursue its claim regarding remote transactions and because it lost on the merits on its claim regarding the declination form, Schedler asserts that the NAACP prevailed on only its third, "excruciatingly modest" claim that he failed to exercise adequate oversight and enforcement over in-person transactions at the other two defendant agencies. He contends that the court should substantially reduce the attorney's fees and costs award to reflect the NAACP's very limited success. Record Doc. No. 547 at p. 4. Despite the plain language of Judge Milazzo's referral order stating that she has "<u>determined</u> that the Secretary of State is entitled to a reduction in attorneys fees awarded <u>for remote transactions</u>," Record Doc. No. 543 (emphasis added), Schedler seeks a reduction in fees "particularly <u>but not exclusively for</u> the 'remote transactions' claim." <u>Id.</u> at p. 5 (emphasis added).

Schedler also contends that, since the Fifth Circuit remanded only as to him and Judge Milazzo determined that he is entitled to a reduction in the award, any amended

8

award should now be apportioned one-third to him and two-thirds to the other two defendants with whom he was jointly and severally liable in the original judgment. He asks the court to sever and assess his separate liability for attorney's fees and expenses and to order that his liability is joint and several with the other defendants only to the limits of his liability, with the remaining two-thirds of the fees and costs award declared joint and several between the other two defendants only.

The NAACP agrees that one-third of the award should now be apportioned to Schedler only. The court agrees with the parties in this respect. Schedler's one-third of the previously awarded $355,489.38 in reasonable attorney's fees is $118,496.46 and his one-third of the previously awarded $34,251.57 in reimbursable expenses is $11,417.19, before any additional reductions for lack of success on plaintiff's remote transactions claim.

To achieve the substantial reduction in attorney's fees and costs that Schedler seeks, he argues that the court should start with its previous assessment of the attorneys' reasonable hourly rates multiplied by the originally requested attorney hours and costs (after the court had deducted certain unrecoverable items). From that baseline, Schedler proposes deducting certain time and cost entries dated between November 2, 2011, and September 5, 2012, that he identifies as pertaining to the remote transactions claim. See Defendant's Exhs. A through O. These proposed reductions result in "roughly 30% fewer hours billed and 30% less in dollar value" in the total requested hours, fees and costs.

Defendant's memorandum, Record Doc. No. 547 at pp. 10-11 (reducing total hours from 7,252.5 to 5,175.17; total fees from $1,421,957.50 to $1,013,566.00; and total costs from $137,006.29 to $123,557.62). If the court then applies its original 75 percent reduction to those reduced amounts, the total requested attorney's fees of $1,013,566.00 would be further reduced by 75 percent to $253,391.50, and Schedler's one-third share of that amount would be $84,463.83. The costs would be similarly reduced by 75 percent to $30,889.41, of which Schedler's share would be $10,296.47. However, despite having identified the hours and costs that he alleges were specifically devoted to remote transactions during that time period, Schedler does <u>not</u> appear to argue ultimately for this method.

Instead, Schedler concludes that any fee and expense reduction for the remote transactions issue, whether based on deducting specific hours or on a percentage basis, "would reasonably be in the range of at least 20 percent." Apparently as an alternative to first deducting the hours attributable to the remote transactions issue and then applying a 75 percent reduction (as described in the preceding paragraph), Schedler contends that 20 percent should be added to the court's original 75 percent reduction in the attorney's fees and costs, yielding a total reduction in fees and costs related to the remote transactions issue "in the range of 95 percent." <u>Id.</u> at p. 11. Schedler does not present any mathematical calculations to demonstrate how this method would work, but he appears to suggest that the originally requested <u>total</u> fees and costs (not just those hours

10

attributable to the remote transactions issue) should be reduced by 95 percent. Under this approach, apparently the original $1,421,957.50 in fees would be reduced by 95 percent to $71,097.88, making Schedler's one-third share $23,699.29; and the original $137,006.29 in costs would be reduced by 95 percent to $6,850.32, with his one-third share being $2,283.44.

Schedler argues for "additional downward adjustment in the lodestar" based on plaintiffs' failure to establish Scott's standing and the Fifth Circuit's reversal of the judgment with respect to the declination form. Id. at pp. 11-13. Because of what he calls the NAACP's "scant success," Schedler suggests in this part of his memorandum that the award of fees and costs should be reduced an additional 23 percent on top of the court's original 75 percent reduction, for a total reduction of 98 percent. Again he does not present any calculations to show how this analysis works, but apparently the original $1,421,957.50 in attorney's fees would be reduced by 98 percent, resulting in a fee award of $28,439.15, of which Schedler's one-third share would be $9,384.92. The costs would be similarly reduced by 98 percent from $137,006.29 to $2,740.13, of which one-third, or $904.24, would be apportioned to Schedler.

The NAACP responds that Schedler's proposed reductions are excessive and inconsistent with the Fifth Circuit's opinion and exceed the scope of Judge Milazzo's referral order. Plaintiff notes that, despite dismissing Scott's claims and one of the NAACP's claims on jurisdictional grounds and reversing a second claim on the merits,

11

the Fifth Circuit did <u>not order any</u> reduction in the attorney's fees award, but remanded for this court to "consider whether, <u>if at all</u>, to alter the award of attorney's fees in a manner consistent with our opinion." <u>Scott</u>, 771 F.3d at 841 (emphasis added). Plaintiff emphasizes that Judge Milazzo's referral order states that she has "<u>determined</u> that the Secretary of State is entitled to a reduction in attorneys fees awarded <u>for remote transactions</u>." Record Doc. No. 543 (emphasis added). The NAACP interprets this to mean that Schedler can receive a reduction in fees related <u>only</u> to the remote transactions issue, not to any fees related to the other issues on which he also prevailed before the Fifth Circuit. In addition, the NAACP contends that the 75 percent reduction in fees and costs imposed in the court's original award adequately accounts for the ultimate lack of success on issues other than the remote transactions claim.

    I agree with plaintiff that Schedler is not entitled to any reduction for issues or claims other than the remote transactions claim. The Fifth Circuit left the determination of an amended award, if any, to the sound discretion of this court. Judge Milazzo knows very well the issues and parties involved in this matter. Her order states that she has "determined" that Schedler is entitled to a reduction in fees awarded "<u>for remote transactions</u>," and she has referred to me <u>solely</u> the determination of that amount. Accordingly, my findings and recommendation address a reduction in Schedler's share of attorney's fees and costs with respect to the NAACP's <u>remote transactions claim only</u>, not with respect to any other issues or parties.

The NAACP argues that Schedler's proposed reductions are excessive. Plaintiff contends that defendant is incorrect when he alleges that virtually all of the work in the case between November 2, 2011, and September 5, 2012, was devoted to the single issue of remote transactions. The NAACP asserts that discovery took place regarding other issues in the case during that time period and that nearly all work on the remote transactions issue was completed by April 20, 2012, when the court heard oral argument on plaintiffs' motion for partial summary judgment on that issue. Plaintiff contends that the litigation after that date primarily focused on other issues.

The NAACP is correct that the legal issue of coverage for remote transactions was decided shortly after the oral argument and that the parties largely (but not exclusively) focused on other issues after May 2, 2012. On that date, Judge Milazzo denied all three defendants' motions for partial summary judgment, granted plaintiffs' motion for partial summary judgment, and held that remote transactions are subject to Section 7 of the Act. However, the court deferred plaintiffs' motion as to the factual question whether defendants had violated the Act with respect to remote transactions. Record Doc. No. 212. The parties argued the deferred portion of plaintiffs' motion for partial summary judgment on September 5, 2012. The court denied the motion, Record Doc. No. 342, and the case proceeded to trial about month later on the issue of liability for defendants' failure to provide applicants with voter registration forms during remote transactions, as well as the standing questions and plaintiffs' other claims.

The NAACP also argues that Schedler's proposal improperly deletes time entries that reflect litigation against all three defendants, although the NAACP was entirely successful in its claims against the other two defendants. The NAACP contends that the court's prior award reducing all of plaintiffs' requested attorney's fees and costs by 75 percent should be mostly maintained without reduction because it reflects that a significant amount of counsel's work in this case did <u>not</u> involve Schedler or the remote transactions issue, but involved parties and claims as to which the NAACP was successful. Plaintiff disputes that it emerged from Schedler's appeal with "scant success," as he alleges. The NAACP points out that it was fully successful in holding Schedler responsible for coordinating and enforcing the compliance of public assistance agencies with the Act, which the NAACP asserts was the issue most central to its claims against the Secretary of State.

Finally, plaintiff argues that, rather than adopt Schedler's time period and line item reductions for the remote transactions issue and his proposed addition of 20 percent to the original 75 percent reduction in fees and costs, the court should apply an appropriate percentage reduction to his share of the overall prior award. The NAACP submits that the 20 percent range proposed in Schedler's memorandum is an appropriate cap for any reduction in fees and costs related to the remote transactions issue. However, under plaintiff's proposal, Schedler's one-third share of the prior award would be reduced by 20 percent from $118,496.46 in reasonable attorney's fees to $94,797.17 and his share of

14

the prior award of reimbursable expenses would be reduced by 20 percent from $11,417.19 to $9,133.75.

Plaintiff's recommended method accords with this court's overall sense of the lawsuit. Schedler's proposed reduction of 95 or 98 percent across the board (apparently) is clearly overreaching. The degree of success obtained is important, "but is ultimately only one of several factors to consider, in the district court's measured exercise of discretion." Roussell, 441 F. App'x at 234 (quotation omitted). The court previously analyzed the voluminous invoices of plaintiffs' counsel when determining the lodestar and making the initial award of fees and costs, and reduced the requested amounts by 75 percent to reflect duplication of attorney efforts, lack of billing judgment and plaintiffs' modestly successful results against all three defendants. While the court appreciates Schedler's attempts to identify particular attorney time entries attributable to the remote transactions claim, it is unclear how he wants the court to use his identifications. The court already heavily discounted the invoices for some of the same problems that Schedler now identifies in particular time entries. In addition, the NAACP contests the accuracy of many of Schedler's identifications, his characterizations of the amount of work devoted to the remote transactions issue at certain time periods and whether certain entries were attributable to more than one claim and/or more than one defendant. As plaintiff points out, in many instances, the facts and claims in this case are so closely intertwined that it would be very difficult and time-consuming to segregate the time entries between the

different claims and defendants. Vanderbilt Mortg. & Fin., Inc. v. Flores, No. C-09-312, 2011 WL 2160928, at *2 (S.D. Tex. May 27, 2011) (citing Hensley, 461 U.S. at 434-35; LP&L, 50 F.3d at 327; Abell v. Potomac Ins. Co., 946 F.2d 1160, 1169 (5th Cir. 1991)); Sapp v. Snuffer's Restaurants Inc., No. 3:07-CV-273-M, 2010 WL 6194117, at *4 (N.D. Tex. Nov. 23, 2010), report & recommendation adopted as modified, 2011 WL 1042289 (N.D. Tex. Mar. 21, 2011) (citing Mota v. Univ. of Tex., 261 F.3d 512, 528 (5th Cir. 2001); Abell, 946 F.2d at 1169); Roussell v. Brinker Int'l, Inc., No. H-05-3733, 2010 WL 1881898, at *8 (S.D. Tex. Jan. 13, 2010), aff'd, 441 F. App'x 222 (5th Cir. 2011).

Accordingly, I recommend that Schedler's one-third share of the prior award be reduced by 20 percent to $94,797.17 in reasonable attorney's fees and to $9,133.75 in reimbursable expenses.

## CONCLUSION

For the foregoing reasons, IT IS RECOMMENDED that defendant, Tom Schedler, in his official capacity as Louisiana Secretary of State, pay to plaintiff, the Louisiana State Conference of the NAACP, $94,797.17 in reasonable attorney's fees and $9,133.75 in reimbursable expenses, all as reflected above.

IT IS FURTHER RECOMMENDED that Schedler be held jointly and severally liable with Bruce Greenstein, in his official capacity as Secretary of the Louisiana

Department of Health and Hospitals,[2] and with Suzy Sonnier, in her official capacity as Secretary of the Louisiana Department of Children and Family Services, in the amounts of $94,797.17 in reasonable attorney's fees and $9,133.75 in reimbursable expenses.

IT IS FURTHER RECOMMENDED that the remaining two-thirds of the original fees and costs award, amounting to $236,992.92 in reasonable attorney's fees and $22,834.38 in reimbursable expenses, be severed and that defendants Greenstein, in his official capacity as Secretary of the DHH, and Sonnier, in her official capacity as Secretary of the DCFS, be held jointly and severally liable for those amounts.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. <u>Douglass v. United</u>

---

[2]Kathy Kliebert currently serves as the Secretary of the DHH. http://dhh.louisiana.gov/index.cfm/page/7/n/55 (visited December 2, 2015).

Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[3]

    New Orleans, Louisiana, this   2nd   day of December, 2015.

                 JOSEPH C. WILKINSON, JR.
                 UNITED STATES MAGISTRATE JUDGE

---

[3] Douglass referred to the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.